## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RADNOR HOLDINGS CORPORATION, et. al., | : | Case No. 06-10894 (PJW) |
| | : | |
| Debtors. | : | Jointly Administered |

## MOTION FOR AN ORDER, PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024, SETTING ASIDE THE NOVEMBER 21, 2006 SALE ORDER, OBJECTING TO SKADDEN FEE APPLICATION AND GRANTING OTHER RELIEF

## **TABLE OF CONTENTS**

Table of Authorities…………………………………………………………………………iii

Preliminary Statement……………………………………………………………………2

Jurisdiction and Venue……………………………………………………………………...3

Statement of Fact…………………………………………………………………………...3

Argument…………………………………………………………………………………....12

I.    THE SALE ORDER SHOULD BE SET ASIDE DUE TO
      NEWLY DISCOVERED EVIDENCE AND SKADDEN FEE APPLICATION
      SHOULD BE DENIED……………... …………………………………………....12

II.   THE SALE ORDER AND CERTAIN RELEASES SHOULD BE SET ASIDE DUE
      TO MISCONDUCT…………………………..……………………………….……..17

Conclusion…………………………………………………………………………………...20

## TABLE OF AUTHORITIES

**Federal Rules of Civil Procedure**
Rule 60(b)……………………………………………………………… 1,12,13
Rule 60(b)(2) …………………………………………………………...13-14
Rule 60(b)(3) …………………………………………………………... 17


**Federal Rules of Bankruptcy Procedure**
Rule 9024 ………………………………………………………………. 1,12


**United State Code Sections**
11 U.S.C. 363(m) ……………………………………………………………...15
18 U.S.C. 152 ………………………………………………………………... 18
28 U.S.C. 1334 ……………………………………………………………... 3
28 U.S.C. 157(b) …………………………………………………………… 3
28 U.S.C. 1409 …………………………………………………………….. 3

Cases
Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) ……………………………………… 14-15
Big Shanty Land Corp. v. Comer Properties, Inc., 61 Bankr. 272, 282 (N.D. Ga. 1985) ……... 14
Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.),
2012 Bankr. LEXIS 9-11 (Bankr. D. Del. Jan. 9, 2012) …………………………………...13
Cassady-Pierce Co, Inc. v. Burns (In re Burns), 169 B.R. 563, 569
(Bankr. W.D. Pa. 1994) …………………………………………………………14
In re Chipwich, Inc., 64 B.R. 670, 676 (Bankr. S.D.N.Y. 1986) ……………………………17
Compass Tech. v. Tseng Lab., 71 F.3d 1125, 1130 (3d Cir. 1995)……………………………. 15
Drumm v. New England Loan Marketing Ass'n (In re Drumm), 329 B.R. 23, 31
(Bankr. W.D. Pa. 2005) …………………………………...…………………………. 13
In re Flynn, 417 Fed. Appx. 188, 190 (3d Cir. 2011)…………………………………………... 15
Hazel-Atlas Glass Co. v. Hartford-Empire Company, 322 U.S. 238, (1944)………………. 19-20
Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. Miss. 2005)……………………….. 18
Linear Tech. Corp. v. Monolithic Power Sys., Inc., 2009 U.S. Dist. LEXIS 105823,
2009 WL 3805567, (D. Del. Nov. 12, 2009) ………………………………………………17
In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 265 (3d Cir. 1991)………………………... 14
Matter of Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir. 1988), *cert. denied*,
490 U.S. 1006, 109 S. Ct. 1642, 104 L. Ed. 2d 157 (1989)…………………………………..14
In re Radco Merchandising Services, Inc., 111 Bankr. 684, 689 (N.D. Ill. 1990) …………….. 14
Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 134 (1st Cir. 2005) ………………17
Smith v. Meyers, 2010 U.S. Dist. LEXIS 69697 (D. Del. July 13, 2010)……………... 2-3, 17-18
TA Instruments, Inc. v. Perkin-Elmer Corp., 2000 U.S. Dist. LEXIS 1306, 10-11
(D. Del. Jan. 24, 2000)………………………………………………………………… 15
In re Texlon Corp., 596 F.2d 1092, 1101 (2d Cir. 1979) ……………………………………14
Tiller v. Baghdady, 294 F.3d 277, 280 (1st Cir. Mass. 2002) ……………..…………………17-18
United States v. 27.93 Acres of Land, 924 F.2d 506, 516 (3d Cir. 1991)……………………… 15

United States v. Gellene, 182 F.3d 578 (7th Cir. 1999)………………………………………….. 18
U.S. v. McGaughey, 977 F.2d 1067, 1075 (7th Cir. 1992), cert. denied, 507 U.S. 1019,
113 S. Ct. 1817, 123 L. Ed. 2d 447 (1993) …………………………………………………...14
United States v. Yao, 2008 U.S. Dist. LEXIS 13479, 16-17 (D. Del. Feb. 25, 2008)………….. 19

Treatises
Collier on Bankruptcy P 7.01 [1][a] at 7-15 (Lawrence P. King ed., 15th ed. rev. 1999)……… 18

Michael T. Kennedy ("Mr. Kennedy"), hereby moves, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure, for an order setting aside the Order (1) Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; (2) Approving Assumption and Assignment of Certain Contracts and Leases; and (3) Granting Related Relief, dated November 21, 2006 (the "Sale Order").  In the Sale Order, the Court approved the sale of substantially all of the assets of the above captioned Debtors (the "Seller") to TR Acquisition Co., LLC and/or its assignees (the "Buyer" or "Tennenbaum") in accordance with the terms set forth in an Amended and Restated Asset Purchase Agreement dated November 21, 2006 (the "Asset Purchase Agreement") and other related agreements.  Reference is made to certain complaint filed as of this day ("the Complaint") against Skadden Arps Meager and Flom LLP ("Skadden") and the Tennenbaum Capital Partners LLC and its affiliates as well as individuals involved in the misconduct.

As more fully described in Complaint filed as of this date and described herein below, the Sale Order, the Confirmation Plan and certain releases were entered based on an inaccurate and incomplete record due to pervasive misrepresentations to the Court, glaring failures of counsel to disclose crucial facts and conflicts to the Court, and numerous and far-reaching improprieties. Mr. Kennedy seeks to set aside the Sale Order in order to permit the (a) revesting of the Debtors' assets in the Debtors' estates; (b) Objects to the Skadden Fee application and requests disgorgement of the professional fees. (c) appointment of an examiner and special counsel to investigate and file the appropriate actions to redress the misrepresentations, inaccuracies, potential fraud and improprieties described herein; and (d) appointment of a neutral party to

serve as trustee to the Debtors for purposes of the establishment of constructive trusts for the benefit of aggrieved creditor and equity holders.

## PRELIMINARY STATEMENT

1.     In short, the sale process and, indeed, this entire bankruptcy case, were manipulated by the Buyer, its counsel, and Debtors' own counsel, among others in a collective effort to neutralize Mr. Kennedy and produce a windfall to the Buyer and its counsel and counsel for the Debtors through a meticulously structured sale of substantially all of the Debtors' assets to the Buyer.

2.     After years of being obfuscated at the instruction of the Buyer, its counsel, Debtor's counsel, and even his own counsel, Mr. Kennedy has recently uncovered and pieced together voluminous evidence that paints a sobering picture of deception on this Court and upon the creditors of the Debtors' estates.

3.     Evidence discovered since entry of the Sale Order and prior to the confirmation of the Liquidation Plan, including the granting of certain releases demonstrates that the sale process was tainted by conflicts and orchestrated entirely at the instruction of the Buyer, its counsel and Debtors' own counsel.  The newly discovered evidence, only some of which is discussed herein, highlights the pervasive conflicts that were present since the inception of this bankruptcy case and carefully hidden from this Court, Mr. Kennedy and the creditors of the Debtors' estates.

4.     The blatant non-disclosure of conflicts and other improprieties in this case are far-reaching and have exacted severe and irreparable harm upon the Debtors' estates and their creditors.

5.     The Buyer and its affiliates are registered under the Investment Advisers Act of 1940 and was a secured lender to the Debtor, subject to federal lending laws, and subject to its own code of conduct and regulations under the applicable securities laws.  The Buyer failed to fulfill those

3

duties and violated its regulations through its misrepresentation and omission of material facts which intentionally and willfully misled the Court, the Debtors and other creditors in these cases.

6.      Debtors' counsel, and possibly other professional advisers to the Debtors, owed a duty of candor to this Honorable Court, the Debtors and its board of directors, Mr. Kennedy, as well as other creditors in this case.   Debtors' counsel breached those duties, in violation of the Bankruptcy Code, applicable Delaware law, the Model Code of Professional Conduct and possibly under the Securities and Exchange Acts of 1934 and the Investment Advisors Act of 1940.

7.      To begin to right this wrong, the Court must set aside the Sale Order, appoint an examiner and special counsel to investigate and file appropriate actions against the parties and counsel who have aggrieved these estates and this Court, and appoint a neutral trustee to proceed with the establishment of constructive trusts for the benefit of aggrieved creditors and equity holders.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §1409.

## STATEMENT OF FACT

9.      Mr. Kennedy is a former director and majority shareholder of the Debtor, Radnor Holdings Corporation, who has been embroiled in intense litigation with Tennenbaum for years in both state and federal courts with regard to personal guarantees executed by Mr. Kennedy in favor of Tennenbaum.   Mr. Kennedy contends that this aggressive litigation brought by Tennenbaum has been nothing more than a litigation tactic to keep Mr. Kennedy from delving into the record in this case, to distract Mr. Kennedy from this bankruptcy case, and to attempt to keep Mr. Kennedy from discovering the true nature of the conflicts and deception in this case, specifically the extent of the pre-petition involvement of the Debtors' professionals in this case with the Buyer.

10.     Despite the efforts of Buyer, its counsel and counsel for the Debtors to keep Mr. Kennedy in the dark, the true nature of the conflicts of the Debtors' professionals in this case were discovered shortly after a meeting between Mr. Kennedy and Attorneys Patricia Moran and Ralph Arditi, of Skadden Arps ("Skadden") in Skadden's New York offices on November 18, 2008.

11.     It was at this meeting where Mr. Kennedy learned that Skadden was "unable" to represent Mr. Kennedy in an unrelated matter given that Tennenbaum was one of Skadden's "major clients," despite the fact that Skadden had represented Mr. Kennedy previously and despite the fact that Skadden currently represents the Debtors in this proceeding.

12.     Mr. Kennedy was surprised to learn that Tennenbaum was one of Skadden's largest clients, in light of this bankruptcy case, Skadden's role as appointed counsel to the Debtors and Skadden's prior representation of Mr. Kennedy, personally, and the Debtor for nearly seven years.

13.     In fact, Attorney Friedman, Mr. Kennedy's personal counsel during this case, was referred by Skadden and took an active role in ensuring that Mr. Kennedy did not participate in the litigation before this Court (as directed by Skadden) by reviewing testimony or attending hearings and depositions.

14.     Those individuals who were present for the hearings and depositions in this bankruptcy case, including members of the Debtors' management team, were advised not to discuss the hearings and depositions with Mr. Kennedy.

15.      Both the Debtors and the Debtors' secured lender were effectively represented throughout this entire case by the same law firm.

16.     It is Mr. Kennedy's position, based on the volumes of documentation he has pored over in the past few weeks, that Skadden was selected to represent the Debtors by Tennenbaum, and the Skadden partners chose to misrepresent the conflicts to Mr. Kennedy, this Court and the unsecured creditors to the benefit of Tennenbaum and its firm.

17.     Skadden's retention as counsel for the Debtors was approved by this Court absent disclosure by Skadden of the pervasiveness of its conflicts with Tennenbaum and Mr. Kennedy, personally. Despite knowing of the material undisclosed conflicts, Tennenbaum voted in favor of both the retention of Skadden and of Lehman Brothers.  True and correct copies of the Annual Legal Fees chart and Firm & Fund Structure chart are attached hereto as Exhibits "A" and "B," respectively, and are incorporated herein by reference.  Exhibits A and B describe the legal fees paid by Tennenbaum funds (Skadden received at least $2.8 million in 2004).  This, in conjunction with the Certified Annual Shareholder Reports for Special Values Opportunities Fund, LLC and Special Values Expansion Funds, LLC from 2004 and 2005, filed with the Securities and Exchange Commission by Tennenbaum and the Private Placement Memorandums

for both entities, further demonstrate material undisclosed conflicts hidden from this Honorable Court, the Office of the United States Trustee and the Debtor[1].

18.     The Office of the United States Trustee questioned the propriety of Skadden's proposed retention in this case, as evidenced by its Objection filed on or about September 13, 2006 [Docket No. 169] (the "Trustee Objection").  The Trustee Objection is incorporated herein by reference.  Although the Trustee Objection brought sufficient evidence before this Court to justify disqualification of Skadden, Attorney Galardi misrepresented the conflicts as "*de minimus*" to the Office of the United States Trustee and this Court.

19.     Attorneys Galardi, Meehan, Prins and other attorneys for Skadden appearing before this Honorable Court intentionally failed to disclose material facts, known only to them and the Buyer, to the Court, the Debtor and its board of directors, Mr. Kennedy and other creditors in this case and interfered with the ability of the Office of the United States Trustee to properly perform its function to protect creditors and other parties in interest.

20.     In a May 2006 email from Mr. Kennedy to Jose Feliciano of Tennenbaum, Mr. Kennedy expressed his understanding, based on the inaccurate and seriously limited information that had been given to him, that "Skadden has represented [Tennenbaum] in other unrelated matters in the past and Skadden does not consider them a conflict."

21.     At the September 20, 2006 hearing before this Court, Attorney Galardi represented that no conflict existed between Skadden and Tennenbaum and the work performed was for five hours of tax work related to the investment in the Debtor and was thus *de minimus* under a test established by this Court when determining conflicts between large firms with numerous clients.

---

[1] Copies of the Certified Annual Shareholder Reports and the Private Placement Memorandums have not been attached hereto as exhibits in the interest of judicial economy.  The documents are voluminous and Mr. Kennedy intends to introduce the documents as evidence at time of trial on this issue.  Mr. Kennedy is in possession of thousands of documents which simply could not be attached as exhibits to this Motion.  This Motion is not intended to be an exhaustive pleading containing all exhibits available.

22.     When asked by the Court if the conflicts were disclosed, Attorney Galardi answered affirmatively and represented that the work was reviewed by Skadden attorney, Attorney Meehan.  See Transcript of September 20, 2006 Hearing ("September 20 Transcript") [Docket No. 298][2], pp. 15-18.  At no time were conflicts disclosed to Mr. Kennedy or the Radnor board of directors.  Not only does a duty of candor exist to guide counsel in its dealings with the Debtor, its board, this Honorable Court and the Office of the United States Trustee, but also, the Debtor was a registrant with the Securities and Exchange Commission and the unsecured bondholders were publicly traded, therefore the omissions are possible violations of Rule 10(b)5 under the Securities and Exchange Commission rules.

23.     Also, Skadden was advising the board of directors on conflicts of interest and the board's fiduciary duties and recommending the filing of certain motions to hasten and advance the sale process, thus obstructing the possible restructuring of the Debtor, while being knowingly conflicted and in violation of its duty of candor to the Debtor.

24.     Skadden's and Tennenbaum's bad faith is supported by *prima facie* evidence of its conduct.  Skadden failed to provide resources to the Debtor, undermined the reorganization process and failed to disclose numerous restructuring proposals to the Court.  Tennenbaum ultimately utilized restructuring details of the plan of reorganization proposed by Mr. Kennedy subsequent to the sale process to its own benefit.  Tennenbaum's use of the plan of reorganization proposed by Mr. Kennedy resulted in nearly $100 million in cash proceeds and unjust enrichment to Tennenbaum.

25.     Only Skadden, Tennenbaum and Lehman knew of the depth of undisclosed conflicts, and it is clear from the substantial evidence uncovered that, unless an examiner is appointed or the Office of the United States Trustee appoints independent counsel to review these conflicts, and

---

[2] The September 20 Transcript is incorporated herein by reference.

demand is set forth for the Skadden billing records and the financial records of the Tennenbaum funds, it would be nearly impossible for the true extent of the conflicts and misconduct in this case to be uncovered. See September 20 Transcript, Trustee Objection, p. 32.

26.     Before this Honorable Court, Attorney Galardi referred to the delivery of a "full waiver" despite a provision in its engagement letter protecting Skadden from any breach of fiduciary duty claim by Debtor and pointed out that only the Tennenbaum funds were listed as parties to potential litigation in the waiver and not Tennenbaum & Co., LLC or Tennenbaum Capital Partners, LLC.  This was a clear attempt to shield the Tennenbaum parties from liabilities. There also exists on the record an admitted, tacit understanding between Tennenbaum and Skadden that Skadden would not litigate claims against Tennenbaum.  Any litigation would be handled only through independent counsel. Skadden advised Debtors' board of directors to establish an independent committee of the Debtors and utilize Wilmer Hale.  Email communications between Tennenbaum partner, David Hollander and Richard Prins set forth in testimony before the Court and as evidence in the litigation with the unsecured creditors committee illustrate this arrangement

27.     This Honorable Court was concerned as to the significant amount of conflicts beginning to appear on the record through depositions and testimony on September 20, 2006.  See September 20 Transcript, pp. 56-57.  Despite numerous opportunities to disclose the conflicts and withdraw from representation, Skadden chose to continue to make misrepresentations to the Court and hide the known material conflicts in order to continue to assist its client in its scheme to acquire the consolidated assets in a hastened sale process and avoid a reorganization despite a clear duty to do otherwise.  See September 20 Transcript, pp. 31-33.

28.     During the hearing before this Court on October 27, 2006, Attorney Galardi described, in small part, Skadden's conflicts due to its relationship with Tennenbaum which alarmed the United States Trustee but did not invoke an investigation of Skadden's billing records.   The transcript of the October 27, 2006 hearing (the "October 26 Transcript") [Docket No. 582] is incorporated herein by reference.   Pages 46-50 of the October 26 Transcript are attached hereto as Exhibit "C" to highlight this particular section for the Court.

29.      Neither Mr. Kennedy nor the Debtors' board was ever advised that there were potential causes of action against its secured lender, Tennenbaum, and the depth of material conflicts of its own counsel or the evidence of material conflicts arising before this Honorable Court.   In fact, the Radnor Board, despite inquiries by the board of potential conflicts and seven years of prior representation by Skadden, was told by Skadden partners that conflicts involved were only small tax matters.   In various testimonies before this Honorable Court and party depositions, when viewed against the backdrop of the evidence uncovered by Mr. Kennedy, there exist numerous examples of manipulation by the Buyer, serious misconduct by Skadden attorneys and inconsistencies and inaccuracies, at the least, by parties testifying before this Court.

30.     The Radnor Board was steered throughout the entire retention process by Skadden and Tennenbaum.   A true and correct copy of a series of email correspondences between Jose Feliciano, partner of Tennenbaum and Mr. Kennedy on May 30, 2006 demonstrating the manipulation of the Radnor Board by Tennenbaum is attached hereto as Exhibit "D" and incorporated herein by reference. While failing to mention material conflicts to Mr. Kennedy and consequently, the Radnor Board, Jose Feliciano demanded specific representation of the Debtor and voted in favor of the Skadden and Lehman Brothers retentions in this case.

31.     The United States Trustee for the District of Delaware, Mark E. Kenney, sought, on numerous occasions, to investigate the apparent and real conflicts, but was blocked at each attempt, by a concerted effort by counsel for the Debtors, Skadden.  Appointment of conflicts counsel and the necessity of an investigation by the Office of the United States Trustee are crucial in this complex case to ensure a fair and level playing field given the involvement of large firms.

32.     The omissions of material facts and conflicts directly caused (i) the obstruction of a restructuring or reorganization; (ii) the sale of other assets by the Debtor which Tennenbaum took for themselves; and therefore (iii) inflicted severe and irreparable harm on the estate and other parties in interest, including Kennedy.

33.     As reflected by the Actual Results v. DIP Forecast chart attached hereto as Exhibit "E" and incorporated herein by reference, the Debtor company was well ahead of plan, and there was sufficient time to complete reorganization despite the efforts of Skadden and Alverez and Marsel to pad administrative expenses in this case.  Evidence obtained by Mr. Kennedy also suggests that well in advance of the bankruptcy filing, Tennenbaum planned to utilized a 363 sale process, the DIP financing and the retention of selected advisers to the Debtor in order to eliminate any plan by the Debtor to restructure or reorganize.

34.     Attorneys Galardi and Friedman advised Mr. Kennedy not to review any testimony from the hearings before this Court or the depositions in this case and advised other members of management as well as advisers to the Debtor not to discuss testimony with Mr.  Kennedy

35.     The conflicts in this case run deep.  Evidence suggests that the Debtors' financial advisors were also conflicted, the true extent of which will never be disclosed to this Court unless discovery is conducted with Tennenbaum and the various advisers and parties in this case.

11

36.     By way of example, the Lehman Brothers' restructuring team made a presentation to the Radnor board in May 2006, well in advance of the disqualification of Lehman Brothers in this case.  A copy of the May 2006 presentation materials (the "Presentation Materials") is attached hereto as Exhibit "F" and incorporated herein by reference.  The Presentation Materials clearly show Joe Spano as a Vice President of Lehman Brothers.  Joe Spano was the investment banker covering Tennenbaum, based in Los Angeles; however Lehman Brothers, through its counsel, would later testify that they were not aware of any material connections with Tennenbaum.  The presence of Joe Spano on the Lehman Brothers' restructuring team was material and favored Tennenbaum.  This material connection was never disclosed to the Radnor board or this Court.  Numerous advisers to the Debtor acknowledged, in both testimony in Court or in their individual depositions, having receiving calls by Tennenbaum in advance of their retention interviews.  Despite these advisers' contacts and material connections to Tennenbaum, none of the parties disclosed these material contacts and connections to the Debtor. Skadden, Tennenbaum and indeed Milbank had a duty of candor to disclose and notify this Court.  Skadden, Tennenbaum and Milbank knew during the testimony of the professionals that these omissions were intentionally misleading and fully aware of the context of the testimony due to their own undisclosed conflicts.

37.     The conflicts and deception not only prevented Mr. Kennedy from effectively participating in the bankruptcy process and the potential reorganization of the Debtor, but also impacted the entire sale process and, ultimately, the distribution to unsecured creditors and other parties in interest.  The reorganization plan developed by Mr. Kennedy on behalf of Debtor proposed an exchange of the unsecured bonds for equity in the Debtor, combined with the sale of the European operations and subsequent registration of the shares in order to provide liquidity to

the unsecured creditors and the equity holders.  Skadden, Lehman and Tennenbaum not only knew of these plans, but also of the various meetings and phone calls between Mr. Kennedy and the bondholders during 2005 and 2006.  Tennenbaum's and Skadden's misconduct intentionally and willfully undermined and obstructed the efforts of Mr. Kennedy and the Debtor's board of directors to implement the plan of reorganization.  It is also admitted by advisers to Tennenbaum that frustrating reorganization was the primary goal established by Tennenbaum many months before the Debtors' filing for reorganization in August 2006.   Publicly available statements made by former Tennenbaum partner, Feliciano and Amit Patel of Houlihan Lokey, the Tennenbaum adviser to Tennenbaum Capital Partners, including those made at the Distressed Debt Conference, Las Vegas, Nevada, February 2009, are admissions as to a well organized scheme to avoid reorganization and the collusion of Tennenbaum and the financial advisers to this case.

38.    Had Mr. Kennedy known of the extent of the conflicts of the professionals in this case, and if Mr. Kennedy had been advised of the testimony from the hearings and depositions in this case, Mr. Kennedy would have filed a stay and/or an objection to the Sale Motion in an attempt to block the transaction.

39.    Had Mr. Kennedy known of the extent of the conflicts of the professionals in this case, and if Mr. Kennedy had been advised of the testimony from the hearings and depositions in this case, Mr. Kennedy would have taken prompt action to notify this Court of the misconduct and file a competing plan in this case.  In fact, an alternate company sponsored plan of reorganization (the "Company Sponsored Plan") was prepared but was ultimately never presented to this Court due to Skadden's obstructive conduct and undisclosed conflicts.  A true and correct copy of the

numerous iterations of the Company Sponsored Plan is attached hereto as Exhibit "G" and

incorporated herein by reference.

## **ARGUMENT**

I.    THE SALE ORDER SHOULD BE SET ASIDE DUE TO NEWLY DISCOVERED
EVIDENCE.

40.    Rule 60(b) of the Federal Rules of Civil Procedure applies in all cases under the

Bankruptcy Code, except for certain circumstances not relevant here.  FED. R. BANKR. P. 9024.

Rule 60(b) sets forth multiple grounds upon which a court may relieve a party from final

judgment, including:

(1)    Mistake, inadvertence, surprise or excusable neglect;
(2)    Newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for  a new trial under Rule 59(b);
(3)    Fraud … misrepresentation, or misconduct by an opposing party;
(4)    The judgment is void;
(5)    The judgment has been satisfied, released or discharged; it is based on an earlier
judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;
or
(6)    Any other reason that justifies relief.

FED. R. CIV. P. 60(b).

41.    Parties seeking review of an order or judgment under Rule 60(b) have a high hurdle to

overcome in obtaining relief . . . Rule 60(b) seeks to strike a delicate balance between two

countervailing impulses: the desire to preserve the finality of judgments and the 'incessant

command of the court's conscience that justice be done in light of all the facts." Carr v. New

Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.), 2012 Bankr. LEXIS 9

(Bankr. D. Del. Jan. 9, 2012) (citing Drumm v. New England Loan Marketing Ass'n (In re

Drumm), 329 B.R. 23, 31 (Bankr. W.D. Pa. 2005)) (citations omitted, emphasis in original).

42.    Relief based upon new evidence may be granted pursuant to Rule 60(b)(2) only upon a

showing that:

(1)    the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial,

(2)    it was discovered subsequent to trial;

(3)    due diligence on the part of movant to discover the new evidence is shown or may be inferred;

(4)    the evidence is admissible;

(5)    it is credible;

(6)    the new evidence is material;

(7)    it is not merely cumulative or impeaching; and

(8)    the new evidence is likely to change the outcome of the case.

Carr, 2012 Bankr. LEXIS at 10-11 (citing Cassady-Pierce Co, Inc. v. Burns (In re Burns), 169 B.R. 563, 569 (Bankr. W.D. Pa. 1994); U.S. v. McGaughey, 977 F.2d 1067, 1075 (7th Cir. 1992), cert. denied, 507 U.S. 1019, 113 S. Ct. 1817, 123 L. Ed. 2d 447 (1993)).

43.    Setting aside a sale pursuant to FED. R. CIV. P. 60(b) and Bankr. R. 9024 is well within the purview of the bankruptcy court's power.  In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 265 (3d Cir. 1991).  "Confirmed sales -- which are final judicial orders -- can be set aside" under Rule 60(b), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9024. Id. See Matter of Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S. Ct. 1642, 104 L. Ed. 2d 157 (1989).  "It is well settled that a bankruptcy court has the power to vacate or modify its orders, as long as it is equitable to do so." Big Shanty Land Corp. v. Comer Properties, Inc., 61 Bankr. 272, 282 (N.D. Ga. 1985). See, e.g., In re Texlon Corp., 596 F.2d 1092, 1101 (2d Cir. 1979) ("There is a practical utility in the application of a rule which permits the vacation or modification of bankruptcy orders where subsequent events presented during administration demonstrate the necessity therefor; and to do so would not be inequitable.") (citation omitted); In re Radco Merchandising Services, Inc., 111 Bankr. 684, 689 (N.D. Ill. 1990) ("Like a court of equity, the bankruptcy court has the power to amend, modify, or vacate its earlier orders."). Id.

44.    Rule 60(b)(2) provides that "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial" can give rise to relief from a judgment or order.

45.    Under Rule 60(b)(2) the term "newly discovered evidence" refers to "'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.'" Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (quoting United States v. 27.93 Acres of Land, 924 F.2d 506, 516 (3d Cir. 1991)).

46.    In order for a motion for reconsideration made pursuant to Rule 60(b)(2) to be successful, a movant must establish that the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial. Bohus, 950 at 930, see also Compass Tech. v. Tseng Lab., 71 F.3d 1125, 1130 (3d Cir. 1995), TA Instruments, Inc. v. Perkin-Elmer Corp., 2000 U.S. Dist. LEXIS 1306, 10-11 (D. Del. Jan. 24, 2000).

47.    Section 363(m) of the Bankruptcy Code provides that the "reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal" 11 U.S.C. §363(m).   It is beyond dispute that Tennenbaum should not be afforded the protections of Section 363(m) of the Bankruptcy Code which is reserved for good faith purchasers.  In re Flynn, 417 Fed. Appx. 188, 190 (3d Cir. 2011).

48.    The evidence recently uncovered in this case nullifies any finding that Tennenbaum was a good faith purchaser. Clearly the Sale Order is a final judicial order capable of being vacated

by this Court due to the presentation of newly discovered evidence by Mr. Kennedy, and Tennenbaum may not seek refuge in Section 363(m) because it was not a good faith purchaser.

49.     Mr. Kennedy has presented sufficient, recently obtained evidence to demonstrate that the Sale Order should be set aside.

50.     The evidence presented by Mr. Kennedy herein was not capable of being discovered in advance of the Sale Hearing for several compelling reasons.

51.     First, Mr. Kennedy was acting on the advice of his counsel whom Mr. Kennedy trusted and had every reason to believe was independent and acting entirely as Mr. Kennedy's advocate and whom Mr. Kennedy had no reason, at the time, to question.   As the facts show, Mr. Kennedy's counsel was involved in the misconduct described herein and was not acting in Mr. Kennedy's best interests but ultimately in the interest of Tennenbaum.

52.     Secondly, although all of the facts were in existence at the time of the Sale Hearing, Skadden's and Tennenbaum's lack of candor with this Court, the Debtor and its board of directors, including Kennedy, cast a cloak of darkness over the true connections and material conflicts present in this case.   Mr. Kennedy was justifiably ignorant of many of the pertinent facts and of the gravity of the facts when pieced together to form the complete picture.   Mr. Kennedy was purposefully kept in the dark throughout this bankruptcy proceeding and particularly through the sale process.   The Buyer, its counsel and Debtors' own counsel took steps to ensure that Mr. Kennedy did not participate in the court hearings or the depositions or review any of the testimony in this case.   Tennenbaum engaged in a course of action to divert and occupy Mr. Kennedy and distract him from the bankruptcy case by aggressively pursuing Mr. Kennedy on the guarantees in state court.

53.     Thirdly, the full story of the misconduct and misrepresentations in this case may not have been capable of being pieced together by any other party, as a great deal of the evidence was contained in Mr. Kennedy's communications with the professionals and their advocates and clients in this case as well as financial filings with the Securities and Exchange Commission. These communications, when coupled with the testimony and omissions of material conflicts in this case, provide a clear picture of the level of misconduct in this case.

54.     The evidence set forth by Mr. Kennedy is undoubtedly material and would have significantly altered the outcome of this bankruptcy case and, most notably, the sale to Tennenbaum.

55.     The Sale Order should be set aside due to the presentation by Mr. Kennedy of newly discovered evidence.

II.     THE SALE ORDER SHOULD BE SET ASIDE DUE TO MISCONDUCT.

56.     To prevail on a Rule 60(b)(3) motion, "the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from fully and fairly presenting his case." Carr, 2012 Bankr. LEXIS at 9 (citing Linear Tech. Corp. v. Monolithic Power Sys., Inc., 2009 U.S. Dist. LEXIS 105823, 2009 WL 3805567, (D. Del. Nov. 12, 2009)); see also In re Chipwich, Inc., 64 B.R. 670, 676 (Bankr. S.D.N.Y. 1986) ("A motion to vacate an order for fraud in its procurement pursuant to FED. R. CIV. P. 60(b)(3) must be proved by clear and convincing evidence.").

57.     Rule 60(b)(3) concerns litigation-related fraud perpetrated in the course of litigation that interferes with the process of adjudication. Smith v. Meyers, 2010 U.S. Dist. LEXIS 69697, 2-3, see also Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 134 (1st Cir. 2005). Once such fraud is proved, the judgment may be set aside upon the movant's showing that the fraud

"'substantially interfered with [the movant's] ability fully and fairly to prepare for, and proceed at, trial.'" Id. see also Tiller v. Baghdady, 294 F.3d 277, 280 (1st Cir. 2002) (citation omitted). Typical Rule 60(b)(3) cases involve fraud or misstatements perpetrated in the course of litigation or other misconduct aimed directly at the trial process. Tiller v. Baghdady, 294 F.3d 277, 280 (1st Cir. 2002) (citation omitted).

58.     Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005) (citation omitted), see also Smith v. Meyers, 2010 U.S. Dist. LEXIS 69697 (D. Del. July 13, 2010).

59.     In a factually similar case, United States v. Gellene, 182 F.3d 578 (7th Cir. 1999), the Seventh Circuit explained that a statement is made "fraudulently" for purposes of 18 U.S.C. §152[3] if it is made "with [an] intent to deceive" and rejected the defendant's argument that section 152 is limited to "false statements that deprive the debtor of his property or the bankruptcy estate of its assets." Id. at 586. The court arrived at its holding after finding "whether the deception at issue is aimed at thwarting the bankruptcy court or the parties to the bankruptcy,

---

[3] 18 U.S.C. §152 states that "a person who (1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11; (4) knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney; (5) knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11; (6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11; (7) in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; (8) after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or (9) after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor, shall be fined under this title, imprisoned not more than 5 years, or both.

section 152 is designed to protect the integrity of the administration of a bankruptcy case." Id. at 587 (emphasis added); see 1 Collier on Bankruptcy P 7.01 [1][a] at 7-15 (Lawrence P. King ed., 15th ed. rev. 1999), see also United States v. Yao, 2008 U.S. Dist. LEXIS 13479, 16-17 (D. Del. Feb. 25, 2008).

60.     In the Gellene case, counsel failed to disclose the true nature of its relationship with a secured creditor.  The Supreme Court determined that if the true nature of the relationship had been disclosed, counsel's employment application would not have been approved.  Instead, the court ordered the disgorgement of counsel's fees and determined that the nondisclosure was perjury and a bankruptcy crime.

61.     Clearly, the facts in this case rise, at minimum, to the level of misconduct in the Gellene case.  Counsel engaged in a course of action to deceive the Court, the Debtors' creditors, and Debtors' board and to keep Mr. Kennedy away from the proceedings and the testimony.  As a result, Mr. Kennedy was precluded from presenting any argument or objection to the sale process and maximizing the true value of the Estate.

62.     The Sale Order was unfairly obtained as a result of the misconduct of Tennenbaum, its counsel and Debtors' counsel among other professionals.

63.      In the U.S. Supreme Court case, Hazel-Atlas Glass Co. v. Hartford-Empire Company, 322 U.S. 238, (1944), an attorney may commit fraud on the court, not only through misrepresentation, but also through omission.  Also in Hazel-Atlas "it is a wrong . . . which  . . . cannot complacently be tolerated consistently with the good order of society . . . involv[ing] two victims: the individual litigant . . . and the court itself, whose integrity is compromised by the fraudulent behavior of its officers.) "The very temple of justice is defiled."

64.     Such potential conflicts are particularly important in bankruptcies, where the debtors' lawyers can play important roles in determining which creditors walk away with the most money, and what advisers or financiers get sued for deals that pushed the company toward insolvency.   Indeed, that matter is so important that, before being appointed as bankruptcy counsel, a law firm must disclose any relationships it has with interested parties[4].

65.     The evidence demonstrates that Tennenbaum, in its role as both equity holder and lender, and the various professionals in this case, engaged in willful misconduct and gross negligence, breached their duties of care and loyalty to the Debtor, its board and other stakeholders. Tennenbaum and counsel to the Debtor withheld valuable information and misled numerous parties in interest in order take substantial value for themselves and predetermined who would "walk away" with the proceeds of the bankruptcy sale.   The Court has a substantial interest to provide a fair and level playing field to all parties in the process.[5]

66.     At minimum, the facts and circumstances of this case can be described as "interfering with the process of adjudication."

67.     Therefore, the Sale Order should properly be set aside due to the misconduct outlined herein and as described in the Complaint.

## **CONCLUSION**

68.     Based on the foregoing, it is beyond dispute that the Sale Order was entered based on an inaccurate and incomplete record due to pervasive misrepresentations to the Court, glaring failures of counsel to disclose crucial facts and conflicts to the Court, and numerous and far-reaching improprieties.

---

[4] Hazel-Atlas Glass Co. v. Hartford-Empire Company, 322 U.S. 238, (1944).
[5] Hazel-Atlas Glass Co. v. Hartford-Empire Company, 322 U.S. 238, (1944).

69.     The Sale Order should be set aside for newly discovered evidence pursuant to Rule 60(b)(2) or misconduct under Rule 60(b)(3) and the Court should order the (a) revesting of the Debtors' assets in the Debtors' estate; (b) appointment of an examiner and special counsel to investigate and file the appropriate actions to redress the misrepresentations, inaccuracies, potential fraud and improprieties described herein, and (c) appointment of a neutral party to serve as trustee to the Debtors for purposes of the establishment of constructive trusts for the benefit of aggreieved creditors and equity holders .

70.     In light of the unique circumstances of this case, the Court should extend the time to file a Rule 60(b) motion pursuant to Section 105 of the Bankruptcy Code.

71.     WHEREFORE, Mr. Kennedy respectfully requests that this Honorable Court enter an order, in the form attached hereto, (a) granting this Motion, (b) setting aside the Sale Order, (c) revesting the Debtors' assets in the Debtors' estate, (d) invalidating certain releases granted in the Confirmation Plan, appointing an examiner and special counsel to investigate and file the appropriate actions to redress the misrepresentations, inaccuracies, potential fraud and improprieties described herein, (e) appointing a neutral party to serve as trustee to the Debtors for purposes of establishing constructive trusts for the benefit of aggrieved creditor and equity holders, and (f) granting such other and additional relief as just and appropriate under the circumstances.

Respectfully Submitted,

Dated: December 26, 2012                    /s/ Michael T. Kennedy

_____

Michael T. Kennedy

4020 Foxhill Lane
Newtown Square, PA 19073

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RADNOR HOLDINGS CORPORATION, et. al., | : | Case No. 06-10894 (PJW) |
| | : | |
| Debtors. | : | Jointly Administered |

## <u>ORDER</u>

AND NOW this _____ day of _____ 2012, upon consideration of the Motion for Entry of an Order, Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Setting Aside the November 21, 2006 Sale Order and Granting Other Relief (the "Motion"), it is hereby

ORDERED that the Motion is GRANTED, and it is further

ORDERED that the Sale Order, as defined in the Motion, is hereby set aside, and it is further

ORDERED that the Debtors' assets shall be revested in the Debtors' estate, and it is further

ORDERED that certain releases granted in this Court's Confirmation Order will be hereby deemed invalidated pending the outcome of the investigation of the examiner appointed by the Court as described in the Motion, and it is further

ORDERED that an examiner and special counsel shall be appointed by this Court to investigate and file the appropriate actions to redress the misrepresentations, inaccuracies, potential fraud and improprieties described in the Motion, and it is further

ORDERED that a neutral party shall be appointed by this Court to serve as trustee to the Debtors for purposes of establishing constructive trusts for the benefit of aggrieved creditors and equity holders.

Dated:  Wilmington, Delaware

_____, 2013


_____
Honorable Peter J. Walsh
United States Bankruptcy Judge