## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RADNOR HOLDINGS CORPORATION, et al., | : | Case No. 06-10894 (PJW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

### Opening Brief in Support of Objection of Michael T. Kennedy
### to Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP

Bruce W. McCullough (Del. ID 3112)
Bodell Bové, LLC
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Phone: (302) 655-6749
Fax: (302) 655-6827
Email: bmccullough@bodellbove.com

and

Gary C. Bender
Forbes Bender Paolino & DiSanti P.C.
205 N. Monroe Street
Media, PA 19063
Phone: (610) 627-1700
Fax: (610) 627-1716
Email: gbender@fbpdlaw.com

Attorneys for Michael T. Kennedy

Dated: May 17, 2013

i

## **Table of Contents**

Table of Citations…………………………………………………… ii

Statement of the Nature and Stage of the Proceeding……………………….1

Summary of Argument………………………………………………… 2

Statement of Facts………………………………………………… .......4

Argument………………………………………………………… ...15

     A.     It Was Necessary to Disclose Skadden's Partners' Investment in the
            Tennenbaum Funds……………………………………… 18

     B.     It Was Necessary to Disclose Skadden's Ongoing Board Representation
            of the Tennenbaum Funds……………………………… ..21

     C.     It Was Necessary to Disclose the Dollar Amount of Skadden's Attorney's
            Fees Paid by Tennenbaum and Specifically for the Organizational Work
            Done in the Year 2004…………………………………… ...21

Conclusion…… ....................................................................................................23

# Table of Citations

## Cases

*In re 22 Acquisition Corp.*, 2004 U.S. Dist. LEXIS 6435, 2004 WL 870813
    (E.D. Pa., Mar. 23, 2004)……………………………………… 16

*In re eToys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005)……………….3, 16, 23

*In re Filene's Basement, Inc.*, 239 B.R. 850 (Bankr. D. Mass. 1999) ……… 16

*In re Harris Agency, LLC*, 451 B.R. 378 (Bankr. E.D. Pa. 2011)…………….16

*In re Leslie Fay Cos.*, 175 B.R. 525 (Bankr. S.D.N.Y. 1994)……………....17

*In re Raymond Professional Group, Inc.*, 421 B.R. 891 (Bankr. N.D. Ill. 2009)……16

*In re Tinley Plaza Assocs., L.P.*, 142 B.R. 27 (Bankr. N.D. Ill. 1992)……...17

*Rome v. Braunstein*, 19 F.3d 54 (1st Cir. 1994)……………………..17

## Court Rules

Fed. R. of Bankr. Pro. 2014……………………………....16

Fed. R. of Bankr. Pro. 2014(a)……………………........2, 15, 23, 17

Del. Bankr. L.R. 2014-1……………………………..2, 15, 16, 17, 21, 23

## Statutes

U.S. Bankruptcy Code, 11 U.S.C. § 101(14)(c)……………………..16

U.S. Bankruptcy Code, 11 U.S.C. § 327……………………………….17

U.S. Bankruptcy Code, 11 U.S.C. § 327(a)………………... 2, 16, 17

U.S. Bankruptcy Code, 11 U.S.C. § 328(c)…………………… 2, 17

U.S. Bankruptcy Code, 11 U.S.C. § 1103……………………… 17

## Statement of the Nature and Stage of the Proceeding

On August 21, 2006, Debtors Radnor Holdings Corporation ("Radnor") and related entities filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code.  On August 25, 2006, Debtors' Application for Order Authorizing Employment and Retention of Skadden, Arps, Meagher & Flom LLP and Affiliates as Bankruptcy Counsel to the Debtors ("Retention Application") (D.I. 96) was filed.  In 2006 and 2007, Gregg M. Galardi, Esquire, a partner at Skadden, Arps, Meagher & Flom LLP ("Skadden") filed a Declaration, a Supplement to Declaration, and a Second Supplement to Declaration.  Mark S. Chehi, Esquire, another Skadden partner, filed another Supplemental Declaration on March 15, 2013.

On September 13, 2006, the United States Trustee filed an Objection to Debtors' Application for Order Authorizing Employment and Retention of Skadden, Arps, Meagher & Flom LLP and Affiliates as Bankruptcy Counsel to the Debtors (D.I. 169).  After a hearing on September 20, 2006, the Court granted the Retention Application.  On November 21, 2006, the Court entered an Order approving the sale of substantially all of Debtors' assets to a Tennenbaum Capital Partners, LLC, related entity (D.I. 698).

The Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (D.I. 1989) was filed on November 8, 2012.  Michael T. Kennedy, former CEO and majority shareholder of Radnor, filed a *pro se* Objection to Skadden Fee Application on December 26, 2012 (D.I. 1993).  The Court received evidence, in the form of witness testimony and exhibits, at a hearing held on May 1-2, 2013.  The transcript of the hearing is included in the Appendix.  At the conclusion of the hearing the Court requested briefing on the issue.

## Summary of Argument

1. Federal Rule of Bankruptcy Procedure 2014 and Delaware Bankruptcy Local Rule 2014-1 required Skadden, Arps, Meagher & Flom LLP ("Skadden") to disclose by Affidavit all connections with, among others, Tennenbaum Capital Partners, LLC ("Tennenbaum"). Yet new information still was being revealed orally at the hearing on May 1-2, 2013, and other, relevant information never has been disclosed.

2. It is irrelevant to ruling on the Objection to Skadden Fee Application that the Court previously approved the Retention Application.

3. Pursuant to section 327(a) of the U.S. Bankruptcy Code, counsel for Debtor's can only be attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons."

4. If, as in this case, counsel makes inadequate disclosures, it does so at its peril when it submits its Final Fee Application.

5. Section 328(c) of the U.S. Bankruptcy Code states "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." That is the appropriate remedy for Skadden's failure to disclose conflicts in this case.

6. It was necessary to disclose Skadden's partners' investment in the Tennenbaum funds. To date, we still do not know the extent of the Skadden partners' investments in the

2

Tennenbaum funds during the year 2006.  We do not know the amount of money or the number of partners.

7.  It was necessary to disclose Skadden's ongoing board representation of the Tennenbaum funds.  There is nothing in any of the written declarations to reveal that Skadden partners were sitting in on board meetings for the Tennenbaum funds.  It was first revealed to the Court in a hearing on October 27, 2006, which was a month after the Court signed the Order authorizing Skadden as Debtor's counsel.  The required supplemental affidavit required by Local Rule 2014-1 has not been made to date.

8.  It was necessary to disclose the dollar amount of Skadden's attorney's fees paid by Tennenbaum and specifically for the organizational work done in the year 2004.  The 2004 Skadden Tennenbaum billings were .1107 percent of firm revenue which was 11 times greater than the 2006 Skadden billings of .0100 percent.  While Skadden refused to disclose its revenue under any circumstances during the hearing on May 1, 2013, when it wanted to have the Retention Application approved it was completely willing to do so. Just using a percentage of revenue as a basis for determining whether a conflict is material is arbitrary.

9.  As in *In re eToys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005), the Court should deny fees requested in the Final Fee Application for the period counsel was not disinterested.  In this situation, that is the entire case because of Skadden's connections to its client Tennenbaum.

3

**Statement of Facts**

On December 20, 2005, Tennenbaum Capital Partners, LLC ("Tennenbaum"), and its controlled affiliates purchased $70 million in outstanding senior floating rate notes issued by Radnor Holdings Corporation ("Radnor").  Tennenbaum also purchased an additional $25 million in newly issued senior secured floating rate notes.  Lehman Brothers, Inc., was the placement agent for the new notes as well as the convertible preferred shares purchased on September 30, 2005.  On December 31, 2005, José Feliciano, a Tennenbaum partner, was appointed to the board of Radnor pursuant to the Investors Rights Agreement signed together with the issuance of the preferred stock on September 30, 2005.

Gregg M. Galardi, Esquire, a partner at Skadden, Arps, Meagher & Flom LLP ("Skadden"), testified that his initial role with Radnor began in late May of 2006.  (5/1/2013 Hearing N.T. page 36, Appendix A-36.)  Mr. Galardi, along with another partner, Tim Pohl, was asked to attend a Radnor board meeting in order to discuss the possibility of engagement for legal services.  (5/1/2013 Hearing N.T. page 40, Appendix A-40.)  Before Mr. Galardi went to what he called the "pitch," he conducted a computer conflict check.  (5/1/2013 Hearing N.T. page 97-98, Appendix A-97-98.)  It was determined that Tennenbaum was a client of the firm (Skadden, Arps, *et al*.).  (5/1/2013 Hearing N.T. page 98, Appendix A-98.)  At that time, Mr. Galardi testified that he talked to Pat Moran, who also was a Skadden partner.  She told Mr. Galardi that Tennenbaum was a current client and there was five hours of work dealing with tax advice which was subsequently determined to involve Radnor. (5/1/2013 Hearing N.T. page 99, Appendix A-99.)  The following colloquy took place:

> Q.    And Pat Moran told you that's all she knows it's a client and five hours of tax work?
>
> A.    And that's what showed up in the conflicts check.

4

> Q.    Did you make any further inquiry at that time?
> A.    No.

(5/1/2013 Hearing N.T. page 99, Appendix A-99.)

Although Mr. Galardi testified that he did not make further inquiry at that time, upon later questioning, it was revealed that he indeed make further inquiry and learned additional information. The following examination took place:

> Q.    Don¢t most clients with the Skadden firm have a contact partner, somebody who is the partner in charge of that client?
> A.    Yes, Rick Prins was.
> Q.    Okay, did you contact him?
> A.    No, I understood that Ms. Moran had already done that.
> Q.    She told you that --
> A.    Yes.
> Q.    -- that she did that?
> A.    She told me about the engagement so I presumed that she had.
> Q.    So you don¢t know if she did it. You presumed it?
> A.    Correct.
> Q.    Did you make any contact with the partner in charge of the client, Mr. Prins?
> A.    Yes.
> Q.    And this is back in May of –06?
> A.    Yes.  Either May or the first day of June.  I can¢t remember what day so ô but as soon as I got out of the pitch, I did talk to Mr. Prins and Mr. Prins confirmed that Pat had already talked to him about this particular matter and he gave me the same advice.

(5/1/2013 Hearing N.T. pages 99-100, Appendix A-99-100.)

Once again, although Mr. Galardi testified that Mr. Prins gave him the same advice as Pat Moran, upon further questioning, this was also revealed not to be entirely accurate.  The following questions and answers took place:

> Q.    What did Mr. Prins tell you dealing with the scope of representation between Skadden and Tennenbaum?
> A.    That they represented the funds on SEC matters.
> Q.    Anything else?
> A.    That it was an ongoing representation.

5

> Q.    So you know that it's now SEC matters and tax matters.  Did he tell you that they represented any of the funds on general corporate matters?
>
> A.    I think he mentioned that at that time as well.
>
> Q.    So now it's SEC, tax and general corporate matters.  Did he tell you that they represented the fund with respect to its organization?
>
> A.    I don't remember if that happened during that particular first or second conversation or prior to the filing, but at some point, he did.

(5/1/2013 Hearing N.T. pages 100-101, Appendix A-100-101.)

Even though Mr. Galardi admitted to interviewing Mr. Prins, who was the relationship manager for Tennenbaum on behalf of Skadden, it appears that Mr. Prins did not fully disclose all of the conflicts as evidenced by the following:

> Q.    Did Mr. Prins also tell you that in addition to the SEC and the tax matters that you knew about and the possibility of doing legal work in the organization of the funds that you assisted in raising capital to carry out the investment program?
>
> A.    No.
>
> Q.    He didn't tell you that?
>
> A.    No.
>
> * * * *
>
> Q.    Did Mr. Prins tell you that he sat in on board meeting?
>
> A.    No, he did not tell me at that time.
>
> Q.    Did he tell you at a later time?
>
> A.    Yes.
>
> Q.    When did he tell you that?
>
> A.    I believe that it was -- it was before I did my supplemental declaration, but I don't know if it was before I did my original declaration.

(5/1/2013 Hearing N.T. pages 101-102, Appendix A-101-102.)

Thus, it appears obvious that the Skadden partner who had the relationship with Tennenbaum, namely, Mr. Prins, did not fully disclose Skadden's relationship with Tennenbaum to Mr. Galardi who was responsible for filing the declarations.  Other than contacting Mr. Prins, Mr. Galardi admitted that there was no other follow-up with respect to the relationship between Tennenbaum and Skadden as of June 2006.  (5/1/2013 Hearing N.T. page 104, Appendix A-104.)

6

The "Skadden Engagement Letter" was then executed by Patricia Moran on behalf of Skadden and also signed by Michael Kennedy on behalf of Radnor Holdings Corporation and is dated July 5, 2006. (Skadden Hearing Exhibit 5.) With respect to any conflicts, the engagement letter has only one sentence dealing with the conflict in question. The letter provides as follows: "The waiver provided for in this paragraph includes the firm's ongoing representation of Tennenbaum Capital Partners, LLC and its affiliates." The letter does not detail or set forth any specifics as to the relationship or representation of Tennenbaum by Skadden. It also is noteworthy that José Feliciano, a Tennenbaum partner, voted as a Radnor board member for the retention of the Skadden law firm without disclosing the relationship between Tennenbaum and Skadden to the other members of the Radnor board. (5//2013 Hearing N.T. pages 15-16, Appendix A-166-167.)

On August 21, 2006, Debtors Radnor Holdings Corporation and related entities filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code. (D.I. 1.) Mr. Galardi testified that the filing of the application into the Bankruptcy Court prompted him to do additional follow up with respect to disclosures. (5/1/2013 Hearing N.T. page 104, Appendix A-104.) Mr. Galardi was then asked what additional information he learned as a result of doing the additional follow up or what he termed a "fuller disclosure" application declaration. He stated that this fuller disclosure included things like a percentage of revenue. (5/1/2013 Hearing N.T. page 104, Appendix A-104.) Mr. Galardi was then asked specifically:

> Q.     And what additional information did you learn in this bankruptcy conflict check?
> A.     Whatever is in my declaration. I mean, all of that was disclosed, going through all that paper and all the materials. So -- I don't remember every sentence in my declaration but I what I disclosed is what's in that declaration and that's what I learned.

Q.    Maybe I should ask a more specific question.  What did you learn with respect to Tennenbaum in this followup bankruptcy conflicts check?

A.    Again, what I disclosed in the declaration.  I don't have exactly the words, but whatever I knew, that's what I put in my declaration.

Q    Your testimony is, that you put in the declaration all that you knew at that point in time, and you're talking your first declaration?

A.    Correct.

(5/1/2013 Hearing N.T. page 105, Appendix A-105.)

Mr. Galardi's declaration ("Initial Declaration") was filed with Debtor's Application for Order Authorizing Employment and Retention of Skadden, Arps, Meagher & Flom LLP and Affiliates as Bankruptcy Counsel to the Debtors ("Retention Application") (D.I. 96) on August 25, 2006, and is Kennedy Hearing Exhibit A.  With respect to Mr. Galardi's Initial Declaration, the conflict between Tennenbaum and Skadden is only described in paragraph 19, identified below:

19.    Skadden, Arps currently represents, or has represented, Tennenbaum on matters unrelated to the Debtors.  In addition, Skadden, Arps has determined that in September and October of 2005, a Skadden, Arps attorney provided tax advice to Tennenbaum in connection with the structure of its potential investment in Radnor.  This Skadden, Arps attorney billed less than the aggregate amount of 5.0 hours to the matter, and prior to taking on the restructuring engagement, Skadden, Arps obtained a full waiver from Tennenbaum.

This is the only disclosure made by Mr. Galardi on behalf of Skadden Arps with respect to the relationship with Tennenbaum. As part of the bankruptcy conflicts check, Mr. Galardi testified that he sent out an email to all of the Skadden partners.  (5/1/2013 Hearing N.T. page 106, Appendix A-106.)   Mr. Galardi testified that as of July of 2006, although he did get responses from the partners, he did not receive any positive response stating that there were Skadden partners investing in Tennenbaum funds.  (5/1/2013 Hearing N.T. page 107, Appendix A-107.)

8

With respect to the Initial Declaration filed by Mr. Galardi, he admitted that there were many items that were omitted in his declaration:

> Q.    * * * * The first sentence, though, you did say anything about Tennenbaum or Skadden doing SEC work for them?
> A.    No, I did not.
> Q.    Did you say anything about them doing general corporate matters?
> A.    No, I did not.
> Q.    Did you say anything about them doing their organizational matters and in assisting in raising funds?
> A.    No, I did not.
> Q.    Did you mention that your attorneys at Skadden are sitting on board meetings at Tennenbaum funds?
> A.    No.
> Q.    And you didn't mention anything about Skadden partners making investments, did you?
> A.    Correct.

(5/1/2013 Hearing N.T. pages 114-115, Appendix A-114-115.)

Even though Mr. Galardi admitted that many issues dealing with disclosure were omitted, he still stated that he believed that it was an adequate disclosure at the time.  (5/1/2013 Hearing N.T. page 115, Appendix A-115.)  Mr. Galardi then stated that the reason he did not give a full disclosure on the various matters was due to attorney-client issues. (5/1/2013 Hearing N.T. page 115, Appendix A-115.)

> Q.    But you already testified you knew some of those matters, you talked to Mr. Prins, the contact department, right?  You talked to him.
> A.    Corretc [sic].
> Q.    And when you talked to him you should have got a full disclosure of the work he was doing for Tennenbaum.
> A.    Yes, and then there comes the disclosure as to what you disclose of a client with respect to the matters on which you are engaged and it is our practice not to list the kinds of engagements because of attorney/client issues.  And the disclosure that we think, I think is relevant, is that it was a client of the firm, it required a waiver and the value of the matter billed and then the U.S. Trustee inquired further, which is why we supplemented the disclosure.

(5/1/2013 Hearing N.T. pages 115-116, Appendix A-115-116.)

9

On September 13, 2006, the United States Trustee filed an Objection to Debtor's Application for Order Authorizing Employment and Retention of Skadden, Arps, Meagher & Flom LLP and Affiliates as Bankruptcy Counsel to the Debtors ("U.S. Trustee's Objection to Retention Application").   (D.I. 169; Kennedy Hearing Exhibit B.)      In paragraph 10 of the Objection, the U.S. Trustee states as follows:

> From the information available on the Form N-CSR, filed with the Securities and Exchange Commission, SVEF [Tennenbaum Special Value Expansion Fund] and SVOF [Tennenbaum Special Value Opportunities Fund] appear to be represented by Richard T. Prins of Skadden.  The biography of Richard T. Prins, available on skadden.com . . . , states, "In the investment advisory and investment companies area, Mr. Prins has represented several prominent U.S. investment company complexes and investment banking firms. . . Among the clients that Mr. Prins has regularly represented in these areas are . . . Tennenbaum Capital Partners." Skadden failed to disclose Mr. Prins' connections to TCP [Tennenbaum Capital Partners], SVEF, and SVOF.

It was only after the U.S. Trustee's Objection that Mr. Galardi then filed his first supplemental declaration.  On September 18, 2006, five days after the U.S. Trustee's Objection, Mr. Galardi filed a Supplement to Declaration.  (D.I. 223; Kennedy Hearing Exhibit C.)  This supplemental declaration states that it is submitted in part in response to and in an attempt to resolve the Objection filed by the U.S. Trustee.  (See paragraph 3 of Exhibit C.)  The Galardi supplemental declaration identifies the following conflicts with Tennenbaum or its affiliates:

> 5.      . . . Skadden Arps currently represents or has represented, Tennenbaum on matters unrelated to the Debtors. . . . Richard T. Prins, Esquire, a partner at Skadden, Arps, is the primary engagement partner on matters for Tennenbaum. . . .
>
> 6.      Skadden, Arps' work on behalf of Tennenbaum consists generally of representing Tennenbaum in its capacity as a registered investment adviser, and occasionally on corporate matters. . . .
>
> 7.      Any work that Skadden, Arps does for the investment funds of Tennenbaum and Co., such as SVOF and SVEF, consists primarily of three types of representations.  First, Skadden, Arps assists such funds in their formation and in raising capital to carry out their investment program.  Second, Skadden, Arps

10

appears on behalf of such funds before the United States Securities and Exchange Commission ("the SEC") in connection with various regulatory and reporting requirements of such funds.  Third, Skadden, Arps represents such funds on day to day corporate matters. . . .

* * * *

9.    Occasionally, in connection with fund work, Tennenbaum requests Skadden, Arps to provide tax planning advice or SEC regulatory advice about potential investments.  Often this is on a no names hypothetical basis.  As set forth in the Initial Declaration, in September and October of 2005, a Skadden, Arps tax lawyer provided five hours of tax structuring advice to Tennenbaum regarding the tax structure of a security which turned out to be the security the funds acquired in Radnor. . . .

10.    As set forth in the Initial Declaration, during the twelve-month period ending June 30, 2006 (the "Trailing Twelve Months"), the value of the time billed to Tennenbaum matters accounted for only approximately .027% of the value of the time billed to all client matters for the Firm.

It is quite evident that this supplemental declaration never would have been made without the filing of the Objection by the U.S. Trustee as a result of her discovering public information on the Skadden website and public SEC filings.  This is confirmed by the fact that Mr. Galardi had all of the information at the time of his Initial Declaration but failed to disclose this information and facts in the Initial Declaration.

In the Court hearing on September 20, 2006, Mr. Galardi for the first time revealed that there are Tennenbaum funds in which the Skadden partners are investors.  (9/20/2006 Hearing N.T. pages 36-37, Kennedy Exhibit D.)  Mr. Galardi characterized these investments as a "blind trust."  The use of the term "blind trust" by Mr. Galardi was very misleading when he addressed the Court.  In the May 1, 2013, hearing, he described the phrase "blind trust" as follows:  "You would give your funds or some investment, in whether it's strategic value fund or whatever it was, you would know you would be giving it to Tennenbaum, but the investment was in the underlying things that Tennenbaum invested in." (5/1/2013 Hearing N.T. pages 110-111,

11

Appendix A-110-111.)  It is very clear that the Skadden partners knew that they were investing in a specific Tennenbaum fund:

> Q.      The partner did know it, didn't he?  He knew that he was investing in a Tennenbaum fund.
> A.      He knew the name of the fund.

(5/1/2013 Hearing N.T. page 111, Appendix A-111.)

The key issue is whether there is a conflict between Skadden and *Tennenbaum*, not the entities in which Tennenbaum invested.  Whether the Skadden partners knew the identity of those entities had absolutely no relevance to the issue of conflicts in this case.  There was no "blind trust" as to investments in Tennenbaum funds.  Mr. Galardi's testimony with regard to this basic conflict issue shows that he is misguided and therefore was incapable of making appropriate disclosure to the Court, as documented by the following colloquy:

> Q.      So the fact that Skadden partners were investing in Tennenbaum, that was the important point, not where Tennenbaum invested the money, right?
> A.      No, I don't agree with that.

(5/1/2013 Hearing N.T. page 111, Appendix A-111.)

At the time of the hearing on September 20, 2006, the Court felt pressure to retain Skadden as Debtor's counsel due to the fact that a sale was anticipated to occur within 60 days of the filing.  (5/2/2013 Hearing N.T. page 59, Appendix A-210.)  The Court noted that ". . . I did consider the fact that it would be highly disruptive, if not a killer, to switch counsel in the middle of the case.  I was influenced by the timing of this matter."  (5/2/2013 Hearing N.T. page 59, Appendix A-210.)  Thus, with significant additional conflicts between Skadden and Tennenbaum disclosed only two days before the hearing, others not yet disclosed, and the Skadden partners' investments in Tennenbaum funds inaccurately described by Mr. Galardi as a "blind trust," the

Court had to make the difficult decision with time constraints.  The Court did authorize the retention of Skadden as bankruptcy counsel to Debtors in an Order dated September 20, 2006. (D.I. 246; Kennedy Hearing Exhibit E.)

Next, in a hearing on October 27, 2006, we learned that not only was a Skadden partner sitting in regularly on Tennenbaum funds board meetings, but also that one of the board meetings actually involved discussions of investing in Radnor by a Tennenbaum fund. (10/27/2006 Hearing N.T. pages 39-40, Kennedy Exhibit F; 5/2/2013 Hearing N.T. page 8, Appendix A-159.) In addition, it also appears that the attorney attending the Tennenbaum board meeting, namely, Mr. Prins, did not even recuse himself when the investment in Radnor was discussed. (10/27/2006 Hearing N.T. page 40, Kennedy Exhibit F; 5/2/2013 Hearing N.T. page 8, Appendix A-159.)

On November 21, 2006, the Court entered an Order approving the sale of substantially all of Debtors' assets to a Tennenbaum entity.  (D.I. 698.)  Mr. Galardi later filed a Second Supplemental Declaration dated December 19, 2007.  This second supplement does not mention any conflicts between Skadden and Tennenbaum.  (D.I. 1222; Kennedy Hearing Exhibit G.)

Finally, on March 15, 2013, approximately six and a half years after Skadden's original retention, Mark S. Chehi, Esquire, a partner at Skadden, filed another supplemental declaration. (D.I. 2016; Kennedy Hearing Exhibit H.)  In this most recent declaration, Mr. Chehi states that BECS, an entity wholly owned by Skadden, purchased over a half a million dollars of stock in a Tennenbaum affiliate (TCP Capital Corp.) in 2012 and a few months later divested itself of the TCP Capital Corp. shares.  In addition, Mr. Chehi stated that 23 Skadden-related investors purchased shares in the Tennenbaum Special Value Expansion Fund (SVEF) sometime in the

year 2004.  This investment by Skadden partners was never revealed prior to March 15, 2013.  In

fact, Mr. Galardi testified that these investments were not the same investments that he

mentioned to the Court in the fall of 2006.

    Q.    Okay.  Let me ask you about this – it's in the last – and this is in H, it is in
paragraph B of the last page.  It talks about investors in this Tennenbaum fund, in 2004?
    A.    Correct.
    Q.    So you would agree it's never been disclosed in any writing before.
    A.    Correct.
    Q.    Is this the same investments that you learned about way back in the fall of
2006?
    A.    I don't believe so.
    Q.    This is additional ones.
    A.    I think it's different ones.

(5/1/2013 Hearing N.T. page 128, Appendix A-128.)

## Argument

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure states the standard for disclosure for retention of Debtor's counsel:

> . . . . The application shall be accompanied by a verified statement of the person to be employed of the person's connections with the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Delaware Bankruptcy Local Rule 2014-1 adds to the requirement:

> . . . . Promptly after learning of any additional material information relating to such employment (such as potential or actual conflicts of interest), the professional employed or to be employed shall file and serve a supplemental affidavit setting forth the additional information.

Skadden had an independent obligation under Federal Rule 2014 and Local Rule 2014-1 to disclose by Affidavit all connections with, among others, Tennenbaum. Yet new information still was being revealed orally at the hearing on May 1-2, 2013, and other, relevant information never has been disclosed.

The filing of the U.S. Trustee's Objection to Retention Application, which prompted Mr. Galardi's Supplement to Declaration is, in one sense, irrelevant. The obligation to disclose exists irrespective of any Objection to the Retention Application by the U.S. Trustee. Prospective Debtor's counsel likewise is not excused from full and complete disclosure if the U.S. Trustee does not specifically ask for all the relevant information.

It also is irrelevant to ruling on the Objection to Skadden Fee Application that the Court previously approved the Retention Application. The Court can rely only on counsel's disclosures. Michael T. Kennedy's Objection to Skadden Fee Application concerns Skadden's

15

relationship with Tennenbaum, whose related entity purchased substantially all of Debtors' assets, not some minor unsecured creditor.

Pursuant to section 327(a) of the U.S. Bankruptcy Code, counsel for Debtor's can only be attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons."

> The Code defines a "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(c). An "adverse interest," in turn, is usually defined to mean "any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (citations omitted). *See also In re 22 Acquisition Corp.*, 2004 U.S. Dist. LEXIS 6435, 2004 WL 870813, at *3 (E.D. Pa. Mar. 23, 2004); *In re Raymond Professional Group, Inc.*, 421 B.R. 891, 901 (Bankr. N.D. Ill. 2009) ("Attorneys represent an adverse interest when they serve as an attorney for any party holding an adverse interest") (citation omitted).

*In re Harris Agency, LLC*, 451 B.R. 378, 389 (Bankr. E.D. Pa. 2011).

If, as in this case, counsel makes inadequate disclosures, it does so at its peril when it submits its Final Fee Application. This Court's opinion *In re eToys, Inc.*, 331 B.R. 176, 190 (Bankr. D. Del. 2005), sets forth the standard— and the consequences for failure to meet it.

> Consequently, Bankruptcy Rule 2014 requires that the attorney seeking employment disclose to the Court *all connections* with parties in interest in the case, rather than furnishing only those which appear to implicate "disinterestedness" or "adverse interest" concerns under section 327(a). *See, e.g., In re Filene's Basement, Inc.*, 239 B.R. 850, 856 (Bankr. D. Mass. 1999) (holding that the requirements of Bankruptcy Rule 2014 "transcend those of § 327(a), as they mandate disclosure of all connections with the [applicant] rather than being limited to those which deal with disinterestedness.").

> Furthermore, the duty to disclose is ongoing. Local Rule 2014-1 provides: "Promptly after learning any additional material information relating to [its] employment (such as potential or actual conflicts of interest), the professional employed or to be employed shall file and serve a supplemental affidavit setting

16

forth the additional information." Del. R. Bankr. P. 2014-1. *See also, Rome* [*v. Braunstein*], 19 F.3d [54,] 57-58 [(1ˢᵗ Cir. 1994)] ("As the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals *throughout their tenure*, the need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment.") (emphasis in original); *In re Tinley Plaza Assocs., L.P.*, 142 B.R. 272, 278 (Bankr. N.D. Ill. 1992) ("The duty to disclose continues beyond the initial stage of application to employ counsel . . . . If a conflict arises after attorneys are employed by the debtor-in-possession, such conflict must be disclosed to the court and the court must immediately disqualify the attorney.") (citations omitted).

"So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees." [*In re Leslie Fay Cos.*], 175 B.R. [525,] 533 [(Bankr. S.D.N.Y. 1994)]. *See also, Rome*, 19 F.3d at 59 ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed *at their own risk*.") (emphasis in original).

Section 328(c) of the U.S. Bankruptcy Code states "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." That is the appropriate remedy for Skadden's failure to disclose conflicts in this case. Alternatively, the Court should defer ruling on the Final Fee Application and grant Michael T. Kennedy the right to conduct discovery to explore other, relevant information that never has been disclosed.

17

A.    **It Was Necessary to Disclose Skadden's Partners' Investment in the Tennenbaum Funds**

There was never any written disclosure of Skadden partners investing in Tennenbaum funds until Mr. Chehi filed a Supplemental Declaration on March 15, 2013.  This Supplemental Declaration revealed that the investments disclosed were not the same investments that were identified for the Court in September 2006.  To date, we still do not know the extent of the Skadden partners' investments in the Tennenbaum funds during the year 2006.  We do not know the amount of money or the number of partners.

Mr. Galardi's testimony is very telling with respect to this issue:

> Q.    So you are aware that Skadden partners occasionally invest in clients' funds.
> A.    Correct.

(5/1/2013 Hearing N.T. pages 109, Appendix A-109.)

> Q.    So you did have knowledge of the circumstances of the investments, what the conditions were with respect to the investments?
> A.    At this time, on this date, when I made these representations to the Court, yes.
> Q.    So what other conditions were there with respect to these investments?  I mean, could I invest in a Tennenbaum fund?
> A.    I really don't know.
> Q.    Well, was this something that Tennenbaum made available to Skadden partners that they didn't make available to the general public?
> A.    I believe that certain of these funds were made available to Skadden partners that were not available to others, for tax reasons.
> Q.    Not available to the general public?
> A.    Correct
> Q.    And do you know how many partners invested and how much money was involved?
> A.    I do not.

(5/1/2013 Hearing N.T. pages 123, Appendix A-123.)

18

Mr. Galardi testified that he made an inquiry with respect to the investments in the

Tennenbaum funds but he cannot recall what information he learned.

> Q.      But my question was, did you make an inquiry of anybody, what
> are we talking about here, how many partners, how much money is involved?
> A.      We did make inquiry.
> Q.      And what did you find out?
> A.      I don't remember what I found out.  I would have disclosed it to
> the court if I had found something out or to the U.S. Trustee

(5/1/2013 Hearing N.T. pages 124, Appendix A-124.)

It is uncontradicted that Mr. Galardi never made any written declaration to the Court with

respect to the extent of the Skadden investments in Tennenbaum funds even though, during his

testimony, he mistakenly believed he did.

> Q.      Did you learn anything else about the investments in these funds?
> Was there any type of special conditions, special considerations, special circumstances?
> A.      Not that I know of.
> Q.      Did you ask?
> A.      I asked Mr. Prins to give me his description, which was then put
> into the supplemental declaration.
> Q.      Could anybody -- that was put into the supplemental declaration?
> A.      The description of where the investment were and those facts were
> put into, you know, what we served as the corporate SEC counsel that the partners had invested
> in the funds.  That was in the supplemental declaration.
> Q.      Which supplemental declaration was that?
> A.      I think it's the first supplemental or second.  The one that was
> required by the U.S. Trustee and then –
> MR. BENDER: May I approach the witness with this?  I want to show
> him the supplemental declarations, your Honor.
>                                    * * * *
> Q.      I believe, sir, your -- well, we can all agree that when you made
> your initial declaration, the retention application, that's Exhibit A and that was filed on August
> 25th, '06, there's nothing about the Skadden partners investing in Tennenbaum funds, in that
> one, right?
> A.      Correct.
> Q.      Okay.  I think the next one you did was C, it's marked C.
> A.      Correct.
> Q.      Anything in there about the Skadden partners investing in the
> Tennenbaum funds?

19

A.      No, there is not.
Q.      No?  And that one was filed --
A.      September 18th.
Q.      I'm sorry?
A.      September 18th, 2006 is the date of the declaration.
Q.      Okay.  Right before the hearing.
A.      Yes.
Q.      And then the next declaration, I think is G, anything in that one?
A.      I don't believe so.
Q.      No.  So you never filed any supplemental declaration disclosing the investments of the Skadden partners, did you?
A.      No.

(5/1/2013 Hearing N.T. pages 111-113, Appendix A-111-113.)

Mr. Galardi's testimony was even more evasive later on:

Q.      Wait a minute, you made an inquiry, you got the information, correct?  You don't remember what it was and you're not disclosing it.
A.      No.  I don't think that I had the information at that time.
Q.      Well, why didn't you -- I mean, you made an inquiry, why didn't you get the information?
A.      We were trying to get some of the information, or all of the information.  I don't think that I had that information at my disposal at the time I went into the court.  I can't tell you today why I didn't have that information.
Q.      Did you find out later what it was in terms of number of partners, amount of money?
A.      I don't recall.

(5/1/2013 Hearing N.T. pages 124, Appendix A-124.)  Mr. Galardi went on to say that he believed that he released the information to the U.S. Trustee's office and then stated that he couldn't recall what the information was and does not have any documents to reflect what the information was— although "there was some writing at some point."  (5/1/2013 Hearing N.T. pages 125, Appendix A-125.)

Finally, the most important testimony regarding Mr. Galardi's disclosures may be the following:

20

Q.    And do you believe itøs relevant, the amount of money and the number of partners?  Do you believe thatøs a relevant issue?

A.    I actually donøt believe that it is relevant for this purpose . . . .

(5/1/2013 Hearing N.T. pages 125, Appendix A-125.)  If Mr. Galardi did not believe that these disclosures were relevant, it is not surprising that he failed to reveal them to the Court.

**B.    It Was Necessary to Disclose Skadden's Ongoing Board Representation of the Tennenbaum Funds**

There is nothing in any of the written declarations to reveal that Skadden partners were sitting in on board meetings for the Tennenbaum funds.  (10/27/2006 Hearing N.T. pages 39-40, Kennedy Exhibit F; 5/2/2013 Hearing N.T. page 8, Appendix A-159.)  It was first revealed to the Court in a hearing on October 27, 2006, which was a month after the Court signed the Order authorizing Skadden as Debtorøs counsel.  The required supplemental affidavit required by Local Rule 2014-1 has not been made to date.

**C.    It Was Necessary to Disclose the Dollar Amount of Skadden's Attorney's Fees Paid by Tennenbaum and Specifically for the Organizational Work Done in the Year 2004**

The 2004 Skadden Tennenbaum billings were .1107 percent of firm revenue which was 11 times greater than the 2006 Skadden billings of .0100 percent.  (Kennedy Exhibit J.)  The 2004 Skadden Tennenbaum billing was more than four times greater than the percentage revealed to the Court for the twelve months prior to Skadden retention as attorney for Radnor.  (.1107 compared to .027.)    Just using a 12 month period rather than looking back two years is arbitrary since Tennenbaum could have been a major client two years prior but had a decrease in billings for the one year prior to retention.

21

There is no reason for Skadden to hide behind confidentiality with respect to its gross revenue other than to hide the fact that they did not wish to disclose that Tennenbaum was a multi-million dollar per year client.  Skadden could have revealed this fact to the Court in camera or disclosed it pursuant to a confidentiality agreement as suggested by counsel.  While Skadden refused to disclose its revenue under any circumstances during the hearing on May 1, 2013, when it wanted to have the Retention Application approved it was completely willing to do so.

THE COURT: It would be helpful if I knew what the correct number is. And I am wondering if it wouldn't be appropriate to relate that to me in chambers.

MR. GALARDI: I will gladly relate what we understand the number to be, Your Honor.  This year's a different year.  I'd gladly go into chambers and tell you exactly what the number is, to the best of my knowledge.  I mean obviously, as Your Honor knows, from a law firm trailing 12 months.  But I can tell you what it was for the last 12 months.  I have no problem with that.

(9/20/2006 Hearing N.T. pages 51-52, Kennedy Exhibit D.)  This disclosure, however, never was made.

Just using a percentage of revenue as a basis for determining whether a conflict is material is arbitrary.  For example, a one percent client of $10 million law firm is only $100,000 whereas one percent of a $2 billion law firm is $20 million would seem material under any set of rules.  The actual dollar amount of billings between Skadden and Tennenbaum for at least two years prior to retention is relevant and material and should have been disclosed.

## Conclusion

The failure to disclose to the Court Skadden's partners' investment in the Tennenbaum funds and Skadden's ongoing board representation of the Tennenbaum funds violates Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and Delaware Bankruptcy Local Rule 2014-1.  Further, to understand the significance of the financial connection between Skadden and Tennenbaum, it was necessary to disclose the dollar amount of Skadden's attorney's fees paid by Tennenbaum and specifically for the organizational work done in the year 2004.

As in *In re eToys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005), the Court should deny fees requested in the Final Fee Application for the period counsel was not disinterested.  In this situation, that is the entire case because of Skadden's connections to its client Tennenbaum.  Alternatively, the Court should defer ruling on the Final Fee Application and grant Michael T. Kennedy the right to conduct discovery to explore other, relevant information that never has been disclosed to the Court.

[REMAINDER OF PAGE LEFT BLANK]

23

Respectfully submitted,

**BODELL BOVÉ, LLC**

/s/ Bruce W. McCullough
Bruce W. McCullough (Del. ID 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Phone: (302) 655-6749
Fax: (302) 655-6827
Email: bmccullough@bodellbove.com

and

Gary C. Bender
Forbes Bender Paolino & DiSanti P.C.
205 N. Monroe Street
Media, PA 19063
Phone: (610) 627-1700
Fax: (610) 627-1716
Email: gbender@fbpdlaw.com

Attorneys for Michael T. Kennedy

Dated: May 17, 2013

24