**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : | Chapter 11 |
In re: | : |
 | : | Case No. 06-10894 (PJW) |
RADNOR HOLDINGS CORPORATION, | : |
<u>et al</u>., | : | Jointly Administered |
 | : |
Debtors. | : | **Related Docket Nos. 1989, 1993, 1998, 2017,** |
 | : | **2019, 2068** |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**POST-TRIAL BRIEF OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**IN SUPPORT OF FINAL FEE APPLICATION**


Dated: May 31, 2013          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                             Mark S. Chehi (I.D. No. 2855)
                             Jason M. Liberi (I.D. No. 4425)
                             One Rodney Square
                             P.O. Box 636
                             Wilmington, Delaware 19899-0636
                             (302) 651-3000

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................................3

ARGUMENT ...................................................................................................................4

    A.    Skadden did not collude or conspire with Tennenbaum to orchestrate or manipulate the Sale and Chapter 11 Cases ..............................................................4

    B.    Skadden did not simultaneously represent both the Debtors and Tennenbaum in the Chapter 11 Cases....................................................................7

    C.    Tennenbaum did not select or steer Skadden to represent the Debtors ..................8

    D.    Tennenbaum was not one of Skadden's largest clients .........................................10

    E.    Skadden's relationships with Tennenbaum were known and disclosed to Kennedy and the Debtors.....................................................................................11

    F.    Skadden obtained a full waiver from Tennenbaum and did not shield Tennenbaum from litigation ................................................................................14

    G.    A reorganization of the Debtors was precluded by the Debtors' circumstances and financing terms - - not Skadden..............................................15

    H.    Skadden did not prevent Kennedy from participating in the Chapter 11 Cases ....................................................................................................................16

    I.    Skadden did not misrepresent its relationships with Tennenbaum to the Court or to the United States Trustee.....................................................................17

    J.    Skadden did not fail to disclose "conflicts in this case" .......................................20

    K.    Skadden's disclosures were adequate and sufficient ............................................21

    L.    Skadden was "disinterested" throughout the Chapter 11 Cases ...........................23

    M.    The Court should grant the Final Application and allow Skadden's fees.............25

CONCLUSION...............................................................................................................25

## TABLE OF CASES AND AUTHORITIES

**<u>CASES</u>**                                                      **<u>PAGE(S)</u>**

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)...................................................................................5

*Eastern Pilots Merger Comm.  v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*,
    279 F.3d 226 (3d Cir. 2002) .....................................................................5

*The Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum
Capital Partners, LLC (In re Radnor Holdings Corp.)*,
    353 B.R. 820 (Bankr. D. Del. 2006).........................................................5

*In re Washington Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ......................................................21

**<u>OTHER AUTHORITIES</u>**

11 U.S.C. § 101(14) ..............................................................................................23

Fed. R. Bankr. P. 2014(a) ....................................................................................20

Del. Bankr. L.R. 2014-1.......................................................................................20

1B James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (1984) ...........................5

Skadden, Arps, Slate, Meagher & Flom LLP and its affiliated law offices (collectively, "Skadden" or the "Firm"), counsel for the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors," the "Company" or "Radnor") respectfully submits this post-trial brief (the "Skadden Brief") following the contested evidentiary hearing conducted on May 1 - May 2, 2013 (the "Final Fee Hearing") on the Final Application of Skadden, Arps, Slate, Meagher & Flom LLP for Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors for the Period From August 21, 2006 Through and Including September 28, 2012 (Dkt.  1989) (the "Final Application") and the objection of Michael T. Kennedy thereto (Dkt. No. 1993)[1] (the "Motion-Objection" or "Mot-Obj. at ¶ __").

## PRELIMINARY STATEMENT

1.      Kennedy initiated this litigation with false allegations of Skadden's professional misconduct, malpractice, collusion and even "fraud."  He interjected into this contested matter unsubstantiated allegations of purported misconduct by Skadden and others alleged in his Amended Complaint (as defined below).[2]

2.      Skadden has respectfully requested (and hereby renews its request) that the Court enter an order overruling the Motion-Objection and finding that Kennedy's allegations of Skadden misconduct and wrongdoing are without merit.  Skadden's proposed order, including

---

[1]     Motion For An Order, Pursuant To Fed. R. Civ. P. 60 And Fed. R. Bankr. P. 9024, Setting Aside The November 21, 2006 Sale Order, Objecting To Skadden Fee Application And Granting Other Relief, dated December 26, 2012 (Dkt. 1993).

[2]     *See, e.g.*, Mot-Obj. at 1 ("Reference is made to certain complaint filed . . . against [Skadden] and the Tennenbaum Capital Partners LLC and its affiliates as well as individuals involved in the misconduct. . . . . As more fully described in Complaint . . . and described herein below, the Sale Order, the Confirmation Plan and certain releases were entered based on an inaccurate and incomplete record due to pervasive misrepresentations to the Court, glaring failures of counsel to disclose crucial facts and conflicts to the Court, and numerous and far-reaching improprieties.")

detailed findings of fact (drawn from the evidentiary hearing and prior court orders), is attached as Exhibit A hereto (the "Proposed Order").

3.     Testimony and evidence at the Final Fee Hearing show conclusively that there is no credible evidence - - and Kennedy adduced none - - to support any of his allegations of putative misconduct by Skadden alleged in his Motion-Objection and Amended Complaint. Kennedy has effectively conceded that there has been no Skadden misconduct because Kennedy's Post-Trial Brief (as defined below) does not even mention Kennedy's unsubstantiated allegations of misconduct, malpractice, collusion, fraud or the like.

4.     Kennedy has not presented or identified a scintilla of evidence for his misconduct allegations - - because there is no such evidence.  Instead, all the evidence at the Final Fee Hearing disproves Kennedy's allegations of Skadden misconduct.

5.     Without evidence of Skadden misconduct, Kennedy's lawyers argue that Skadden has made "inadequate disclosures" that failed to disclose "conflicts in this case." Kennedy's Post-Trial Brief argues that the Court should deny the fees requested in the Final Application because Skadden allegedly "was not disinterested" because of "Skadden's connections to its client Tennenbaum."  These allegations and arguments are as empty as Kennedy's unsubstantiated allegations of Skadden professional misconduct.

6.     For the reasons set forth in Skadden's Reply (as defined below), and upon the evidence and record of the Final Fee Hearing and the entire record of these Chapter 11 Cases, the Motion-Objection should be overruled as an objection to Skadden's Final Application because:

- Skadden did not collude or conspire with Tennenbaum to orchestrate or manipulate the Sale and Chapter 11 Cases

- Skadden did not represent both the Debtors and Tennenbaum in the Chapter 11 Cases

- Tennenbaum did not select or steer Skadden to represent the Debtors

- Tennenbaum was not one of Skadden's largest clients

- Skadden's relationships with Tennenbaum were known and disclosed to Kennedy and the Debtors

- Skadden obtained a full waiver from Tennenbaum and did not shield Tennenbaum from litigation

- A reorganization of the Debtors was precluded by the Debtors' circumstances and financing terms - - not Skadden

- Skadden did not prevent Kennedy from participating in the Chapter 11 Cases

- Skadden did not misrepresent its relationships with Tennenbaum to the Court or to the United States Trustee (the "UST")

- Skadden did not fail to disclose "conflicts in this case"

- Skadden's disclosures were adequate and sufficient

- Skadden was "disinterested" throughout the Chapter 11 Cases

7.      Skadden respectfully requests entry of the Proposed Order overruling the Motion-Objection and granting the Final Application.  *See* Exhibit A hereto.

## FACTUAL AND PROCEDURAL BACKGROUND

8.      The background facts and procedural posture in the Skadden Reply (and the Skadden Reply in its entirety) are incorporated herein by reference and, in the interests of brevity, will not be repeated fully here.

9.      On November 8, 2012, in accordance with the terms of the Plan,[3] Skadden filed its Final Application.  Kennedy filed his Motion-Objection on December 26, 2012. Kennedy also filed a complaint against Skadden and other parties that was subsequently

---

[3]      Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Skadden Reply.

amended (the "Amended Complaint") (Adv. Dkt. No. 5).[4]  Kennedy relies upon the Amended

Complaint and its allegations in his Motion-Objection.  *See* Mot-Obj. at 1, 21; fn. 2 *supra*.

10.    On March 15, 2013, Skadden filed its reply (the "Skadden Reply") to

Kennedy's Motion-Objection (Dkt. No. 2017).

11.    On May 1-2, 2013, the Court conducted an evidentiary hearing on the

Final Application and Motion-Objection.  After the Final Fee Hearing, the Court ordered post-

trial briefing.  On May 17, 2013, Kennedy's counsel filed his opening post-trial brief

("Kennedy's Post-Trial Brief") (Dkt. No. 2068).

12.    The transcripts of the Final Fee Hearing have been filed with the Court

(Dkt. Nos. 2053, 2063) (hereinafter, respectively, "5/1 Tr. at __" and "5/2 Tr. at __"), and are

annexed as a filed appendix (Dkt. No. 2068-2) to Kennedy's Post-Trial Brief.

## ARGUMENT

13.    Kennedy does not challenge or object to the reasonableness of any of the

fees and expenses applied for by Skadden.  Instead, Kennedy objects to the Final Application by

alleging putative conflicts, professional misconduct and non-disclosures by then-Skadden partner

Gregg Galardi ("Galardi").  However, Kennedy's Post-Trial Brief abandons any effort to

substantiate his professional misconduct allegations.  In any event, all of Kennedy's allegations

are meritless, unproven and unsubstantiated.

**A.    Skadden did not collude or conspire with Tennenbaum to orchestrate or manipulate
the Sale and Chapter 11 Cases**

14.    For the reasons set forth in the Skadden Reply,[5] Skadden did not collude

---

[4]    At the Final Fee Hearing, the Court took judicial notice of the Amended Complaint and admitted it into
evidence.  *See* 5/1 Tr. at 53.

[5]    *See, e.g.*, Skadden Reply at pp. 20-25.

or conspire with Tennenbaum to orchestrate or manipulate the Sale or Chapter 11 Cases. At the Final Fee Hearing, Kennedy advanced no evidence to support such allegations.

15.     All the evidence and testimony at the Final Fee Hearing is consistent with the Court's prior November 17, 2006 findings and rulings that (i) Tennenbaum never planned to acquire the Debtors' assets before entering into the APA; (ii) it was the Debtors (not Tennenbaum) who requested that Tennenbaum act as bankruptcy stalking horse bidder; (iii) only with reluctance did Tennenbaum agree to do so; (iv) the APA was reached after spirited, arm's length negotiations between Tennenbaum and the Debtors; (v) it was Kennedy (not Tennenbaum) who controlled the Debtors at all times; and (vi) no one at Tennenbaum ever exercised control over the Radnor board of directors. 353 B.R. at 834, 837.[6]

16.     The Court's November 17, 2006 findings of fact and conclusions of law (referenced in Skadden's Reply and incorporated herein by reference) remain the law of these Chapter 11 Cases.[7]  These prior rulings defeat Kennedy's allegations that Skadden colluded or conspired with Tennenbaum.

17.     At the Final Fee Hearing, Kennedy did not present any evidence that a collusion or conspiracy involving Skadden caused the Debtors to enter into the APA and Sale transactions.  Instead, Galardi's testimony was entirely consistent with this Court's prior rulings

---

[6]     References to "353 B.R. at ___" are citations to the Court's November 17, 2006 Amended Findings of Fact and Conclusions of Law in *The Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, Adv. Pro. No. 06-50909, 353 B.R. 820 (Bankr. D. Del. 2006).

[7]     *See Eastern  Pilots Merger Comm. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 279 F.3d 226, 232 (3d Cir. 2002) (law of the case doctrine "limits relitigation of an issue once it has been decided."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' (citing *Arizona v. California*, 460 U.S. 605, 618, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983). This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'"), 1B James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE ¶ 0.404[1], p. 118 (1984)).

that:  (i) the Debtors' decision to enter into the APA and Sale transactions were in the best interest of the Debtors, their estates, their creditors and all parties in interest; (ii) the sale procedures approved by the Court were the result of arm's length negotiations between the Debtors, the Committee, Tennenbaum and the DIP Lenders; (iii) the Debtors were unable to consummate a sale or refinancing transaction outside bankruptcy; and (iv) in the absence of Court approval of the Sale, the Debtors would have undergone piecemeal liquidation with attendant loss of value.  Sale Order at pp. 5-7 (Dkt. No. 698).  These findings and rulings are the law of these Chapter 11 Cases.

18.     Galardi testified that there was *no truth* to Kennedy's allegations that Skadden and others (i) "intentionally deceived Kennedy and other [Radnor] stakeholders and ultimately obstructed and undermined Kennedy's efforts to restructure, then reorganize Radnor" and (ii) "acted in concert and committed egregious acts of fraud so as to orchestrate a sale of Radnor's assets to the exclusive benefit of the Tennenbaum defendants and breached their fiduciary duties by disclosure[,] care and loyalty to … [Kennedy and Radnor], as well as the Court."  5/1 Tr. at 67.

19.     Galardi testified repeatedly that Skadden *did not* "conspire or collude with Tennenbaum to frustrate or block Radnor reorganization efforts" and there *was not* "any collusion or conspiracy between Skadden and Tennenbaum to advance Tennenbaum's interest in these cases."  *Id.* at 64, 69.

20.     Galardi testified that Skadden acted adversely to Tennenbaum during the Chapter 11 Cases.  He testified that the relationship between Skadden and Tennenbaum was "at arm's length," "swords length," "frequently contentious" and "even more than arm's length at times."  5/1 Tr. at 69-70, 96.  Galardi testified that he "negotiated as strongly as [he] could for

6

the debtors against Tennenbaum."  *Id.* at 96.  He testified that (i) "Skadden had Tennenbaum investigated with the appointment of an independent special director and separate counsel" to investigate "all things Tennenbaum-related" (*see, e.g.*, 5/1 Tr. at 57, 63); (ii) Skadden  negotiated "quite strongly" against Tennenbaum "with respect to bid procedures . . . and bankruptcy" and "to get additional consideration such as assuming certain liabilities" (*id.* at 65, 66); and (iii) Skadden sought and obtained a "full waiver" from Tennenbaum that removed any limitation on Skadden's ability to act on a basis adverse to Tennenbaum, including in litigation against Tennenbaum.  *See id.* at 54-55.

21.     On this record, the Court should overrule any objection to the Final Application that is predicated on allegations that Skadden colluded or conspired with Tennenbaum.

**B.     Skadden did not simultaneously represent both the Debtors and Tennenbaum in the Chapter 11 Cases**

22.     For the reasons set forth in the Skadden Reply,[8] Skadden did not simultaneously represent both the Debtors and Tennenbaum in connection with the Chapter 11 Cases.  The Court's 2006 order (Dkt. No. 246) authorizing the Debtors' retention of Skadden is the law of these Chapter 11 Cases.  Skadden represented the Debtors, and Tennenbaum had its own counsel.[9]

23.     Galardi's testimony at the Final Fee Hearing proves that Kennedy and the Debtors knew Skadden did not represent Tennenbaum, and that Skadden represented the Debtors on a basis adverse to Tennenbaum.  *See* ¶ 18 *supra*.

---

[8]     *See, e.g.*, Skadden Reply at 20-24.

[9]     Tennenbaum was represented in the Chapter 11 Cases by the Richards Layton and Milbank Tweed firms, as evidenced by their notice of appearance.  *See* Docket No. 87.

24.     Galardi testified that he told Kennedy and the Radnor board in his "first discussions with Radnor" that Skadden "would need a waiver" from Tennenbaum to take on a position adverse to Tennenbaum.  *See* 5/1 Tr. at 42-43.   Galardi testified that he told the Radnor board including Kennedy and Feliciano (Tennenbaum's nominee to the Radnor board) that Skadden might "have to be adverse to [Tennenbaum]" and would need a waiver from Tennenbaum.  *Id.*

25.     Galardi testified that Skadden requested a waiver from Tennenbaum, and believed such a waiver "was crucial . . . and that anything less [than a full, unequivocal waiver] would have been unacceptable to Skadden."  *See* 5/1 Tr. at 48.  Galardi testified that Tennenbaum gave Skadden a "full waiver" which effectively terminated any limitations on Skadden's ability to (i) act on Radnor's behalf and (ii) sue or otherwise proceed adversely to Tennenbaum.  *See* 5/1 Tr. at 55.

26.     Based on the record of the Final Fee Hearing and the entire record of the Chapter 11 Cases, the Court should overrule any objection predicated on allegations that Skadden represented Tennenbaum or its interests in connection with the Debtors' cases.

## C.     Tennenbaum did not select or steer Skadden to represent the Debtors

27.     For the reasons set forth in the Skadden Reply,[10] there is no truth to Kennedy's allegations that Tennenbaum "selected" Skadden to represent the Debtors, or that Tennenbaum and Skadden "steered" Radnor's retention of Skadden.  Mot-Obj. at ¶¶ 16, 30. Evidence and testimony at the Final Fee Hearing conclusively disprove these allegations.

28.     Kennedy's e-mail communications attached to Kennedy's Appendix (Dkt. No. 1998) in support of his Motion-Objection show that Tennenbaum did not select Skadden.

---

[10]    *See, e.g.*, Skadden Reply at pp. 24-25.

*See* Exhibit B hereto (excerpts from Exhibit D to Kennedy's Appendix (Dkt. No. 1998)).  These

e-mail communications between Kennedy, Feliciano (Tennenbaum's nominee to Radnor's

board) and Williamson (Radnor's general counsel) show that (i) Feliciano resisted Skadden's

selection as Radnor's bankruptcy-restructuring counsel, (ii) Feliciano was "not comfortable

selecting" Skadden lawyers, (iii) Feliciano's view was that "getting a NY firm does not make

any sense" and (iv) Feliciano wanted to meet and interview a "3rd firm" (as an alternative to the

Skadden and Duane Morris firms being considered).  *Id.*[11]

29.     Kennedy's testimony about the same e-mails acknowledges that

Tennenbaum resisted Radnor's selection of Skadden as counsel while Kennedy actively pushed

for Skadden's retention.  *See* 5/2 Tr. at 48-50.  Under cross-examination, Kennedy agreed that

Feliciano "did not insist on the approval of Skadden [], but rather requested that [Kennedy]

interview additional firms."  *Id.* at 50.  Kennedy testified that Feliciano was "not comfortable"

selecting Skadden.  *Id.* at 49.

30.     Skadden did not steer Radnor's decision to hire the Firm:  Galardi

testified, "[n]o Skadden attorney, . . . [Galardi] included, participated in the ultimate

deliberation . . . [of] the board to retain Skadden."  *See* 5/1 Tr. at 52.  Galardi testified that after

interviewing him, the Company excused him immediately to deliberate upon Skadden's potential

engagement.  *Id.*  Galardi also testified that Feliciano merely had "one vote" in connection with

Radnor's retention of Skadden.  *Id.*

31.     In short, Kennedy advanced no evidence to support his manufactured

allegation that Tennenbaum "selected" or "steered" Skadden to represent the Debtors.

---

[11]    The e-mail communications in Exhibit B hereto that are excerpted from Exhibit D to Kennedy's Appendix were
admitted into evidence at the Final Fee Hearing.  *See* 5/2 Tr. at 52.

9

**D.      Tennenbaum was not one of Skadden's largest clients**

32.      For the reasons set forth in the Skadden Reply[12] and as confirmed by Skadden testimony at the Final Fee Hearing, Tennenbaum was not one of Skadden's "major clients" or "largest clients."  *See* Mot-Obj. at ¶¶ 11-12.

33.      Stephan Bell ("Bell"), Skadden's Director of Client Administration who is "in charge of the entire billing collections for the firm globally" (5/1 Tr. at 13) testified that "[in] the trailing twelve months" of the date of the bankruptcy filing, Tennenbaum and its affiliates only represented .027% of Skadden's revenues.  *See* 5/1 Tr. at 18-19.  Bell's testimony confirmed the accuracy of Galardi's disclosure in his August 25, 2006 Declaration (Dkt. No. 96) that only .027% of Skadden's revenues during the trailing twelve months of the Petition Date were attributable to Tennenbaum.  Galardi's disclosure of the .027% amount before the September 20, 2006 hearing on Skadden's retention was the basis for the Court's finding that "Skadden . . . revenue from [Tennenbaum] is not significant."  *See* Galardi August 2006 Declaration (Dkt. No. 96) ¶ 19, fn. 4; 9/20/06 Hearing Tr. at 61 (Dkt. No. 298).  That ruling remains the law of these Chapter 11 Cases.

34.      Bell's testimony also confirmed the amounts of Skadden revenue attributable to Tennenbaum affiliates for each calendar year, 2001 through 2012 (presented in Skadden Exhibit 1 at the Final Fee Hearing[13]).  *See* 5/1 Tr. at 15-17.  Bell's testimony confirmed that the percentage of Skadden revenue attributable to Tennenbaum affiliates during the 2001 – 2012 calendar year periods ranged from a low of 0.0019% to a high of 0.1107%, and averaged

---

12      *See, e.g.*, Skadden Reply at pp. 26-27.

13      Skadden Exhibit 1 at the Final Fee Hearing was admitted into evidence.  *See* 5/1 Tr. at 10-11.

0.0372%.  Such percentages disprove Kennedy's allegations that Tennenbaum was one of Skadden's "major" or "largest" clients.

35.     The Court declined to admit into evidence Kennedy's "homemade exhibits" that purported (without any testimony or foundation) to summarize legal fees paid by Tennenbaum to Skadden.  5/2 Tr. at 57-58.

36.     Kennedy's Post-Trial Brief does not challenge Bell's testimony about the accuracy of disclosed percentages of Skadden revenue attributable to Tennenbaum. Accordingly, the record of the Final Fee Hearing proves that Tennenbaum was not one of Skadden's "major" or "largest" clients.  The Court's September 20, 2006 finding and ruling that Skadden revenue from Tennenbaum "is not significant" controls as the law of these Chapter 11 Cases.

**E.     Skadden's relationships with Tennenbaum were known and disclosed to Kennedy and the Debtors**

37.     For the reasons set forth in the Skadden Reply,[14] and as evidenced at the Final Fee Hearing, Skadden's relationships with Tennenbaum were known and disclosed to Kennedy and the Debtors before Radnor retained Skadden.  Kennedy's contrary testimony was not credible.

38.     Galardi testified that, throughout the Skadden engagement and retention process, Skadden professionals told Radnor and Kennedy about Skadden's pre-existing and ongoing attorney-client relationship with Tennenbaum.  For instance, Galardi testified that, during his initial meeting and "series of discussions" with Radnor representatives (including Kennedy, other Radnor board members, Radnor's general counsel, its CFO and others), Galardi

---

[14]     *See, e.g.*, Skadden Reply at pp. 27-30.

disclosed that "Tennenbaum was, in fact, a client of the firm," that "Skadden did represent and had ongoing relationships with Tennenbaum" and that Skadden had provided Tennenbaum with "five hours . . . [of] tax advice" concerning its investment in Radnor.  *See* 5/1 Tr. at 40, 42, 46.[15]

39.     Galardi testified that he told Kennedy and the Radnor board during his initial discussions with them that there could be circumstances where Skadden might have to be adverse to Tennenbaum, and that Skadden would need a waiver from Tennenbaum to take on a representation of Radnor "adverse" to Tennenbaum as "a client of the firm.".  *Id.* at 42-43.

40.     Galardi testified that all Radnor board members (including Kennedy) - - as well as Radnor's general counsel and its CFO - - participated in person or by telephone in the initial Radnor board discussions with Galardi.  *Id.* at 43-44, 72.  Galardi's testimony is consistent with the Skadden engagement letter signed by Kennedy (with a copy to Radnor's general counsel), whereby Radnor and Kennedy acknowledged that Skadden had an on-going attorney-client relationship with Tennenbaum.  *See* 5/1 Tr. at 79-80.

41.     Likewise, Galardi testified that Kennedy and other key Radnor board members and officers were present and participated in later board discussions regarding Skadden's bankruptcy retention in the Chapter 11 Cases.  Galardi testified that he discussed with them the substance of the United States Trustee's objection to Skadden's retention application, and also the supplemental disclosures about Skadden's relationships with Tennenbaum that Galardi would make.  5/1 Tr. at 81-82.

42.     Galardi testified that Radnor's general counsel was involved and informed "daily" throughout the Skadden retention process about Skadden's disclosures and its attorney-

---

[15]    *See also* 5/1 Tr. at 71:  Galardi testified that he "told the board as well as the general counsel as well as the chief financial officer . . . that Tennenbaum was a current client of the firm and . . . also told them that with respect to Radnor specifically, that a Skadden lawyer had given advice which subsequently turned out to be Radnor-related advice.  This was not a surprise to them because . . . they had already heard that from . . . my partners."

client relationship with Tennenbaum, both before Skadden's initial pre-bankruptcy retention and later in the bankruptcy-related retention process. *See* 5/1 Tr. at 72. Radnor's general counsel reviewed Skadden's engagement letter before it was signed, reviewed all the Skadden-retention related pleadings and draft Galardi disclosures, and she was in court with Galardi at "each and every" hearing when Skadden's retention was contested and disclosures about Skadden's relationships were made by Galardi and discussed in open court. *Id.* at 74, 80, 82. Galardi also discussed the Skadden retention issues with the board and Kennedy before and after each hearing on Skadden's retention. *Id.* at 74.

43.    Kennedy's testimony and allegations that he and Radnor were unaware of Skadden's pre-existing and ongoing attorney-client relationship with Tennenbaum are not credible. Indeed, Kennedy admitted on cross-examination that in May 2006, before the Radnor board voted to retain Skadden, (i) Skadden attorneys told Kennedy that Tennenbaum was a client of Skadden, *see* 5/2 Tr. at 43-44, 46; (ii) Skadden professionals told Kennedy that Skadden had represented Tennenbaum on certain "unrelated matters," *see id*. at 45-46; and (iii) no later than May 30, 2006, Kennedy knew that Skadden had represented Tennenbaum in other matters. *See id*. at 45-47. Kennedy likewise admitted that he was informed on May 30, 2006 in writing by Feliciano that Feliciano "has [had] plenty of dealing with Skadden." *See id*. at 47.

44.    The Court should find that Skadden disclosed and did not conceal from Kennedy and other Radnor board members and officers Skadden's pre-existing and ongoing relationships with Tennenbaum.

**F.    Skadden obtained a full waiver from Tennenbaum and did not shield Tennenbaum from litigation**

45.    For the reasons set forth in the Skadden Reply,[16] and as shown at the Final Fee Hearing, there is no truth to any of Kennedy's unsubstantiated allegations that (i) Skadden attempted to "shield the Tennenbaum parties from liabilities," (ii) the Skadden engagement letter with Radnor was "intended to insulate Skadden and Tennenbaum from liability" and (iii) Skadden agreed to "not litigate claims against Tennenbaum."  Mot-Obj. at ¶ 26; Amended Complaint at ¶ 98.  As objections to the Final Application, these allegations should be overruled.

46.    Galardi testified that the conflicts waiver agreed to by Radnor in Skadden's engagement letter was *not intended* to insulate Skadden and Tennenbaum from liability.  *See* 5/1 Tr. at 79-80.  Galardi testified that the conflicts waiver in the engagement letter was intended to allow Skadden to represent the Debtors without prejudicing Skadden's rights to represent Tennenbaum in ongoing matters unrelated to Skadden's representation of the Debtors. *Id.*

47.    Galardi testified that before entering into its engagement letter with Radnor, Skadden requested and obtained a "full waiver" from Tennenbaum that permitted Skadden to represent Radnor on a basis adverse to Tennenbaum, including in bankruptcy litigation against Tennenbaum.  *See* 5/1 Tr. at 54-55; Skadden Ex. 4.  Galardi testified that there was *no truth* to Kennedy's allegations that Tennenbaum's "delivery of a full waiver to Skadden was an attempt to shield the Tennenbaum parties from liabilities."  *Id.* at 56.

48.    Galardi also testified that "[t]here was no understanding" between Tennenbaum and Skadden that Skadden would not litigate claims against Tennenbaum.  *Id.* at

---

[16]    *See, e.g.*, Skadden Reply at pp. 34-36.

57.  He testified that there was no "agreement, express or tacit, that Skadden would shield Tennenbaum from litigation in connection with the Radnor Chapter 11 cases." *Id.*

49.  Galardi testified that instead of shielding Tennenbaum from litigation and liabilities, "Skadden had Tennenbaum investigated with the appointment of an independent special director and separate counsel, WilmerHale, that did an analysis." *Id.*  Galardi testified that the independent special director served with the assistance of WilmerHale as a special committee of one "to investigate claims, causes of action, and the liens of Tennenbaum." *Id.* at 62.

**G.    A reorganization of the Debtors was precluded by the Debtors' circumstances and financing terms - - not Skadden**

50.  For the reasons set forth in the Skadden Reply,[17] previous findings and orders of this Court (that are the law of these Chapter 11 Cases) defeat Kennedy's allegations that Skadden (i) prevented or obstructed a reorganization of Radnor, (ii) "failed to provide resources to the Debtor," (iii) "undermined" a reorganization, and (iv) failed to disclose competing restructuring proposals to the Court or Radnor's board.  Mot-Obj. at ¶ 24.  These allegations were disproven at the Final Fee Hearing and should be overruled as objections to the Final Application.

51.  Galardi testified specifically that Skadden *did not* "conspire or collude with Tennenbaum to frustrate or block Radnor reorganization efforts" and *did not* "agree or work with Tennenbaum to undermine Radnor's reorganization process."  5/1 Tr. at 64.  He testified that Skadden *did not* "undermine the debtors' ability to reorganize or restructure," *did not* "fail to provide any legal or other resources" requested for the Debtors, and *had no* "goals of preventing

---

[17]    *See, e.g.*, Skadden Reply at pp. 36-38.

a reorganization of Radnor" and "would have been very pleased had there been a restructuring." *Id.* at 93-95.

52.    Galardi testified that there was *no truth* to Kennedy's allegations that Skadden failed "to disclose restructuring proposals to Radnor's board" because "there was never a restructuring proposal that had financing." *Id.* at 94.[18]

**H.    Skadden did not prevent Kennedy from participating in the Chapter 11 Cases**

53.    As set forth in the Skadden Reply,[19] Kennedy alleges falsely that he "was purposefully kept in the dark throughout this bankruptcy proceeding and particularly through the sale process" and that Tennenbaum, Tennenbaum's counsel and Skadden "took steps to ensure that Mr. Kennedy did not participate in the court hearings or the depositions or review any of the testimony in this case." Mot-Obj. at ¶ 52. Kennedy also alleges falsely that his personal bankruptcy counsel acted together with Skadden to ensure that Kennedy did not participate in the litigation before the Court. *Id.* at ¶¶ 13, 34.

54.    The record of the Chapter 11 Cases and at the Final Fee Hearing disprove Kennedy's allegations. The record shows that Kennedy admits he did participate actively in the Chapter 11 Cases. *See* Skadden Reply ¶¶ 107, 109. At the Final Fee Hearing, Galardi testified that Skadden "[a]bsolutely" did not "prevent Mr. Kennedy from participating in the Chapter 11 cases," and that Kennedy did participate "and was active" in Radnor board meetings. 5/1 Tr. at 91.

55.    Galardi testified that Kennedy was involved in "numerous meetings" and "phone calls" with financial advisors and Galardi about Kennedy's "ideas" and a "restructuring

---

[18]    *See also* 5/1 Tr. at 65:  Galardi testified that "there was never a plan that was brought to the board of Radnor… because there was never financing or structure."

[19]    *See, e.g.*, Skadden Reply at pp. 39-40.

plan" but "[u]nfortunately, the capital never came in." This Galardi testimony refutes Kennedy's allegations that Skadden kept him in the dark. *Id*. at 90.

56.     Although Galardi testified that he advised Kennedy "from the company standpoint" that Galardi "didn't think it was wise" for Kennedy to be at certain hearings involving litigation of alleged "breach of fiduciary duty" claims, Galardi told Kennedy that he should discuss this "personal matter" with Kennedy's personal counsel. *Id.* at 91. Kennedy himself admits in his Amended Complaint (¶ 191) that his personal counsel (Stuart Friedman) advised Kennedy to "remain focused on restructuring Radnor and allow Friedman to review the hearing transcripts."

57.     That Galardi expressed his view "from the company standpoint" that Galardi "didn't think it was wise" for Kennedy to attend certain hearings and hear or read testimony of other witnesses is *not* evidence that Skadden "took steps to ensure" Kennedy did not participate in the Chapter 11 Cases. As Galardi testified, Skadden undertook to provide Kennedy's personal counsel "with the transcripts from the [fiduciary breach litigation] hearings on a daily basis" and those were the only hearings that Skadden advised Kennedy "not to attend." *See* 5/1 Tr. at 91-92.

I.     **Skadden did not misrepresent its relationships with Tennenbaum to the Court or to the United States Trustee**

58.     For the reasons set forth in the Skadden Reply,[20] there is no merit to Kennedy allegations (Mot-Obj. at ¶¶ 16, 18, 27) that Skadden misrepresented its Tennenbaum connections to the Court or UST.

59.     Prior to and at the September 20, 2006 hearing on approval of Skadden's

---

[20]     *See, e.g.*, Skadden Reply at pp. 30-33.

bankruptcy retention, then-Skadden partner Galardi disclosed in two declarations (the "Galardi

Declarations") and in open court the following (collectively, the "Pre-Retention Disclosures"):

- "Skadden, Arps currently represents, or has represented, Tennenbaum on matters unrelated to the Debtors.  In addition, Skadden, Arps has determined that in September and October of 2005, a Skadden, Arps attorney provided tax advice to Tennenbaum in connection with the structure of its potential investment in Radnor.  The Skadden, Arps attorney billed less than the aggregate amount of 5.0 hours to the matter, and prior to taking on the restructuring engagement, Skadden, Arps obtained a full waiver from Tennenbaum."  (Galardi August 2006 Declaration ¶ 19).

- "During the twelve-month period ending June 30, 2006 (the "Trailing Twelve Months"), the value of the time billed to Tennenbaum matters accounted for only approximately .027% of the value of the time billed to all client matters for the Firm."  (Galardi August 2006 Declaration ¶ 19 n. 4; *see also* 9/20/06 Hearing Tr. at 33, 60-61).

- "Richard T. Prins, Esquire, a partner at Skadden, Arps, is the primary engagement partner on matters for Tennenbaum . . . Skadden, Arps' work on behalf of Tennenbaum consists generally of representation Tennenbaum in its capacity as a registered investment adviser, and occasionally on corporate matters. . . .  Any work that Skadden, Arps does for the investment funds of Tennenbaum & Co., . . . consists primarily of three types of representations.  First, . . . assists such funds in their formation and in raising capital . . . .  Second, . . . appears on behalf of such funds before the United States Securities and Exchange Commission . . . in connection with the various regulatory and reporting requirements of such funds.  Third, . . . represents such funds on day to day corporate matters." (Galardi September 2006 Supplemental Declaration ¶¶ 5-9).

- "Occasionally in connection with fund work, Tennenbaum requests Skadden, Arps to provide tax planning advice or SEC regulatory advice about potential investments.  Often this is on a no names hypothetical basis.  As set forth in the Initial Declaration, in September and October of 2005, a Skadden, Arps tax lawyer provided 5 hours of tax structuring advice to Tennenbaum regarding the tax structure of a security, which turned out to be the security the funds acquired in Radnor." (*Id.*)

- Richard Prins, a Skadden partner, never [worked] for Tennenbaum on a Radnor-related matter.  (9/20/06 Hearing Tr. at 34).

- Five hours of tax work was performed by Skadden, Arps for Tennenbaum regarding Radnor.  (*Id.*).

- Certain Skadden partners invested in Tennenbaum-affiliated funds, over which such partners had no investment authority.  (*Id.* at 36-37).

　　　　60.　　During the September 20, 2006 hearing on Skadden's retention, Galardi

18

informed the Court that Skadden recommended to the Special Committee of the Board that they

hire special counsel (that had not represented Tennenbaum) to investigate Tennenbaum claims,

liens, conduct, conduct of sale, good faith, and arm's-length negotiations.  *See* 9/20/06 Hearing

Tr. at 36.  Galardi also disclosed at the same hearing that he previously had disclosed to the UST

that Skadden partners had investments in Tennenbaum funds.  *Id.* at 36-37.

   61. At the Final Fee Hearing, Galardi testified that the Pre-Retention

Disclosures he made - - which were discussed with Williamson (Radnor's general counsel) in the

presence of Kennedy (*see* 5/1 Tr. at 74) - - disclosed all information that was known to Galardi at

the time, and that he continues to believe that each of his disclosures were "full and accurate."

*See, e.g.*, 5/1 Tr. at 87.

   62. At the Final Fee Hearing, Galardi testified that he did not misrepresent or

intentionally fail to disclose to the Court or UST facts concerning Skadden's relationships with

Tennenbaum.  5/1 Tr. at 83, 87.  He testified:  "I believe the disclosure was full and accurate.  I

believe the supplement was full and accurate.  And I think the second supplement was full and

accurate.  And I stand by my representations to the Court on those."  *Id.* at 87.  During cross-

examination by Kennedy's counsel, Galardi reiterated that in 2006 he had disclosed - - by

supplemental declaration and/or statements in open court - - any information he knew that had

emerged regarding Skadden's relationship with Tennenbaum.  *See Id.* at 105.  Galardi's

testimony and the record of these Chapter 11 Cases substantiate Galardi's belief that he and

Skadden "fully disclosed" their relationship with Tennenbaum and its affiliates.

   63. Galardi also testified that Skadden did not block the UST investigation

and objection to Skadden's retention that focused on Skadden relationships with Tennenbaum.

5/1 Tr. at 64.  Galardi disclosed information to the UST about Skadden partner connections to

Tennenbaum.  9/20/06 Hearing Tr. at 36-37.

**J.       Skadden did not fail to disclose "conflicts in this case"**

64.       Kennedy's Post-Trial Brief asserts that Skadden allegedly made "inadequate disclosures" of "conflicts in this case" related to Skadden's connections to Tennenbaum.

65.       However, as set forth in the Skadden Reply, in testimony at the Final Fee Hearing, and as restated in paragraphs 59-60 *supra*, Skadden did disclose to the Court its pre-existing and ongoing relationships with Tennenbaum.  These disclosures disprove Kennedy's allegations that Skadden did not disclose conflicts.

66.       Galardi accurately disclosed among other things (i) the Firm's pre-existing and ongoing representation of Tennenbaum in other unrelated matters, including certain tax, corporate and SEC matters; (ii) the level of materiality and significance of the Skadden-Tennenbaum relationship by Skadden revenue percentage amount; and (iii) the fact that certain Skadden partners invested in funds managed by Tennenbaum.  *See* ¶ 59 s*upra*.   Each of these Pre-Retention Disclosures was made openly, publicly and to this Court prior to the Court's approval and authorization of Skadden's retention.  *Id.*  Galardi also disclosed prior to the Court's approval of Skadden's retention that Skadden obtained a full waiver allowing it to proceed adversely to Tennenbaum on any matter related to the Radnor bankruptcy.  (Galardi August 2006 Declaration ¶ 19).

67.       It follows that all of the information required by Bankruptcy Rule 2014(a) and Local Rule 2014-1 - - including all of Skadden's connections with Tennenbaum - - was disclosed to the Court and UST prior to the Court's approval of Skadden's retention, and available to all parties-in-interest.  Kennedy cannot argue that Skadden failed to disclose its Tennenbaum connections.

**K.      Skadden's disclosures were adequate and sufficient**

68.      The gist of Kennedy's Post-Trial Brief is that Skadden's disclosures allegedly were "inadequate" (not that Skadden failed to disclose).  Kennedy's arguments lack merit and should be overruled as objections to the Final Application.

69.      Skadden's disclosures followed the standard practices of Skadden and other debtor counsel firms in making initial retention disclosures.  *See In re Washington Mut., Inc.*, 442 B.R. 314, 326 (Bankr. D. Del. 2011) (disclosure sufficient because debtors-counsel's retention affidavit informed court that the "firm represented [the ultimate purchaser of substantially all assets] in unrelated matters.").  Skadden's Pre-Retention Disclosures confirmed that Tennenbaum was a Skadden client, disclosed the size of the Tennenbaum client relationship relative to Skadden's overall business, and disclosed that Tennenbaum provided a full waiver in connection with Skadden's representation of the Debtors.  *See* ¶¶ 58-60 *supra.*

70.      Skadden followed common practice in this district and others with respect to bankruptcy retention disclosures.  Skadden made supplemental disclosures as new information was learned or requested in response to information requests by the UST.  5/1 Tr. at 85-86.  Skadden's Pre-Retention Disclosures were made in filed Rule 2014 declarations by Galardi, and in his statements to the Court and the UST, including in open court.

71.      After a full contested hearing and oral argument on Skadden's retention on September 20, 2006 - - which focused on the Skadden-Tennenbaum relationship - - the Court approved Skadden's retention as Debtors' counsel based on a record of disclosures that remains virtually unchanged.  Skadden's disclosures regarding Tennenbaum were adequate and sufficient bankruptcy retention disclosures in 2006 and they remain so today.

72.      Kennedy argues that Skadden's disclosures allegedly were "inadequate" for three reasons:  (i) "[t]here was never any written disclosure of Skadden partners investing in

Tennenbaum funds until Mr. Chehi filed a Supplemental Declaration on March 15, 2013" (the "Chehi Supplemental Declaration"), (ii) "there is nothing in any of the written declarations to reveal that Skadden partners were sitting on board meetings for the Tennenbaum funds," and (iii) it "was necessary" to disclose the dollar amount of Skadden attorney fees paid by Tennenbaum. *See* Kennedy's Post-Trial Brief at 18-22.

73.    Each of Kennedy's "inadequate disclosure" arguments fall short.  First, the argument that Galardi did not make "written" disclosure that Skadden partners invested in Tennenbaum funds does not diminish that Galardi actually and specifically made that disclosure to the Court (in open court, and previously to the UST) at the September 20, 2006 hearing on Skadden's retention.  *See* 9/20/06 Hearing Tr. at 36-37.  The Chehi Supplemental Declaration was filed promptly after Skadden first became aware, very recently, of additional facts as a result of extraordinary inquiries prompted by Kennedy's false allegations against Skadden in his Motion-Objection and Amended Complaint.

74.    Second, the asserted presence of a Skadden partner at a board meeting of a Tennenbaum related fund should not be deemed a fact requiring supplemental disclosure after Skadden had already disclosed its ongoing representation of Tennenbaum on certain corporate, tax and SEC matters unrelated to Radnor's bankruptcy.  *See* ¶ 59 *supra.*  The presence of a Skadden partner at a board meeting of a Tennenbaum related fund is not disclosure-worthy when Skadden has already disclosed a pre-existing and ongoing Tennenbaum-Skadden attorney-client relationship on corporate, tax and SEC matters.  In any event, the supposed evidence upon which Kennedy's Tennenbaum related "board" allegation was made was correctly excluded as hearsay at the Final Fee Hearing.  5/1 Tr. at 34-36.

75.    Third, the actual dollar amount of fees paid to Skadden by Tennenbaum is

not - - and should not be - - a required disclosure where Galardi had specifically disclosed in his initial August 2006 Rule 2014 retention declaration that "the value of the time billed to Tennenbaum matters accounted for only approximately .027% of the value of the time billed to all client matters for the Firm." Galardi August 2006 Declaration, ¶ 19, fn. 4. Skadden respectfully submits that, as the Court previously found and ruled at the contested September 20, 2006 hearing on Skadden's retention, "counsel representing to the Court the percentage of their business derived from particular . . . creditors of the debtor" constitutes adequate disclosure - - and the disclosed .027% of Skadden's revenue attributable to Tennenbaum "is not significant." 9/20/06 Hearing Tr. at 61. These rulings remain the law of these Chapter 11 Cases.

**L.    Skadden was "disinterested" throughout the Chapter 11 Cases**

76.    Kennedy's Brief asks the Court to disallow all of Skadden's fees because the Firm allegedly was not "disinterested." Kennedy Post-Trial Brief at 3 (¶ 9). This Court's prior findings and the Final Fee Hearing conclusively demonstrate that Skadden was disinterested throughout the Chapter 11 Cases.

77.    Following the contested September 20, 2006 hearing on Skadden's retention, the Court entered an order (the "Skadden Retention Order") (Dkt. No. 246) authorizing the Debtors to employ Skadden as their counsel effective as of the Petition Date pursuant to the terms of the Engagement Letter.[21] Based on Skadden's disclosures prior to and during the September 20, 2006 hearing, the Court was satisfied that "Skadden . . . represents no interest adverse to the estates," and "is a 'disinterested person' as that term is defined under Bankruptcy Code section 101(14)."

---

[21]    Issues regarding Skadden's retention and connections to Tennenbaum were also addressed before the Court at the October 27, 2006 hearing on the Committee's Standing Motion. *See* Transcript of October 27, 2006 Hearing (Dkt. 582). Ms. Carrie Williamson, Radnor's then-General Counsel, attended such hearing. *Id*. at 68.

78.    The material facts pertinent to Skadden's retention by the Debtors and its

status as a disinterested professional in the Chapter 11 Cases have not changed since 2006.

Kennedy has had over six years to locate and present evidence of putative Skadden misconduct

and "conflicts" that he advanced with unsubstantiated allegations in his Motion-Objection and

Amended Complaint.  He located no such evidence – because there is none.  Without any new

evidence, Kennedy argues the same facts and issues that were already litigated by the UST in its

September 2006 objection to Skadden's retention.  It is clear from the record of the present

contested matter arising out of Kennedy's Motion-Objection, including the evidence and

testimony of the Final Fee Hearing, that before being approved by the Court as Radnor's chapter

11 counsel, Skadden disclosed each connection with Tennenbaum that Kennedy now contests.

79.    Skadden respectfully submits, on the entire record of these Chapter 11

Cases, and for the reasons stated in Skadden's Reply and this Skadden Brief, that Skadden is and

has been a "disinterested" professional throughout the Chapter 11 Cases.  Its connections to

Tennenbaum have been adequately and sufficiently disclosed to the Court in connection with the

Skadden retention process, and those relationships with Tennenbaum do not support a finding

that Skadden "was not disinterested" during the Chapter 11 Cases.[22]

80.    In sum, the record of the case reflects Skadden's full disclosure, and it is

this same record upon which the UST challenged the Skadden Retention and the Court approved

---

[22]    In response to Kennedy's recent, baseless allegations against Skadden, the Firm made additional supplemental internal inquiries to identify all possible past Firm connections to Tennenbaum and its affiliates.  Those connections were disclosed on March 15, 2013 by Mark S. Chehi as a member of the Firm.  See Supplemental Declaration of Skadden, Arps, Slate Meagher & Flom LLP and Affiliates As Bankruptcy Counsel to the Debtors and Debtors in Possession, dated and filed March 15, 2013 (Dkt. No. 2016)  (disclosing (i) a Skadden affiliate stock purchase investment in April 2012 (in the amount of $501,500) in TCP Capital Corp., an affiliate of Tennenbaum, which investment was divested during June-August 2012 and (ii) an investment in 2004 by 23 Skadden affiliated investors (including Skadden partners and their spouses) aggregating $19,500 ($500 per share) in 39 Series Z Preferred Shares of Special Value Expansion Fund, LLC ("SVEF"), a prepetition lender to the Debtors).  These disclosed connections are either irrelevant or inconsequential to the merits of the Final Application.

the Skadden Retention.  Kennedy has provided no reason for the Court to find that Skadden was

not disinterested and to deny its fees.

**M.      The Court should grant the Final Application and allow Skadden's fees.**

81.      For the reasons stated in the Final Application, the Skadden Reply and this

Skadden Brief, the Court should overrule the Motion-Objection and grant the Final Application.

The record of the Final Fee Hearing and the entire record of the Chapter 11 Cases justify

allowance of the fees and expenses sought in the Final Application.

## CONCLUSION

82.      For all the reasons in this Skadden Brief and the Skadden Reply, Skadden

respectfully requests that the Court enter the Proposed Order (attached as Exhibit A hereto)

overruling the Motion-Objection and granting the Final Fee Application.

Dated:  Wilmington, Delaware
           May 31, 2013

                                          */s/ Mark S. Chehi*
                                          Mark S. Chehi (I.D. No. 2855)
                                          Jason M. Liberi (I.D. No. 4425)
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          One Rodney Square
                                          P.O. Box 636
                                          Wilmington, Delaware 19899-0636
                                          (302) 651-3000