# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re: RADNOR HOLDINGS CORPORATION, <u>et al.</u>,

    Debtors.

------------------------------------------------------------------- x

RADNOR HOLDINGS CORPORATION, <u>et al.</u>,

  and

MICHAEL T. KENNEDY, MTK TRUST FBO RYAN M.
KENNEDY, MTK TRUST FBO SEAN M.
KENNEDY,MTK TRUST FBO MICHAELA C.
KENNEDY,MTK TRUST FBO CONOR R. KENNEDY

        Plaintiffs,

  v.

SKADDEN ARPS MEAGER & FLOM LLP,SK PRIVATE
INVESTMENT FUND 1998 LLC, RICHARD T. PRINS
ESQUIRE, GREGORY M. GALARDI ESQUIRE,
TENNENBAUM & CO. LLC, TENNENBAUM CAPITAL
PARTNERS LLC, BABSON & CO. LLC, SPECIAL
VALUE EXPANSION FUND LLC, SPECIAL VALUE
OPPORTUNITIES FUND LLC, MICHAEL E.
TENNENBAUM, SUSAN S. TENNENBAUM, DAVID A.
HOLLANDER, MARK K. HOLDSWORTH, HOWARD
M. LEVKOWITZ, RICHARD E. SPENCER, JOSE
FELICIANO, ALVEREZ AND MARSEL LLC and
STANLEY M. SPRINGEL

        Defendants.

------------------------------------------------------------------- x

Chapter 11
Case No. 06-10894 (KG)
Jointly Administered

**Docket Nos. 2076 & 2133.**

Adversary Case
No. 12-51308 (KG)

**Docket Adv. Nos. 33, 39, 87, 88 & 94.**

**JURY TRIAL REQUESTED**

**OPENING BRIEF OF PLAINTIFFS IN SUPPORT OF ITS' MOTION, FOR AN ORDER: (I) PURSUANT TO FED. R. CIV. P. 60(b)(6) AND 60(d)(3) MADE APPLICABLE BY FED. R. BANKR. P. 9024, VACATING THIS COURT'S ORDER DATED JUNE 20, 2013; (II) INVALIDATING DEFENDANTS' RELEASES UNDER THE SALE AND CONFIRMATION ORDERS; AND (III) IMPOSING SANCTIONS AGAINST THE DEFENDANTS DUE TO WILLFUL MISCONDUCT, INCLUDING INTERFERENCE WITH THE ADMINISTRATION OF THE BANKRUPTCY CASE AND FRAUD ON THE BANKRUPTCY COURT**

Dated: February 9, 2015

MICHAEL T. KENNEDY
On behalf of Plaintiffs,
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Tel: (610) 727-4156
Fax: (610) 727-4001
mkennedy@radnorholdings.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................i

I.   PRELIMINARY STATEMENT .....................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ....................................................7

III. SUMMARY OF THE ARGUMENT ............................................................................8

IV.  FACTS.........................................................................................................................10

    A.  Defendants' Willful Misconduct and Specific Acts of Fraud...............................10

        I.  The False and Misleading Affirmative Statements of Skadden Lead
            Attorney, Mr. Galardi to This Court ............................................................. 10

            a.  The False Statements of Mr. Galardi to the Court on September
                20, 2006 and October 27, 2006 ............................................................. 10

            b.  The Contradictory Testimony and Admissions of Mr. Galardi
                under Oath on May 1, 2013 .................................................................... 14

    B.  Defendants' False Statements, Testimony and Pleadings were Directed to
        the Court with the Intent to Deceive This Court ....................................................14

    C.  The Affirmative False Statements and Pleadings Deceived This Court ................ 15

    D.  This Court Relied Upon the False Documents, Testimony and
        Declarations and Acted Upon The Known False Statements Contained in
        Pleadings in Issuing its Orders............................................................................. 15

    E.  The False Declarations and the Fabrication of Evidence Interfered with
        the Administration and Adjudication of These Cases ...........................................16

    F.  The Substantial Evidence Clearly Supports a Finding of Fraud upon the
        Court by Skadden Attorneys which Deceived This Court and Interfered
        with the Administration and Adjudication of These Cases.....................................17

## TABLE OF CONTENTS

V.     ARGUMENT ...................................................................................................18

       A.   GOVERNING LAW .....................................................................................20

            I.    The Court's Authority To Vacate Its Own Orders Where There Has
                  Been A Fraud Perpetrated Upon The Court and to Correct an Injustice ..........22
                  a.    Civil Rule 60(b) – Generally ...............................................................22
                  b.    Civil Rule 60(b)(6) ...............................................................................23
                  c.    Civil Rule 60(d)(3.................................................................................23
                  d.    The Third Circuit Decision in Herring v. United States......................25

            II.   Orders Obtained due to Fraud Have No Force and Effect ..............................26

       B.   THE SPECIFIC EVIDENCE OF WILLFUL MISCONDUCT IS
            SUBSTANTIAL, CLEAR AND CONVINCING...................................................27

       C.   FALSE AFFIRMATIVE STATEMENTS AND FILING OF
            PLEADINGS INCLUDING FALSE STATEMENTS INVALIDATES
            THIS COURTS' PREVIOUS ORDERS ............................................................27

       D.   THE FILINGS OF DOCUMENTS THAT CONTAINED
            NUMEROUS FALSE AFFIRMATIVE STATEMENTS SUPPORTS A
            FINDING OF FRAUD UPON THE COURT .........................................................28

VI.   REMEDIES REQUESTED................................................................................29

       A.   SUBSTANTIAL REMEDIES ARE WARRANTED INCLUDING
            INVALIDATION OF RELEASES PREVIOUSLY GRANTED IN THE
            SALE AND CONFIRMATION ORDERS...........................................................29

       B.   SIGNIFICANT SANCTIONS SHOULD BE IMPOSED TO PROTECT
            THE INTEGRITY OF THE BANKRUPTCY SYSTEM ....................................30

VII.  CONCLUSION....................................................................................................30

## TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

*Cases*

*In re Angelika Films 57th, Inc.,*
  227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ................................................................... 20

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ............................................................................................ 6, 26, 27

*Childress v. Middleton Arms (In re Middleton Arms, Ltd. Partnership),*
  934 F.2d 723 ................................................................................................................. 21

*In Re Crivello,*
  134 F.3d at 839 ................................................................................................. 19, 21, 23

*Demjanjuk v. Petrovsky,*
  10 F.3d 338, 348 (6th Cir. 1993) ............................................................................... 25

*In re Enron Corp.,*
  352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) ............................................................. 22

*In re eToys Inc.,*
  331 B.R. 176, 197 (Bkrtcy. D. Del. 2005) ............................................................... 23

*In re Granite Partners, L.P.,*
  219 B.R. 22, 23 (Bankr. S.D.N.Y. 1998) ................................................................. 21

*Hazel Atlas Glass Co. v. Harford-Empire Co.,*
  322 U.S. 238 (1944) ............................................................ 6, 18, 19, 21, 23, 25, 27

*Herring v. United States,*
  424 F.3d 384, 389 (3d Cir. 2005) .................................................................. 3, 6, 9, 25, 26

*Lee v. Marvel Enters.,*
  765 F.Supp.2d 440, 450 (S.D.N.Y. 2011) ............................................................... 25

*In re Levander,*
  180 F.3d 1114, 1119 (9th Cir. 1999) ................................................................ 19, 23

*In re Lewis Road, LLC,*
  No. 09-37672, 2011 WL 6140747 (Bankr. E.D. Va. Dec. 9, 2011) ....................... 23

*King v. First Am. Investigations, Inc.,*
  287 F.3d 91, 95 (2d Cir. 2002) ................................................................................. 25

*Kupferman v Consolidated Research and Mfg. Corp.,*
  459 F.2d 1072,1078 (2d Cir. 1972) ............................................................. 24, 25, 26

*In re Leslie Fay Cos.,*
  175 B.R. 525 (Bankr. S.D.N.Y. 1994) ..................................................................... 27

*Mills Acquisition Co. v. Macmillan, Inc.,*
    559 A.2d 1261 (Del.1989) .................................................................................19

*Martina Theatre Corp. v. Schine Chain Theatres, Inc.,*
    278 F.2d 798, 801 (2d Cir. 1960) ...................................................................... 25

*Matarese v. LeFevre,*
    801 F.2d 98, 106 (2d Cir. 1986) ....................................................................... 22

*Nemaizer v. Baker,*
    793 F.2d 58, 61 (2d Cir. 1986) ......................................................................... 22

*In re Old Cargo, LLC,*
    423 B.R. 40 (Bankr. S.D.N.Y. 2010) .....................................................23, 24, 25

*Pearson v. First NH Mortgage Corporation,*
    200 F.3d 30, 37 (1st Cir. 1999) ...................................................................21, 24

*Peralta v. Heights Medical Center, Inc.*
    485 US 80, 86 (1988) ........................................................................................28

*Pennoyer v. Neff,*
    95 U.S. 714, 732-733 (1878) .............................................................................28

*Philips Lighting Co. v. Schneider,*
    395 F. App'x 96, 798 (2d Cir. Oct. 12, 2010) ................................................ 23, 24

*Radack v. Norwegian Am. Line Agency, Inc.,*
    318 F.2d 538, 542 (2d Cir. 1963) ...................................................................... 22

*Radnor Holdings Corp., et al., v. Skadden, Arps, Meagher Slate & Flomm, LLP et al.,*
    Adv. Case No. 12-51308 (KG) ............................................................................1

*In re:  Radnor Holdings Corporation, et. al.,*
    3rd Cir. Ct. of Appeals, Case No. 14-3794 ........................................................ 1, 7

*In re Teligent, Inc.,*
    326 B.R. 219, 227 (S.D.N.Y. 2005) .................................................................. 22

*The Official Committee of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum
    Capital Partners, LLC (In re: Radnor Holdings Corp.),*
    353 B.R. 820 (Bankr. D. Del. 2006) .................................................................... 3

*United States v. Gellene,*
    182, F.3d 578 (7th Cir. 1999) ............................................................................ 19

*United States v. Smiley,*
    553 F.3d 1137, 1142 (8th Cir. 2009) .............................................................19, 25

*United States Trustee v. Price Waterhouse,*
    19 F.3d 138 (3d Cir. 1994) ................................................................................21

*In re Vebeliunas,*
    231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999), ...........................................................20, 21

*In re West Delta Oil Co., Inc.,*
    432 F.3d 347 (5th Cir. 2005) ........................................................................................21

*Workman v. Bell,*
    227 F.3d 331, 336 (6th Cir. 2000) ...............................................................................24

**Statutes - Federal**

11 U.S.C. § 101(14)(A) ........................................................................................... 18

11 U.S.C. §§ 327(a) ...............................................................3, 18, 19, 21, 22, 23, 26

11 U.S.C. §§ 503(b)(2) ...............................................................................................20

11 U.S.C. §§ 507(a)(2) ...............................................................................................20

11 U.S.C. §1103 ..................................................................................................... 21

18 U.S.C. § 152..................................................................................................... 18, 19

18 U.S.C. § 153 .................................................................................................... 18, 19

18 U.S.C. § 157..................................................................................................... 18, 19

**Statutes - State**

Delaware General Corporation Law .................................................................................4

**Rules - Federal**

Fed. R. Civ. P.  60(b)................................................................................................. 22

Fed. R. Civ. P. 60(b)(6) ...................................................................................... 1, 21, 23, 29

Fed. R. Civ. P. 60(d)(3) ...............................................................1, 20, 21, 23, 25, 29

Fed. R. Bankr. P. 2014 .............................................................................................21, 23

Fed. R. Bankr. P. 9024.............................................................................................1, 23

**Rules - State**

DE R. P. C. 1.4, 1.5, 1.7, 1.8, 1.9 (Feb. 2010)............................................................4

**Treatises**

7 James WM. Moore et al., Federal Practice ¶ 60.33 at 513 (3d ed. 2009) ......................................25

## PRELIMINARY STATEMENT

1.     Plaintiffs file this opening brief in support of their Motion to Vacate and the Proposed Order, Exhibit A, at A-100, [B.D.I. No. 2133-1, filed January 23, 2015] [1].  The Motion seeks an order, (i) vacating This Court's June 20, 2013 order [B.D.I. 2076] [2] (the "June 20, 2013 Opinion and Order") pursuant to Fed. R. Civ. P. 60(b)(6) and 60(d)(3), made applicable by Fed. R. Bankr. P. 9024, and (ii) various sanctions against the Defendants due to the clear, specific and substantial evidence of willful misconduct including interference with the adjudication of the above captioned cases and fraud upon This Court.   Plaintiffs' Motion is supported by extensive evidence in the form of the referenced exhibits, which demonstrate specific, clear and convincing acts of willful misconduct contained throughout the existing record in these cases.

2.     The Defendants acts of fraud included: (i) knowingly causing the Debtors to file a false declaration, (ii) intentionally filed numerous known false declarations, (iii) made false affirmative statements to This Court, (iv) proffered false testimony, and (v) filed false pleadings into the record in the above captioned cases. [Exhibit K, at A-347, B.D.I. No. 96; Exhibit B, at A-104; Exhibits. E and F, at A-161; Exhibit H, at A-300]

3.     A close and impartial examination of the record and facts in this case, by any reasonable and impartial person would conclude, that numerous undisclosed material and adverse conflicts existed between counsel to the Debtor, Skadden, and the largest secured creditors of the Debtor.  The Skadden Defendants, in fact, owned undisclosed shareholder and creditor interests in the Debtors, together with other conflicts which were intentionally concealed by the Defendants.  It is clear, the Defendants, in the process of committing fraud against the

---

[1]     References herein to documents on the Bankruptcy Court docket Case No. 06-10894 (KG) will be cited as "B.D.I." References herein to the docket in the adversary proceeding Radnor Holdings Corp. and Michael T. Kennedy, et al., v. Skadden, Arps, Meagher Slate & Flomm, LLP et al., Adv. Case No. 12-51308 (KG) are cited as "A.D.I." References herein to the Appendix filed in support of this Motion will be reflected as "A-__ beginning at A-100".

[2]     Upon granting of this Motion, vacating of This Court's previous order the Third Circuit Appeal [Case No. 14-3794] will be rendered moot which is scheduled for briefing on February 25, 2015.

Debtors and concealing that fraud, corrupted the record and deceived This Court.  In so doing,

the Defendants, fabricated evidence, corrupted the record and interfered with the adjudication

and administration of the above captioned cases.[3]

4.     Each of the Defendants owed a duty of loyalty to the Plaintiffs as directors,

shareholders of the Debtors and as professionals hired by the Plaintiffs,[4] as Plaintiffs were former

and existing clients of the Skadden Defendants.[5,6] [Exhibit K, A-316, Exhibit B, A-105, B.D.I. No.

96-2, p.9,¶14] More importantly to the granting of Plaintiffs' Motion, the Defendants owed duties of

candor, disclosure and loyalty to This Court as officers of the court under the Bankruptcy Code,

Rules and Delaware Rules of Professional Conduct as members of the Delaware Bar, and then

violated those duties by making false affirmative statements, which were known to be false and then

intentionally filing inaccurate and misleading declarations and pleadings with This Court.

5.     The Defendants' fraudulent scheme began in early 2006 with the concealment

of material and adverse conflicts from the Plaintiffs,[7] including shareholder and creditor interests

held by the Skadden Defendants in the Debtor and other material conflicts from the Plaintiffs.[8]  In

---

[3]   The acts of misconduct was discovered on February 17, 2012 and further revealed in 2013.. The above captioned cases include not only egregious acts of common law fraud committed by Defendants on adverse parties, but unequivocally includes fabrication of evidence, perjury, interference with the adjudication of these cases and fraud upon This Court, by knowingly and intentionally making false statements to, filing false declarations and pleadings with This Court.

[4]   Isaacson, Stolper & Co., 330 A.2d at 134 "Further the Court indicated that it is the policy of the law to encourage such trust and confidence, and likewise it is the duty of the law to protect the client from the negligent acts of the professional person. We agree in principle." See Chisholm v. Scott, 86 N.M. 707, 526 P.2d 1300. Courts have stated that where there is a professional and client relationship as in the instant case, the Discovery Rule will apply, as the trust and confidence that the client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced.

[5]   See B.D.I. No. 96-2, p.9, para. 14., Exhibit B, A-105, Admissions that Plaintiffs were former and existing clients of the Skadden in clear violation of Delaware Lawyers Rules of Professional Conduct, Rules 1.7, 1.8 and 1.9.

[6]   11 U.S.C. §1107(a) provides that a debtor-in-possession shall have the rights and duties of a trustee, so §327(a) also applies to lawyers hired by Debtors, who must be "disinterested" as defined at §101(14).  Skadden and Tennenbaum had a duty to disclose the adverse relationship to the Debtor, its board of directors and other parties. Kennedy and the Debtors' board were fiduciaries of the Debtor at the time Skadden was hired. Therefore, the Plaintiffs relied on the omissions, false statements and any misrepresentation or failure to disclose by the Defendants breached numerous duties to the Plaintiffs under Delaware law and the Bankruptcy Code and Rules.

[7]   Radnor and its majority shareholders, the Kennedy family, were existing and previous clients, respectively, of the Skadden firm, and as such, the professionals engaged by Kennedy and Radnor owed duties of candor and loyalty to Radnor and its stakeholders as former and existing clients. See B.D.I. No. 96, the initial declaration of the Skadden firm admitting that Kennedy and Radnor were former and existing clients of the Skadden firm.

[8]   In addition to Defendants' shareholder and creditor interests in the Debtor, Defendants concealed $10 million in payments from the Tennenbaum Defendants to the Debtors' financial and advisers, the Skadden Defendants and Lehman Bros. in 2004 and 2005, only 18 months prior to the execution of the engagement of the legal and financial

September and October 2006, during pre-trial proceedings,[9] in order to conceal their deceit, the Skadden Defendants made false statements to This Court and filed false declarations [Exhibit K, A-284]. The Defendants all knew that the statements directed to the Court and declarations were false when made, thus intended to deceive the court. This Court relied upon the false statements and filings directed to the Court and acted upon the misrepresentations, thus interfering with This Court's proper adjudication of the above captioned cases.

6.      The Defendants' misconduct unequivocally satisfies all the elements of fraud upon the bankruptcy court under current law.[10]  In these cases, the Skadden Defendants and specifically its lead attorney, Mr. Galardi, made numerous affirmative false statements directed to the Court in 2006 and 2013, then knowingly filed false declarations in order to obfuscate known conflicts and connections from the Plaintiffs and This Court. On May 31, 2013, the Skadden Defendants utilized the false statements made by Mr. Galardi during testimony on May 1, 2013, then inserted them into pleadings, fabricating evidence with the clear intent of deceiving This Court in order to avoid liability.

7.      On May 1, 2013, under cross examination, Mr. Galardi admitted that "*it was the determination of the Defendants not to disclose the conflicts to the Plaintiffs due to their own determination of relevancy and the Skadden policy and practices, not to disclose other client matters*". Despite clear duties under the law to disclose the conflicts to the Plaintiffs. [Exhibit B at 104; and Exhibit G at A-214, B.D.I 2063, 5/1/13 Hr. Tr. at 49] Mr. Galardi makes these admissions on cross, knowing that his prior statements directed to the Court in 2006 and his sworn testimony on direct the same day, were totally contrary to his statements. Mr. Galardi further admits under cross examination, that the Defendants concealed the known conflicts from the Debtors' board before and during the period the Skadden firm became engaged as counsel to the

advisers with the Debtors. Obviously, the Skadden and Tennenbaum defendants were fully aware of the shareholder and creditor interests held by the Skadden firm and the $10 million if fee payments to Skadden and Lehman Bros.

9       The Official Committee of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re: Radnor Holdings Corp.), 353 B.R. 820 (Bankr. D. Del. 2006)

10      Herring v. United States, 424 F.3d 384 (3d Cir. 2005), "[F]raud on the court must constitute 'egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel.'"

Debtor.  Mr. Galardi's admission is a blatant violation of the duties owed to the Plaintiffs as directors, as shareholders and as former and existing clients under Delaware General Corporate Law, various case law and Delaware Rules of Professional Conduct governing conduct of directors and Delaware attorneys.[11]

8.      The statements by Mr. Galardi on May 1, 2013 are clear admissions that the Defendants acted in concert and knew that the statements regarding disclosures to the Plaintiffs, were knowingly false when directed to This Court in 2006 and again in 2013.   Mr. Galardi contradicted the testimony given under oath on direct, the very same day, yet the Skadden Defendants included the known false statements in their pleadings and draft opinion submitted on May 31, 2013 to This Court, thus, compounding their liability and knowingly deceiving This Court.

9.      Skadden lead attorney, Mr. Galardi, knowingly undermined the Debtors' board of directors deliberations, intentionally filed false declarations, made known false statements and other misrepresentations to This Court in 2006, in order to remain engaged, all the while concealing the <u>known</u> material and adverse conflicts from the Plaintiffs.  Unequivocally, the affirmative statements and false documents filed with the court, were known to be false when made and were clearly meant to deceive This Court.  This Court relied upon the false testimony, then acted upon the false statements directed to the Court in approving the retention order, sale order, confirmation order and finally its June 20, 2013 ruling.

10.      Mr. Galardi made numerous knowingly false representations to the Court on September 20, 2006 and again on October 27, 2006 which are now admitted to be false when made.  Mr. Galardi stated that: (i) "*no conflicts existed beyond the five hours of tax work in 2005*, (ii) *the conflicts regarding the shareholder and creditor interests held by the Skadden attorneys were disclosed*, (iii) *that the Skadden firm did not have discretion over the Skadden ownership interests*, (iv) *that the conflicts were immaterial*, and (v) *did not even give the appearance of a*

---

[11]      Delaware Lawyers Rules of Professional Conduct, DE R. P. C. 1.4, 1.5, 1.7, 1.8, 1.9 [*See* Exhibit N, A-351]

*conflict.*"  All of those affirmative statements to this Court were <u>knowingly false when made</u> and now admitted to be false by Mr. Galardi on cross examination on May 1, 2013.  Further, Mr. Galardi deceived This Court, inferring that the Debtors' board approved of the conflicts. [*See* <u>Exhibit B</u>, at A-103, <u>Exhibit E</u>, at A-161and <u>Exhibit F</u>, A-167]

11.     In fact, it can be identified that Mr. Galardi made more than *fifteen* knowingly false affirmative statements to the Court in September and October 2006.  The Skadden defendants then utilized the knowingly false statements throughtout their pleadings. [See Exs. B at A-103 and Exhibit H, at A-300]  Further, not only did Mr. Galardi contradict his own testimony, the Plaintiff's impeached Mr. Galardi's false testimony on May 2, 2013 and then filed affidavits by the Debtors' officers with This Court. [<u>Exhibit E</u>, at A-161 and Exhibit F at A-167, <u>Exhibit G</u>, at A-266] Therefore, by Mr. Galardi's own words under cross examination and the affidavits of the Debtors officers and director prove that his statements statements in 2006 and 2013 were knowingly false when made.[12]

12.     In actions which only can be described as a furtherance of a conspiracy to conceal their misconduct, the Defendants utilized false statements made by Mr. Galardi in his sworn testimony on direct and inserted the known false statements into pleadings and draft opinion filed with the Court.[13]  [Exhibit H, at A-178,  B.D.I. 2073 and 2073-1]

13.     Under the Bankruptcy Code, Rules promulgated thereunder and Delaware Law, the Defendants have the burden to disclose the adverse conflicts and therefore should be required to explain the numerous false statements in 2006 and 2013, together with the filing of knowingly false statements contained in pleadings filed into the record of these cases on May 31, 2013.  Plaintiffs also have the right to discovery, and the Defendants waived their rights to

---

[12]  The lack of a waiver executed by the Debtors board is *prima facie* evidence of the Defendants' deceit, not only is it irrational to believe the Debtors would have engaged such conflicted counsel or done so without a written waiver under any circumstances.  No waiver from the Debtors' board exists as none was ever requested by Skadden or the other Defendants as no disclosures were ever made and is a further violation of the Delaware Rules of Professional Conduct.

[13]  *See* Exhibits B, C, D, E, F, H and K attached hereto, detailed excerpts of transcripts and pleadings containing the false statements.

confidentiality involving matters material and adverse to the Debtors when they became engaged as counsel to the Defendants as existing and former clients. [14]  This Court also has the obligation as well as the right to investigate probable acts of fraud upon the Court by the Defendants.[15]

14.    The facts and evidence set forth herein, satisfies all the elements required to meet the high standard for vacating and or amending This Courts' previous orders under current law in this Circuit.[16]  The Defendants intentionally made false affirmative statements and then submitted known false documents into the record in these cases.  The Defendants, who are attorneys, as officers of the court, did in fact, intend to deceive the court. The Court relied upon the statements, filings and pleadings which all contained knowingly false statements.  This Court was actually deceived by the affirmative statements and misrepresentations made by Debtor counsel, Mr. Galardi. Finally, the Court acted upon the false statements and pleadings in issuing its opinions and orders which adversely and materially impacted the outcome of these cases.  Therefore, Defendants' own statements, testimony, declarations and documents filed with This Court throughout the record in these cases, supports a finding that the Defendants interfered with the administration of these cases and committed fraud upon This Court.

15.    Defendants, in the process of concealing their deceit, unequivocally interfered with the adjudication of the above captioned cases.  This Court relied upon the corrupted record and the false statements of Mr. Galardi in pleadings in issuing its June 20, 2013 Opinion and Order.  This Court was intentionally deceived, as it relied upon false testimony, and admittedly false statements and declarations filed in 2006 and 2013.

---

[14]    Under Delaware law, a breach of the duty of loyalty claim merely requires proof that the defendant was on both sides of the transaction.  Once such proof is demonstrated, the burden shifts to the defendant to show that the transaction was entirely fair.  Duty of loyalty violations are not indemnifiable under 8 Del. C. §102(b)(7).

[15]    Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court held quoted Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245-46 (1944), in recognizing the "'historic power of equity to set aside fraudulently begotten judgments'" in order to maintain the integrity of the courts and safeguard the public, the Supreme Court in Chambers also recognized a court's power to conduct an independent investigation in determining whether it has been the victim of fraud. 501 U.S. at 44.

[16]    Herring v. United States, 424 F.3d 384 (3d Cir. 2005) set forth elements and acts that can be considered fraud amount to 'fraud upon the court,' as that phrase is used in Rule 60."

# I.    NATURE AND STAGE OF THE PROCEEDINGS

16.    At the September 22, 2014, hearing regarding the Adversary Compliant, Plaintiffs directed This Court to: (i) false statements made to This Court by Skadden Defendant, Mr. Galardi in 2006, (ii) Mr. Galardi's contradictory statements and admissions of willful misconduct under oath during cross examination on May 1, 2013 (iii) the affidavits submitted by the officers of the Debtors impeaching Mr. Galardi's sworn testimony, (iv) the false statements filed by the Skadden Defendants in declarations and pleadings with This Court, and (v) the Skadden third supplemental declaration, dated March 15, 2013 which according to Mr. Galardi's testimony on May 1, 2013  under cross examination is also inaccurate and incomplete. *See* [Exhibit B, at A- 104, Exhibit G, A-178, and Exhibit H, at A-300, Exhibit I, at A-479]

17.    Pursuant to the U.S. District Court's standing order dated February 29, 2012, This Court must prepare the adversary case for trial, [Case No. 12-51308, B.D.I. No. 6], determine core and noncore causes of action, conduct discovery and issue its memorandum opinion as to the facts and conclusions of law.  This Court has jurisdiction over those core causes of action related to or arising from the bankruptcy case.  The non-core causes of action[17] for which the Court cannot issue an opinion, will be moved to the U.S. District Court for a jury trial by a Title III court.[18]

18.    On October 14, 2014, This Court issued an order and opinion, [A.D.I. No. 87 and No. 88] determining that the adversary case unequivocally includes core causes of action under 11 U.S.C. 157(b)(2).  This Court's June 20, 2013 order and opinion and the District Court's ruling is pending appeal[19] in the Third Circuit Court of Appeals with briefing scheduled to begin February 25, 2015.

19.    On October 17, 2014, the U.S. District Court denied without prejudice, the

---

[17]    Stern v. Marshall, 131 S. Ct. at 2605 ("The terms 'non-core' and 'related' are synonymous") (quoting Collier on Bankruptcy, para. 3.02[2], p. 3-26, n. 5 (16th ed. 2010)).

[18]    28 U.S.C. §§ 157(a), 1334(a) governs jurisdiction and procedures for core and non-core proceedings between Bankruptcy Courts, Title I courts and Title III Courts, such as the U.S. District Court for trial proceedings. Stern v. Marshall, 131 S. Ct. 2594 (2011).

[19]    Case No. 14-3794 In Re: Radnor Holdings Corp, et. al; Further, Upon granting of this Motion, vacating of This Court's previous order the Third Circuit Appeal, Case No. 14-3794, will be rendered moot.

motion to withdrawal the adversary case, pending discovery and the preparation for trial under the

U.S. District Court's standing order. [*See* A.D.I. No. 89]

20.    Accordingly, Plaintiffs respectfully submit this Motion, seeking an order

vacating This Court's June 20, 2013 order [A-409, B.D.I. 2076],[20] and imposing sanctions against

the Defendants, invalidating releases granted the Defendants under previous orders due to the clear

and substantial evidence of willful misconduct.

## II.    SUMMARY OF THE ARGUMENT

By making numerous affirmative false statements directed to This Court, filing four

inaccurate and misleading declarations, then intentionally filing pleadings which included known false

statements, which were known to be unequivocally false when made, the Skadden Defendants deceived

This Court and interfered with the process of adjudication and administration of the above captioned

cases.  The record in the above captioned cases includes substantial evidence of numerous acts of

fraud[21] committed by the Defendants and those acts are set forth as follows:

- The Defendants' acted in concert and continue to intentionally conceal the Skadden affiliate's and attorneys' shareholder and creditor interests in the Debtor which undermined the deliberations of the Debtor's board.[22]

- The Defendants' fraudulently induced the execution of the engagement letter by the Debtor, then caused the Debtors to file a knowingly false application with the Court.

- The Skadden Defendants intentionally filed four known false and inaccurate declarations on the record in these cases.

- Skadden Defendants made numerous false affirmative statements, known to be false when made and directed to This Court in 2006.

- Defendants made known false statements under oath at the May 1, 2013 hearing.

- The Defendants knew that the affirmative statements were false when made and intentionally acted to deceive This Court.

---

[20]    Upon granting of this Motion, vacating of This Court's previous order the Third Circuit Appeal [Case No. 14-3794] will be rendered moot.

[21]    The other acts of fraud were committed on the Plaintiffs and involves common law fraud on the Plaintiffs and other parties in interest and were pre-petition and are considered non-core causes of action.  The core causes of action include violations of the Bankruptcy Code, Rules and case law interpreting them, and the Delaware Rules of Professional Conduct, but separately may include violations of the securities laws under the 1934 Securities and Exchange Act and the 1940 Advisers Act as the Debtor was a registrant under the 1934 Act and the unsecured bonds were publicly traded.

[22]    It is the responsibility of counsel to the Debtor to disclose material and adverse conflicts to the Debtor and the Court. The Debtor also has a right under the law to choose counsel of its own, free of conflicts and the Bankruptcy Court does not possess the authority to appoint conflicted counsel to the Debtor.

- Defendants then inserted the known false statements made under oath into pleadings filed with the Court with intent to deceive the Court.

- The false statements directed to This Court and inserted into the record by the Defendants did in fact deceive This Court.

- This Court relied upon the known false statements in 2006 and 2013 and then acted upon them in issuing its opinions and orders.

- As a result their actions, the Defendants interfered with the adjudication of the above captioned cases and committed fraud upon This Court. [23]

The facts and evidence presented herein satisfies all the elements set forth by the Third Circuit, which for the first time articulated the elements of fraud on the court in its Herring v. United States decision.[24]  As set forth in Herring, fraud on the court is a rare species of fraud (as it should be in the Third Circuit) as it requires a significantly high standard of proof, including intentional and affirmative acts of fraud, by officers of the court, directed to the court itself and which actually deceives the court.  In the instant case, the high burden has been clearly met due to the overwhelming evidence existing on the record in these cases, supported by the Defendants' own false affirmative statements directed to This Court, false testimony, admissions and pleadings containing false statements filed with This Court.

Further, the evidence contained herein provides a substantial basis in both law and fact in advance of any discovery being conducted by Plaintiffs or This Court in support of the Adversary Complaint.  The Exs. from the record include: (i) the false affirmative statements made in the 2006 hearings, (ii) affidavits by officers of the Debtor, (iii) the false testimony of the Skadden attorney, Mr. Galardi in May 2013, (iv) the Skadden declarations filed with the Court, and (v) the pleadings filed on May 31, 2013, containing the false testimony of Mr. Galardi on direct, which clearly satisfies all the requirements of fraud upon This Court as set forth by the Third Circuit in Herring.  [See Exs. B, C, D, E, F and G]

Accordingly, This Court's June 20, 2013 opinion and order, should be vacated in its entirety based upon the false testimony and known false statements inserted into the pleadings filed

---

[23]    Fraud upon the court differs from fraud on an adverse party in that it "is limited to fraud which seriously affects the integrity of the normal process of adjudication."  Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir.1988)

[24]    Herring v. United States, 424 F.3d 384 (3d Cir. Sep. 22, 2005)

with This Court.  The affirmative acts of deception where intentionally made to further conceal their

fraud which began in 2006 and in the process of concealing their fraud upon Plaintiffs, deceived

This Court to avoid the most certain liability including sanctions. The acts of the Defendants clearly

deceived This Court and as a result, materially impacted the rulings of This Court.

### III.    FACTS

The history of these cases, including the misconduct of the Defendants, is well-

documented in the various pleadings, testimony and statements made by the Skadden firm and its

attorneys, directed to This Court in 2006 and 2013.[25]  This Court, therefore, respectfully is referred to

these Exs., attached hereto, all of which are incorporated by reference herein.

**A.  Defendants' Willful Misconduct and Specific Acts of Fraud**

*(I) The False and Misleading Statements of Skadden Attorney, Mr. Galardi to This Court.*

    a.   The False Statements of Mr. Galardi to the Court on September 20,
       2006 and October 27, 2006

22.    At the September 20, 2006 hearing on the Skadden retention,   This Court

questioned Mr. Galardi, to answer specifically the challenges from the U.S. Trustee relating to the

Tennenbaum prior representations and conflicts.[26]  Mr. Galardi represented to the Court that the

Skadden historical fee relationships with Tennenbaum were *immaterial, miniscule, no other work*

*had been performed and that no other conflicts existed.*  [*See* Exhibit, B thru G at A-104, and

Exhibit K, First Supplemental Declaration. B.D.I. No.222, A-397] Exhibit I, at A-305]

23.    Mr. Galardi's false affirmative statements to the Court, did deceive This

Court at the September 20, 2006 retention hearing regarding the conflicts to This Court. [See

9/20/2006 Hr. Tr. Excerpts attached as Exhibit B at A-104]  In granting the Retention Order

permitting the engagement of Skadden as the counsel to the Debtor, This Court relied heavily on

---

[25]    See, Exhibits B, at A-104, C, at A-106, D, at A-138, G, at A-178, H, at A-300, and K, at A-347, excerpts of Transcripts of the September 20, 2006, October 27, 2006 and May 2013 hearings and pleadings by the Skadden firm.

[26]    In 2006, the U.S. Trustee filed multiple objections to the retention of Skadden for undisclosed material and adverse connections with Tennenbaum Capital and its control affiliates on September 13, 2006 (Docket No. 169) and then again on October 27, 2006 and made numerous attempts to appoint an examiner and get access to the Skadden billing records and Tennenbaum payment history (Docket No. 222).   Skadden attorney Galardi filed a supplemental Declaration on September 18, 2006 (Docket No. 223) disclosing partial information regarding additional connections with Tennenbaum, (not disclosed to Radnor board) and intentionally not disclosing payments received in 2004 through 2005 nor the shareholder and creditor interests held by the Skadden affiliate and its attorneys in the Debtor.

Mr. Galardi's false testimony and noted the primary reason weighing the decision to approve the Skadden Retention Approval was the fact that the connections were *"miniscule"* and that *"5 hours of tax work"* was not *"material"*.   However, This Court was misled, as the conflicts were in fact far deeper, substantial and materially adverse as the Skadden firm and its attorneys held direct interests as shareholders and creditors of the Debtors and received substantial fees and other consideration,  and further all of these material and adverse conflicts were undisclosed to the Debtor board and the Plaintiffs.

24.      The statements in 2006, by Mr. Galardi in open court, were a deliberate attempt to mislead This Court and create a false impression that the only connections, This Court ruled that the conflicts were *"de minimus"* when in fact, under any prudent standard, the conflicts were "actual and material conflicts" known by the Defendants to be material and adverse, but concealed from This Court and the Plaintiffs. [Exhibits B, C, D, E and F at A-104]

25.      In fact, it can be identified that Mr. Galardi made false affirmative statements to This Court, no less than fifteen times at the 2006 hearings. [27]  [*See* Exhibit B, A-104, Reference of false statements made at 2006 hearings] The Skadden firm would later use the known false statements on direct testimony on May 1, 2013, and insert them into their pleading filed on May 31, 2013. [*See* Exhibit H, at A-300, B.D.I. Nos. 2073; Exhibits E and F at A-167]

26.      Mr. Galardi in May 2013, testified on cross examination that he and the other Defendants knew of the shareholder and creditor interests in the Debtor and the millions of dollars in other work for Tennenbaum before Mr. Galardi filed his initial declaration on August 25, 2006 yet failed to disclose them. [B.D. I. No. 96] Mr. Galardi further admitted that Skadden and Tennenbaum defendants in May 2006 to mutually agreed not to disclose the depth of actual conflicts to the Plaintiffs due to their own determination of relevancy and Skadden policies. [*See*

---

[27]    Mr. Galardi also failed to disclose the $3.1 million in payments made to Skadden in the prior 18 months ended 2004 and 2005. The omission which constitutes fraud upon the Plaintiffs, however was not an affirmative statement directed to the court, but an misrepresentation as significantly more fees were paid to the Skadden firm than disclosed to This Court on September 20, 2006.

Exhibits E and F at A-161; Exhibit G, at A-232-231, thru A-250, 5/1/13 Hr. Tr. at 114-125 and 5/2/13 Hr. Tr. at 9, and 18-20]

27.     The Skadden Defendants have refused multiple times, to make the required disclosures regarding its affiliates' ownership and its attorneys' interests in the Debtor or other creditors of the Debtor to this day.   There may have existed other conflicts between Skadden and other creditors of the Debtor in 2006 which were not disclosed to the Plaintiffs or This Court which need to be investigated.   Skadden Defendants waived their confidentiality as to matters adverse to the Debtor when it became counsel to the Debtor in 2006 and due to its prior representation of the Plaintiffs in the preceding 6 years.  As a result, on October 21, 2013, the Plaintiffs filed a motion to compel, [A.D.I. No. 63], seeking an order from This Court, requiring the Skadden defendants to disclose: (i) the name of the Skadden affiliate which owned the shareholder and creditor interests in the Debtors, (ii) the names of the Skadden attorneys which owned interests in the Debtors, and (iii) to confirm or deny the names of any interests held by the Skadden firm, or any affiliate or its attorneys, in any other creditors and specifically the creditor, Silver Point Partners LP and its affiliates, which owned the senior secured bonds of the Debtor in 2005, and provided the debtor in possession financing which was negotiated solely by Mr. Galardi and the other defendants.

28.     It is clear from the record and his own admissions on May 1, 2013 under cross examination that Mr. Galardi made false affirmations to This Court in 2006 in order to stay engaged.  In fact, as admitted by Mr. Galardi on May 1, 2013, Mr. Galardi never informed the Debtors' board of the Skadden shareholder and creditor interests in the Debtors, [Exs. E and F], the Skadden ownership interests were also proprietary, as a preference to other investors and not available to any other investors. [See Exhibit G, at A-237, 5/1/2013 Hr. Tr. at 123]  Contrary to Mr. Galardi's statement in 2006 to the Court, the Skadden firm had total discretion[28] over the

---

[28]     See Exhibits E and F, and Exhibit M, at A-469, Skadden SEC Filings Form 2-A seeking exemptions under 6(a) and 6(b) under Investment Advisers Act of 1940, regarding Skadden partners controlled investment entities and exemptive Order related thereto granted by the Securities and Exchange Commission.

investments.  Further, according to Mr. Galardi's testimony the Skadden affiliate interests have

never been disclosed, as the three previously filed Skadden written declarations required under

Rule 2014, never disclosed any equity investments by Skadden or its attorneys until March 15,

2013, but which intentionally excluded the Skadden affiliates ownership. [Exhibit G, at A-241]

29.    Mr. Galardi intentionally made false affirmations to This Court and created

a false impression that (i) the investments by the Skadden partners were disclosed to the Debtors'

board and (ii) the Debtors' board was totally agreeable to the Skadden conflicts and lack of a

waiver from the Debtor.  None of this was true on September 20, 2006 or when Mr. Galardi was

challenged in open court by This Court on October 27, 2006.  Mr. Galardi admitted that these

statements were false under cross examination in May 1, 2013. [Exhibit D, at A-156, Hr. Tr.

10/27/06 at 49, line 11] [Exhibits E and F, at A-164 thru 165 and at A-170 thru 174]

30.    On October 27, 2006, during This Court's colloquy with Mr. Galardi

regarding the Skadden shareholder and creditor interests in the Debtor continued from the

September 20, 2006 hear and the following exchange between Mr. Galardi and This Court

occurred:

THE COURT:         I'M SORRY, WAS IT DISCLOSED THAT SKADDEN PARTNERS –
MR. GALARDI:       YES.
THE COURT:         -- HAD INVESTMENTS IN TENNENBAUM?
MR. GALARDI:       YES.
[See Exhibit D at A-156, 10/27/2006 Hr. Tr. at 49]

31.    Thus, Mr. Galardi lied to This Court again on October 27, 2006 in order to

stay retained as counsel to the Debtor and avoid sanctions.  Skadden attorney Mr. Galardi,

undermined the Debtors' board deliberations who were fiduciaries for the Debtor and the Estate.

There is no doubt that the Plaintiffs would have filed an immediate stay in the proceedings and

dismissed Skadden as counsel, had the Skadden shareholder and creditor interests been disclosed to

the Plaintiffs.  [ See Exhibits E and F,] affidavits of Debtors' officers impeaching Mr. Galardi's

statements in 2006 and under oath on May 1, 2013. [See also Exhibit I at 306, Hr. Tr. 9/22/15 at 15]

Mr. Galardi had in fact, mischaracterized the true nature of the Skadden firm and its attorneys shareholder and creditor interests in the Debtor in open court at the September 20, 2006 retention hearing and again on October 27, 2006. [See Exhibit B, at A-104, 5/1/13 Hr. Tr. at 74, Exhibit H, at A-300, B.D.I. No. 2073, ¶¶ H thru DDD] [Cf. Exhibits E and F, at A-161 regarding false testimony at May 1, 2013 hearing]

      b.      <u>The Contradictory Testimony and Admissions of Mr. Galardi<br>under Oath at the May 1, 2013 Hearing</u>

      32.      Mr. Galardi testified on May 1, 2013 that the decision reached by Skadden and Tennenbaum <u>not to disclose</u> the conflicts to the Plaintiffs was due to the tacit agreement then reached with Tennenbaum, as a client of Skadden that disclosing the actual and material conflicts to the Radnor board and the Plaintiffs did not appear "relevant" at the time or as a result of an existing practice of the Skadden firm. [*See* <u>Exhibit B</u>, A-104, Excerpts 5/1/13 Hr. Tr., at 49] This is a alarming and very troubling comment for an attorney of Mr. Galardi's experience in bankruptcy and corporate matters, particularly given that at the time, Mr. Galardi and the Skadden firm just executed the engagement letter as counsel to the Debtors on July 5, 2006.

      33.      Thus, Mr. Galardi admits that in June 2006, it was agreed amongst the Defendants not to disclose the material and adverse conflicts to the Plaintiffs due to their own view of relevancy. Further, this is totally contrary to Mr. Galardi's testimony on direct examination at the May 2013 evidentiary hearings. Therefore, Mr. Galardi made false statements on direct and totally contradicted himself on cross examination and made further admissions on May 1 and 2, 2013. *See* 5/1/13 Hr. Tr. at 49, <u>Exhibit B</u> at A-104. The Skadden firm then utilized Mr. Galardi's false statements on direct in its pleadings filed May 31, 2013. [B.D.I. No. 2073] [*See* <u>Exhibit H</u>, A-178, and 5/1/13 Hr. Tr. at 74.] [Cf. <u>Exhibits E and F</u> at A-161]

**B.  <u>Defendants' False Statements, Testimony and Pleadings were Directed to This<br>Court with the Intent to Deceive This Court</u>**

      34.      The Skadden pleadings filed on May 31, 2013 and its draft opinion contained numerous known false statements, as the testimony of Mr. Galardi was contradicted on cross examination as well as impeached by the Debtors' officers, however were intentionally inserted in

the Skadden pleadings in order to deceive This Court.   The Defendants did in fact deceive This

Court as the final opinion issued by This Court contains almost every false statement and declaration

made by the Defendants. [*See* Excerpts of the Draft Opinion attached hereto as <u>Exhibit H,</u> at A-300;

B.D.I. No. 2073-1]

       35.     Thus, This Court relied heavily on Mr. Galardi's false testimony in its 2006

opinions and in the issuing of This Court's June 20, 2013 opinion and order. [B.D.I. No. 2076, at ¶¶

12 and 20] This Court was unaware and misled by the false affirmative statements of Mr. Galardi in

2006 and 2013, and further misled by the false statements included in the Skadden Defendants

pleadings which included numerous false statements were known to be false. Cf. B.D.I. No. 2076 and

<u>Exhibit H</u>, A-300, Excerpts of Skadden Draft Opinion, B.D.I. 2073-1, Filed May 31, 2013]

**C.**  <u>**The Affirmative False Statements, Testimony and Pleadings Deceived This Court**</u>

       36.    It is thus clear, the Skadden pleadings submitted to the Court, intentionally

contained the false statements of Mr. Galardi in order to deceive This Court. [*See* Excerpts of the

Draft Opinion attached hereto as <u>Exhibit H, at A-300</u>]   [See Exhibit B, at A-104, and 9/22/06 Hr. Tr.

Exhibit I, A-305]

       37.    Thus, it is plain, This Court was deceived by the Defendants knowingly

inserting the false statements of Mr. Galardi in documents submitted to the court.   Mr. Galardi had

knowingly made false affirmative misrepresentations to the Court in 2006 and in 2013, then the

Skadden defendants attempted to utilize the known false statements to deceive This Court in order to

escape liability. However, the Plaintiffs officers and directors impeached the false testimony and in

turn the pleadings containing the false statements of Mr. Galardi.

**D.**  <u>**The Court Relied Upon the False Documents, Testimony and Declarations and Acted**</u>
     <u>**Upon The Known False Statements Contained in Pleadings in Issuing its Orders**</u>

       38.    This Court relied heavily in its decision, findings and fact and conclusions of

law submitted by the Skadden firm and based upon Defendant Galardi's false testimony.   The Court

ruled on June 20, 2013, overruling the Plaintiffs objection to the Skadden Fee Retention Application.

This Court relied on the false affirmative statements, misrepresentations and/or failure to disclose by

the Skadden Defendants which were known at the time to be false when made to This Court.  [See

Exhibit B, at A-104][9/20/06 Hr. Tr. B.D.I. No. 296]

      39.    During testimony under cross examination on May 1, 2013, Skadden  attorney,

Mr. Galardi verified the interests held by the Skadden firm in 2006 and falsely described as  invested

in *"blind trusts"* and having no discretionary authority (now known not to be true), were <u>entirely</u>

different then the equity interests as disclosed in the Third Supp. Decl., [See B.D.I. 2016]  [See

<u>Exhibit G,</u> at A- 241 and Exhibit M, at A-469, Skadden SEC filings and exemptive order granted by

the SEC only authorizing exemptive relief based upon full discretionary investment authority by

Skadden and its investment affiliates, [ <u>Exhibit G</u>, at A-214 and A-237] admission that Z shares were

only for Skadden partners who knew investment was proprietary investment and at a preference to

other investors interests.[29]

      40.    The Bankruptcy Court was in fact deceived by the knowingly false testimony

inserted into the Skadden May 31, 2013 pleadings.  Thus, the retention order, sale order,

confirmation order and the June 20, 2013 Opinion and Order, were obtained fraudulently, based

upon known false statements and filings made with This Court.   Skadden Defendants then

compounded their liability by omitting the contradictory evidence and admissions, and fabricated

false evidence by inserting the known false statements into its pleadings and draft opinion, thus

corrupting the record and undermining This Court's ability to properly adjudicate and administer the

above captioned cases.

**E.**  **<u>The False Statements, Declarations and the Fabrication of Evidence Interfered</u>**
      **<u>with the Administration and Adjudication of These Cases</u>**

      41.    In 2006 and throughout the pendency of the proceedings, the Defendants were

able to conceal from This Court the unlawful relationships amongst them, then in order to avoid

discovery, intentionally made further false statements under oath and inserted the false statements into

pleadings filed with This Court.  The false statements inserted into the pleadings were verifiably false

---

[29]    These interests are "preferential" ownership of the Z shares, only reserved for management partners as they represent the "carried interest" or profits of the funds and are not available to other investors in the Tennenbaum Funds. See Exhibits 3a, b and c; 7a and 7b to Adversary Complaint Docket No. 6 and 7, setting forth description of preference interests "Z" shares and Exhibit E attached hereto 5/1/13 Tr. at 125-130.

due to the Defendant, Mr. Galardi's own admissions on May 1, 2013 under cross examination, as well as Plaintiffs impeachment of his testimony. [*See* Exhibit G, at A-232 thru 233, A-265 thru A-268; Excerpts of 5/2/13 Hr. Tr. at 18 – 20; and Exs. E and F affidavits, at A-161]

42.     The third supplemental declaration (BDI No. 2016) filed March 15, 2013, admitted for the first time that there were direct investments by 23 Skadden attorneys in the Tennenbaum Funds dating back to 2004.   According to Mr. Galardi, the declaration as it does not disclose the other equity interests owned by Skadden affiliate, which were never included in any declaration to this day.  Accordingly, the Plaintiffs filed a motion to compel disclosure of the details of the multiple interests held by the Skadden firm. [*See* Exhibit M attached hereto, the Skadden SEC filings] [*See* Exhibit K at A-412, 3/15/13, Skadden Third Supp. Decl. attached hereto B.D.I. No. 2016].[30] [See Exhibit G, at A-214, A-241 thru A-244, Third Supp. Decl.¶¶ 5a and 5b.]

**F.   The Substantial Evidence Clearly Supports a Finding of Fraud Upon the Court by Skadden Attorneys Which Deceived This Court and Interfered with the Administration and Adjudication of These Cases**

43.     In sum, the Defendants, through Mr. Galardi's false affirmative statements in 2006 and 2013, directed to This Court was a clear and unambiguous attempt to conceal the misconduct.  It has been admitted by Mr. Galardi, that the Defendants knowingly colluded amongst themselves by; (i) obfuscating the true nature of the conflicts; (ii) mischaracterizing the ownership of creditor and shareholder interests held by Skadden and its attorneys, and (iii)  intentionally deceiving This Court.

44.     Equally of concern and perhaps more troubling, in addition to Mr. Galardi's false and misleading statements to This Court in 2006 and under oath in 2013, Defendants knowingly fabricated evidence and corrupted the record by inserting into its pleadings, the known false statements of Mr. Galardi under oath. [See Exhibit H, A-300, B.D.I. No. 2073]  The numerous

---

[30]   The 2014 declarations filed with the Court through March 15, 2013 are still incomplete and inaccurate.  When Skadden agreed to become counsel to the Debtors', it waived its rights to confidentiality over matters and conflicts adverse to the Debtors interests as both were clients and under the Bankruptcy Code and Rules.

false statements and omissions[31] of Mr. Galardi under oath in 2013 and inserted into the Defendants

pleadings, were clearly known to be false, as Mr. Galardi later contradicted his testimony under

cross examination.[32] [*See* Exhibits B, C and D, B.D.I. 2053, 2063 and 2073] Thus, it is clear, the

Defendants intentionally inserted the known false statements into their pleadings and other

documents filed with This Court, in order to deceive This Court, escape liability and as a result

interfered with the proper adjudication of these cases.[33]

45.    A close and impartial examination of the record and facts in this case, by

any reasonable and impartial person would conclude, that numerous undisclosed material and

adverse conflicts existed between counsel to the Debtor, Skadden, and the largest secured

creditors of the Debtor, Tennenbaum who concealed their collusion by making false statements

directed to the Court and inserted the false statements into pleadings to cover up their deceit and

in the process corrupted the record and committed fraud upon This Court as a result.[34] [*See*

Exhibit I, 9/22/14 Hr. Tr. beginning at 15, B.D.I. No. 2132]

## IV.    ARGUMENT

It is clear from the existing record in these cases that the false statements,

testimony and pleadings containing false statements were intentionally directed to This Court

---

[31]    Skadden attorney Patricia Moran, who executed the Skadden engagement letter advised the Debtor board of directors on conflicts and other corporate governance matters, and attended board meetings via teleconference as well as other attorneys from the Skadden firm and other law firms advising the Debtor board. Thus, Skadden knew or should have known that the statements by Mr. Galardi in open court in 2006 and under oath in 2013 were untrue when made.

[32]    Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 244-45 (1944). Omissions of material facts has been long settled as an "act" of fraud under the law, stating that an attorney may commit fraud on the court, not only through misrepresentation, but also through omission. "it is a wrong...which ...cannot complacently be tolerated consistently with the good order of society… involv[ing] two victims: the individual litigant …and the court itself, whose integrity is compromised by the fraudulent behavior of its officers. The very temple of justice is defiled." See, e.g., In re BH & P, Inc., 949 F.2d 1300, 1318 (3d Cir. 1991) ("[n]egligence does not excuse the failure to disclose possible conflict of interests")

[33]    Evidence of further interference with the adjudication of these cases suggests the furtherance of a conspiracy by Defendants and such acts tolls statutes of limitations relative to misconduct under U.S.C. 18 §152, 155 and 157. Intentional omissions of the contradictory statements and admissions of Mr. Galardi [B.D.I. 2053 5/31/13 Hr. Tr. at 74] and submission of the false statement on direct (false statements, known to have been false and misleading by Defendants, then inserted into pleadings is a furtherance of the conspiracy amongst the Defendants).

[34]    Skadden had a duty to disclose the information under Delaware Law as both Radnor and Kennedy were former clients, to seek a waiver from Plaintiffs, and also had a duty to disclose the true nature of the conflicts under the bankruptcy law as the material conflicts were disabling and violated 327(a) and the definition of disinterested party under 101(14)(A). Further, the Defendants never disclosed the $10 million in payments from Tennenbaum to the Plaintiff's financial and legal adviser, Skadden in 2004 and 2005 during the retention process or any time thereafter.

with the intent to deceive the court.[35]  The evidence on the record in the Radnor case is not only

clear, but unequivocal and convincing, as it is derived from the Skadden attorney's own words,

admissions under oath and false statements inserted into the record in order to deceive This

Court.  Defendants, in the process of concealing the actual conflicts existing amongst themselves

and committing fraud upon the Plaintiffs,[36] the Defendants also committed fraud upon This

Court.[37]  The statements of Skadden lead attorney Mr. Galardi, were false and known to be false

when made in 2006 and on direct examination in 2013. The Skadden Defendants then knowingly

inserted known false statements into pleadings filed with This Court to deceive This Court.  The

evidence is not only substantial, but unequivocally supports a finding that the Defendants

executed a deliberately planned scheme to defraud the Plaintiffs and in the process committed

fraud upon the Bankruptcy Court.[38]  This Court relied upon the false affirmative statements and

acted upon them, by issuing its opinions and conclusions of law and facts based upon a false and

inaccurate record in 2006 and 2013.

The Defendants, acting in concert, clearly interfered with the administration and

adjudication of these above captioned cases,[39] undermined the Debtors' board deliberations (as

Debtor counsel and a director) and interfered with its ability to restructure or reorganize

inflicting severe damages on the Debtors and the estate.[40] [See Ex.s. B, E and F] [A.D.I. No. 39 –

1 and 2]  This Court justifiably relied upon the Defendants' false testimony and statements to the

---

[35]    United States v. Smiley, 553 F.3d 1137, 1142 (8th Cir. 2009)

[36]    Hazel Atlas Glass Co. v. Harford-Empire Co., 322 U.S. 238, 245-46 (1944). Omissions have long been settled law and deemed "acts" and subject to prosecution for fraud under federal law.

[37]    18 U.S. §152, §153, §155 and §157, wherein making false statements, impeding an investigation or having implicit agreements involved in a conspiracy to commit fraud in the course of a bankruptcy proceeding is a crime.

[38]    United States v. Gellene, 182, F.3d 578 (7th Cir. 1999), Nondisclosures and filing of false affidavits in bankruptcy proceeding results in disbarment and a sentence of two years in federal prison for attorney at Milbank Tweed.

[39]    See Crivello, 134 F.3d at 839. Although nondisclosure is not per se "fraud upon the court," see In re Levander 180 F.3d 1114, 1119 (9th Cir. 1999), it is fraud on the court where the failure to deprived parties of the opportunity to mount a challenge to the relief sought at the original hearing. Id. at 1120. Civil Rule 60(d), therefore, certainly applies where the nondisclosure of a conflict under Section 327(a) prevented parties and the United States Trustee from challenging the retention of a professional in court.

[40]    Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del.1989). "When faced with such divided loyalties, directors have the burden of establishing the entire fairness of the transaction to survive careful scrutiny by the courts." The duty of loyalty is usually tested in cases where an officer or director has an interest in a party involved in a sale transaction with his company.  In that context, courts focus on "fair dealing and fair price" in determining the entire fairness of the transaction.  The Defendants owed duties of loyalties also as a director.

Court, and was completely unaware that the statements were untrue, contradicted by prevailing

statements in the same testimony, and was misled by the pleadings containing false statements.

### A.  **Governing Law**

As courts have observed on multiple occasions, the bankruptcy system is self-

policing.  It is not the responsibility of the Debtors' board of directors, United States Trustee, the

Court, or other interested parties, to discern gaps in the disclosures provided, or to ferret out every

last piece of information that may not have been disclosed completely.   The required disclosures

by Skadden should not be a game of *"cat and mouse"* regarding material and adverse conflicts.

Skadden Defendants have the burden to make fulsome disclosures and it is continuing.

In essence, the bankruptcy system relies upon the integrity of professionals

appearing in bankruptcy cases to make forthright, complete and candid disclosures to fulfill the

spirit of the Bankruptcy Code, even where the professionals know that making these disclosures

may result in a court's determination that they may not be retained in the case.  This

determination is for the Debtors' board and the courts to decide, and not the professionals

themselves.  The Debtors also have a right to choose counsel who is free from all conflicts.  As

counsel for the Debtors, Skadden had a duty of loyalty to the Plaintiffs.[41]  The Bankruptcy Code

also extends an administrative fee priority, payable in full, in advance of other claimants, to

professionals retained by the estate.[42]  Because of the potential for abuse, Courts have great

oversight responsibility to ensure that professionals do not abuse or manipulate the bankruptcy

system.[43]  Disclosures of conflicts between Debtors counsel and other creditors is at the heart of

---

[41]   As stated in the Preamble to the Delaware Rules of Professional Conduct (the "Rules of Professional Conduct"), "[a]s an officer of the court, each lawyer has a duty to uphold the legal process; [and] to demonstrate respect for the legal system . . . " (Preamble: A Lawyer's Responsibilities).  The relative autonomy of the legal profession carries with it special responsibilities of self-government.  Every lawyer is responsible for observance of the Rules of Professional Conduct . . . Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

[42]   See 11 U.S.C. §§ 507(a)(2) and §503(b)(2).

[43]   To be disinterested is "to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration." In re Vebeliunas, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999), dismissed on appeal, 246 B.R. 172 (S.D.N.Y. 2000) (citing In re Codesco, Inc., 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982)) (additional citations omitted); see also In re Angelika Films 57th, Inc., 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The determination of adverse interest is objective and is concerned with the appearance of impropriety.").  A disinterested person "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters."

maintaining integrity of the process and ensuring fairness to all parties.[44]

The disclosure obligation mandated by the Bankruptcy Code and Rules

"implicates a public policy interest justifying relief under Rule 60(b)(6) and 60(d)(3)."[45]  Pursuant

to 11 U.S.C. §§ 327(a) of the Bankruptcy Code,  the Bankruptcy Court cannot authorize the

employment of an interested party[46] even if it concludes that the Debtor would be better served

by the employment.[47]  This Court is also required under the law to hold Debtor Counsel, in this

case the Skadden firm, to a <u>higher</u> standard due to its impact on fairness, protect our system of

justice and the proper administration in these bankruptcy cases.[48]  Counsel to the Debtor, is

subject to a higher standard of fiduciary duty due to the important role Debtor counsel serves in

determining the outcome and ultimate fairness to the Debtor, creditors and other parties in

interest.[49]  Nondisclosure of relationships in connection with the retention of professionals may

rise to the level of fraud upon the court.[50]

---

Vebeliunas, 231 B.R. 191-92 (citations and quotations omitted).  The most modest interest or relationship will undo a person's disinterestedness if it "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules."  In re Granite Partners, L.P., 219 B.R. 22, 23 (Bankr. S.D.N.Y. 1998).

[44]  Under Fed. R. Bankr. P. 2014(a), a professional to be employed pursuant to Sections 327, 1103 or 1114 of the Bankruptcy Code must disclose certain relationships: "The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Under Del. Bankr. LR 2014-1(a), the duty of disclosure imposed by Fed. R. Bankr. P. 2014(a) is a continuing duty.

[45]  In re Southmark Corp., 181 B.R. 291, 295 (Bankr. N.D. TExhibit 1995) (granting relief under Rule 60(b)(6) from final fee order which had been entered nearly three years earlier).  See also Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 244-45 (1944) (holding that fraud upon the court equitably tolls the time for seeking to set aside a judgment or order); Pearson v. First NH Mort. Corp., 200 F.3d 30, 35-41 (1st Cir. 1999) (holding that attorney's false disclosure which denied any connection with creditors could support a finding that attorney had committed a fraud on the court); Benjamin's-Arnold, 1997 WL 86463, at *10 (holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient 'extraordinary circumstances' to justify relief under Rule 60(b)(6).

[46]  Bankruptcy courts lack the power to authorize the "employment of a professional who has a conflict of interest." In re Mercury, 280 B.R 35, 55 (Bankr. S.D.N.Y. 2002).

[47]  United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994); See also: Childress v. Middleton Arms, Ltd. Partnership (In re Middleton Arms, Ltd. Partnership), 934 F.2d 723 (See: 11 U.S.C. §§327, 1103, 1114, 101 (14) and (31). (6th Cir. 1991).  "By forbidding employment of all interested persons, Bankruptcy Code section 327 prevents individual bankruptcy courts from having to make determinations as to the best interest of the debtors in these situations. The Court does not have the power to approve an "interested party as counsel to the Debtor".

[48]  It is the responsibility of counsel to the Debtor to disclose material and adverse conflicts to the Debtor and the Court. The Debtor also has a right under the law to choose counsel of its own, free of conflicts and the Bankruptcy Court does not possess the authority to appoint conflicted counsel to the Debtor.

[49]  In re West Delta Oil Co., Inc., 432 F.3d 347 (5th Cir. 2005). The opinion contains a lengthy analysis of the  conflict rules as they apply to debtor's counsel.

[50]  Professionals may not omit disclosing a connection on the basis that they believe the relationship is insignificant or irrelevant. Smith v. Marshall (In re Hot TinRoof, Inc.), 205 B.R. 1000, 1003 (B.A.P. 1st Cir. 1997); In re Crivello,

Mr. Galardi's false statements in 2006, in regards to the adverse conflicts was a clear violation of Fed. Bank. R. 2014, and further the Skadden firm's shareholder and creditor interests were in clear violation of section 327(a) of the Bankruptcy Code.  Defendants undermined the Debtors' board deliberations.   Mr. Galardi's false affirmative statements to the Court and false declarations as well as concealment of the adverse conflicts from the Debtors' board and other parties prevented the Plaintiffs from challenging the retention of the Skadden firm in court.   The Skadden Defendants then compounded its previous Rule 2014 violations when it reaffirmed all of the statements in its original Rule 2014 affidavit and affirmatively represented that it continued to be a "disinterested person", then inserted knowingly false statements into its pleadings.

### (I)    The Court's Authority To Vacate its Own Orders Where There Has Been A Fraud Perpetrated Upon The Court and to Correct an Injustice.

a.    Civil Rule 60(b) – Generally

Rule 60 confers broad discretion upon the Court to grant the requested relief because, as in these cases, to do so will serve substantial justice and maintain the integrity of the Court.  See Matarese, 801 F.2d at 106; see also Nemaizer, 793 F.2d at 61 (same); Enron, 352 B.R. at 369 (these grounds "should be liberally construed when substantial justice will . . . be served") (quoting Radack, 318 F.2d at 542); Teligent, 326 B.R. at 227; AMC Realty, 270 B.R. at 143-44.

According to Mr. Galardi's testimony, in addition to concealing the shareholder and creditor interests, then making false statements to This Court, Skadden is continuing its deceit by making only partial disclosures related to the Skadden firm's equity interests as referenced in the Skadden Third Supplemental Declaration filed on March 15, 2013.[51]  Mr. Galardi testified that the interests owned by Skadden partners are addition to, and separate from, according to Mr. Galardi, the 2006 equity investments by Skadden firm in Tennenbaum, Radnor's largest secured

---

194 B.R.463 (E.D. Wisc. 1996). Denial of fees is just one possible sanction for knowing failure to disclose. In re EWC, 138 B.R. 276 (Bankr. W.D. Okla. 1992); Halbert v. Yousif and Tanners, Inc., 225 B.R. 336 (Bankr. E.D. Mich. 1998).

[51]    See Docket No. 2016 attached as Exhibit C hereto. [See B.D.I. No. 2063, 5/1/13 Hearing Tr. at 114, 115,121,123, 125,128-132]

creditor. [See 5/1 Tr. at 128 line 17.]  Subsections (b)(6) and (d)(3) of Civil Rule 60, as made

applicable herein by Bankruptcy Rule 9024, authorize the Court to vacate the retention orders of

Skadden and other orders issued based upon fraudulent misconduct, gross negligence or in bad

faith.  Clearly, further discovery is required in order to obtain the full extent of the conflicts of the

Skadden firm.

        b.      <u>Civil Rule 60(b)(6)</u>

        Courts may invoke Rule 60(b)(6) where there has been a failure to disclose

connections in violation of Bankruptcy Rule 2014. <u>See</u>, e.g., <u>In re Lewis Road LLC,</u> No. 09-

39672, 2011 WL 6140747 (Bankr. E.D. Va. Dec. 9, 2011).  In fact, some courts have held that the

nondisclosure rises to the level of a "fraud on the court," and therefore may permit the invocation

of Rule 60(d)(3) to vacate the court's prior order.[52] <u>See</u> <u>Crivello,</u> 134 F.3d at 839 ("a bankruptcy

court should punish a willful failure to disclose the connections required by Fed. R. Bankr. P.

2014 as severely as an attempt to put forth a fraud on the court.").  Although nondisclosure is not

per se "fraud upon the court," <u>see In re Levander</u> 180 F.3d 1114, 1119 (9th Cir. 1999), it is fraud

on the court to make false affirmative statements directed to the court, file known false statements

into pleadings and where such failures interfere with the proper adjudication by the Court and

deprives parties of the opportunity to mount a challenge to the relief sought at the original

hearing. <u>Id.</u> at 1120. Civil Rule 60(d), therefore, certainly applies where the nondisclosure of a

conflict under Section 327(a) prevented the Plaintiffs and other adverse parties from challenging

the retention of a professional in court.  <u>See In Re Crivello,</u> 134 F.3d at 839.

        c.   Civil Rule 60(d)(3)

        Rule 60(d)(3) authorizes a court to "set aside a judgment" where there has been

a "fraud on the court." Fed. R. Civ. P. 60(d)(3); <u>Philips Lighting Co. v. Schneider,</u> 395 F. App'x

96, 798 (2d Cir. Oct. 12, 2010); <u>Old Cargo,</u> 423 B.R. at 49. The rule applies where there is a

"scheme to defraud" the court. <u>See Hazel Atlas Glass Co. v. Harford-Empire Co.,</u> 322 U.S. 238,

---

[52]    <u>In re eToys Inc.,</u> 331 B.R. 176, 197 (Bkrtcy. D. Del. 2005)

245-46 (1944), overruled on other grounds by Standard Oil Co. of Cal. v. United States, 429 U.S.

17 (1976) (scheme to defraud both Patent Office and court constitutes fraud on the court); see

also Pearson, 200 F.3d at 38 ("fraud upon the court occurs where a party has sentiently set in

motion some unconscionable scheme calculated to interfere with the judicial system's ability

impartially to adjudicate a matter.")

The First Circuit Court of Appeals has added to the foregoing definitions the further

statement that "fraud on the court 'is an intentional deflecting of the Court from knowing all the

facts necessary to make an appropriate judicial decision on the matter before it.'" Pearson v. First

NH Mortgage Corporation, 200 F.3d 30, 37 (1st Cir. 1999), quoting In re Pearson, 210 B.R. 500,

510 (Bankr. D. NH. 1997).   In this case, as in Pearson, a grave miscarriage of justice took place

when Skadden was retained and continued in its role as Debtor counsel; Skadden's nondisclosure of

its interests as a shareholder and creditor, depth of its relationship with creditors and its subsequent

misrepresentations, false statements and submissions of false documents to the Court, circumvented

effective court oversight and deprived this Court of the ability to assess Skadden's ability to

continue representing the Debtor after the debtors employed Skadden.

Courts have found it appropriate to invoke Rule 60(d) when an attorney, as an

officer of the court, has been involved in the fraud.  As the Second Circuit in Kupferman explained,

an attorney, as an officer of the court, must be honest and act with integrity. Id.  If an officer of the

court fails to meet this cardinal requirement, the attorney has defrauded the court. Id.; Workman,

227 F.3d at 336 (defining fraud upon the court as conduct "on the part of an officer of the court" that

"is directed to the judicial machinery itself," "is willfully blind to the truth," "is a positive averment

or a concealment when one is under a duty to disclose," and "that deceives the court."); Philips

Lighting, 395 F'Appx. at 798 (Rule 60(d) applies to conduct by officers of the court); Kupferman,

459 F.2d at 1078 (attorney's "loyalty to the court, as an officer thereof, demands integrity and honest

dealing with the court"); Old Cargo, 423 B.R. at 52 (the success of a motion under Civil Rule

60(d)(3) depends on whether the bad conduct by the officer of the court "actually deceived the

court.") (citing Smiley, 553 F.3d at 1145).

A court may invoke Civil Rule 60(d)(3), even on its own initiative, "to maintain the integrity of the courts and safeguard the public." United States v. Smiley, 553 F.3d 1137, 1142 (8th Cir. 2009)[53]   Nevertheless, such a premium is placed on the court's mission to preserve its integrity that, although Federal Rule of Civil Procedure 60(c)(1) sets forth a one-year time limitation on a motion under Rule 60(b)(3), a Rule 60(d)(3) motion is not time-barred.  Id.

Thus, Civil Rule 60(d)(3) embraces "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." Id. (internal quotation omitted).  The Hazel-Atlas case has been described as a case in which a judgment was set aside on motion primarily on the basis "that an attorney was implicated in perpetrating the fraud."[54]

d.        The Third Circuit Decision in Herring v. United States

The Third Circuit articulated, for the first time, the elements of fraud on the court in its Herring v. United States decision, 424 F.3d 384 (3d Cir. Sep. 22, 2005) following the Sixth Circuit decision in Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.1993):

"Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter . . . .").  "To prove this cause of action the Trustee must establish by "clear, unequivocal and convincing evidence" the following: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court."[55]  We further conclude that a determination of fraud on the court may be justified only by "the most egregious misconduct directed to the court itself," and that it "must be supported by clear, unequivocal and convincing evidence."

---

[53]   See also Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir. 1960).  There must be clear and convincing evidence to support a Rule 60(d)(3) motion, King v. First Am. Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002); Old Cargo, 423 B.R. at 51.

[54]   Kupferman v Consolidated Research and Mfg. Corp., 459 F.2d 1072,1078 (2d Cir. 1972) (citing 7 James WM. Moore et al., Federal Practice ¶ 60.33 at 513 (3d ed. 2009)). As an officer of the court a lawyer must deal with the court with honesty and integrity. Id.  If a lawyer betrays this duty of loyalty to the court, the lawyer is deemed to have "perpetrate[d] a fraud upon the court." Id.  Although the fraud or misconduct need not be the "primary basis for the ruling," the conduct must have "impressed, affected or influenced the court."[54]  Fraud under Rule 60(d) concerns the integrity of the judicial process, see Lee v. Marvel Enters., 765 F.Supp.2d 440, 450 (S.D.N.Y. 2011), and fraud on the court interferes with the court's ability to decide cases.  Id.; see also King, 287 F.3d at 95

[55]   Although the United States Courts of Appeals for the Third Circuit have not articulated the express elements of fraud upon the court as the Sixth Circuit did, the doctrine has been characterized "as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.1993).

Herring, 424 F.3d at 386-87.

      Fraud upon the court,[56] as distinguished from common law fraud, equitably tolls the time for seeking to set aside a judgment or order.  The purpose is not to avoid prejudice to the rights of parties but to protect the integrity of the court.  In *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 64 S.Ct. 997 (1944), the United States Supreme Court explained that the inquiry focuses on whether the alleged fraud harmed the judicial process, not on whether it harmed a party. The conduct of Defendants is in total contravention of the requirements for disclosure to the Plaintiffs and This Court under Delaware Law and by debtor counsel under the Bankruptcy Code.[57] Moreover, the false statements directed to This Court and the pleadings containing numerous false statements filed on May 31, 2013, deceived This Court, the Court relied upon there false affirmative statements and acted upon them.

    *(II)    Orders Obtained Due to Fraud Have No Force and Effect*

      In the instant case, the Defendants made affirmative false statements to this Court in the process of concealing its fraud upon the Plaintiffs, then knowingly inserted false statements into declarations and pleadings placed into the record in order to deceive the Court.  The fraud committed upon This Court, not only involves omissions, but clearly includes affirmative statements, known to be false when made, directed to This Court, as well as the insertion of known false statements into pleadings and declarations filed with This Court.  Accordingly, the June 20, 2013 opinion of This Court and the releases issued under the confirmation order and the sale order should be vacated, if not the orders in their entirety based upon the fraudulent conduct of the Defendants.[58]  This Court's previous orders, including the retention order, the sale order and the

---

[56]    Fraud on the court, though not easily defined, can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense.  Kupferman v. Consolidated Research & Manufacturing Corp., 459 F.2d 1072, 1078 (2d Cir. 1972).

[57]    11 U.S.C. §327(a).

[58]    Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court held that a district court, properly invoked its inherent power in assessing attorney's fees and related expenses as a sanction for a party's bad-faith conduct.  In reaching this holding the Court rejected an argument that the Federal Rules of Civil Procedure displaced the inherent power of the courts to maintain an orderly and expeditious disposition of the cases before them. 501 U.S. at 43-44. The Court noted that of "particular relevance" to its holding was the inherent power of federal courts to vacate their own judgments upon proof that a fraud has been perpetrated upon the court. The Court quoted Hazel-Atlas Glass Co.

confirmation order were clearly obtained by fraud.  Sanctions should be imposed based upon further

discovery and the conclusion of This Court's own investigation into the acts of the Defendants.[59]

## B.  THE SPECIFIC EVIDENCE OF WILLFUL MISCONDUCT IS SUBSTANTIAL, CLEAR AND CONVINCING

Skadden lead attorney, Mr. Galardi, testified that he based his decisions not to disclose

the conflicts to the Plaintiffs based upon his own view of relevancy and the Skadden policy and

practices not to disclose "adverse conflicts" to protect "client confidentiality of engagements" [*See*

Exhibit G, at A-232; 5/1/13 Hr. Tr. at 114-115, 125 line 24.]  Thus, Mr. Galardi's statements in his

declarations and affirmative statements made to This Court were knowingly false when made.

Moreover, Mr. Galardi verified on cross examination, that the Radnor board of

directors, were never informed by any Skadden attorneys of the conflicts nor the Office of the U.S.

Trustee's numerous objections to the Skadden representation despite the arguments occurring during

hearings before This Court.[60]  [*See* Exs. E and F attached hereto, the affidavit of Michael V.

Valenza, the chief financial officer of Radnor and Michael T. Kennedy, CEO of Radnor.  *See* also

9/20/06 Hr. Tr. at 37]

## C.  THE SKADDEN ATTORNEYS FALSE AFFIRMATIVE STATEMENTS AND THE FILING OF PLEADINGS INCLUDING NUMEROUS FALSE STATEMENTS INVALIDATES THIS COURTS' PREVIOUS ORDERS

At the September 22, 2014 hearing, Plaintiffs directed This Court to the affirmative

false statements and admissions by Skadden's lead attorney, Mr. Galardi, noting that the Plaintiffs

due process where violated due to the affirmative false statements made to the Court together with

---

v. Hartford-Empire Co., 322 U.S. 238, 245-46 (1944), in recognizing the "'historic power of equity to set aside fraudulently begotten judgments'" in order to maintain the integrity of the courts and safeguard the public.  The Court in Chambers also recognized a court's power to conduct an independent investigation in determining whether it has been the victim of fraud. 501 U.S. at 44.

[59]  In re Leslie Fay Cos., 175 B.R. 525, 537 (Bankr. S.D.N.Y. 2002) (all connections that are not so remote as to be *de minimus* must be disclosed). Chambers v. NASCO, Inc., 501 U.S. 32 (1991), Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245-46 (1944).

[60]  On September 21, 2006, the Delaware Bankruptcy Court, despite the disqualification of Lehman Brothers, Inc. as financial adviser and multiple objections by the Office of the U.S. Trustee, issued an order approving the Skadden retention based upon false affirmations by attorney Mr. Galardi, sworn under the penalty of perjury and an incomplete and inaccurate record.

the nondisclosure of the interests held by the Skadden firm and its attorneys in the Debtor.[61]

Mr. Galardi's testified in May 2013, that his statements in the initial declaration, sworn under the penalty of perjury were known to be false and incomplete when filed with the court. Mr. Galardi further admitted to having known at the time of this filing of the ownership interests by Skadden partners in Radnor's largest secured creditors, yet intentionally chose to not disclose the material conflicts to the Plaintiffs.   Mr. Galardi also admitted that the Skadden firms had an agreement with Tennenbaum and other Skadden attorneys not to disclose the known conflicts. [Exhibit G, at A-178, 5/1/13 Tr. at 114-115, 120-130]  Mr. Galardi alone negotiated the Radnor credit agreements, the sale agreement,[62] the financing agreements with Silver Point Partners LP and its affiliates, (another Skadden client) and the liquidation plan which was confirmed on September 10, 2012 by This Court absent any knowledge of the Defendants deceit.

In actuality and as admitted by Mr. Galardi, the Skadden firm held undisclosed shareholder and creditor interests in the Debtor and fraudulently obtained the retention order, sale order, confirmation order and the recent June 30, 2013 Opinion and Order from This Court to the mutual benefit of all the Defendants.  The releases granted the Defendants should be vacated due to the fraud committed upon This Court in obtaining the above referenced orders.

### D.  THE FILINGS OF DOCUMENTS THAT CONTAINED NUMEROUS FALSE AFFIRMATIVE STATEMENTS SUPPORTS A FINDING OF FRAUD UPON THE COURT

The Defendants compounded their liability by inserting Mr. Galardi's known false statements under oath on direct into the pleadings to their response brief. [*See* Exhibit H, at A-300; B.D.I. No. 2073 and No. 2073-1]

The known facts that support this remedy include:

---

[61]  Pennoyer v. Neff, 95 U.S. 714, 732-733 (1878) "A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. Peralta v. Heights Medical Center, Inc. 485 US 80, 86 (1988) 87, 108 S. Ct. 896, 900.

[62]  Skadden was prior counsel to Kennedy personally and was existing counsel to Radnor for prior eight years.  See B.D.I. 96 and admission by Skadden firm that Kennedy and Radnor were previous and existing clients and yet no waiver was executed as neither was informed of the adverse and material conflicts.

- Mr. Galardi and the other Defendants involved in these cases, are officers of the court;

- The Defendants are experienced bankruptcy professionals and corporate attorneys who made the affirmative false statements and included false testimony and affirmative statements in the record in these cases;

- The affirmative false statements and filings made with This Court were done intentionally with the aim of deceiving This Court;

- This Court relied upon the false statements and documents;

- The false statements, testimony, declarations and filing of false documents in fact deceived This Court;

- This Court acted upon the false statements, testimony and false statements contained in the documents filed with This Court;

- This Court issued opinions and orders in reliance upon the false statements testimony and filings inserted into the record;

- The false statements, testimony, filings and orders corrupted the record and interfered with the adjudication and administration of the above captioned cases.

The Defendants' own statements on the record and the insertion of known false statements into filings with This Court present clear and convincing evidence of the occurrence of a fraud perpetrated on the bankruptcy court.

## V.    REMEDIES REQUESTED

### A.    SUBSTANTIAL REMEDIES ARE WARRANTED INCLUDING INVALIDATION OF RELEASES PREVIOUSLY GRANTED IN THE SALE AND CONFIRMATION ORDERS

This Court should invoke Rule 60(b)(6) and 60(d)(3) to vacate and/or amend This Court's previous orders, grant the Plaintiffs' motion and invalidate the releases granted the Defendants under the Sale and the Confirmation Orders because the Defendants perpetrated a fraud on this Court, by willfully making false statements, proffering false testimony under oath and filing documents containing the false statements, in an attempt to conceal the their misconduct as well as the true relationship amongst themselves. The granted releases were conditioned on and subject to, any findings by This Court of gross negligence or willful misconduct by the parties granted the releases.  The Defendants, in effect have vitiated the releases by their own statements to This Court and false statements inserted into filings with This Court.  Further, Defendants should be compelled to explain and fully disclose any and all ownership interests held by them in creditors of the Debtor.

**B.      SIGNIFICANT SANCTIONS SHOULD BE IMPOSED TO PROTECT THE INTEGRITY OF THE BANKRUPTCY SYSTEM**

Given the serious nature of the willful misconduct by the Defendants, This Court should give considerable weight to the deterrent value of sanctions, including: the number of parties to the misconduct in these cases, the numerous violations of duties to Plaintiffs as Debtor counsel and members of the Debtors' board, egregious nature of the collusion and fraud upon This Court, which also undermined public confidence in the integrity of the bankruptcy process.  Accordingly, in addition to the remedies requested in the Plaintiffs' Motion, and in order to prepare this case for trial, This Court should consider: (i) removing the Skadden firm as counsel to the estate; (ii) establishing two constructive trusts, each created separately for the benefit of aggrieved unsecured creditors and equity holders in preparation for trial and set aside a portion of any disgorged fees for discovery and litigation costs to pursue restitution and compensation for damages inflicted by the Defendants.

## VI.    CONCLUSION

For all these reasons in this Opening Brief and the Plaintiffs' Motion, the Plaintiffs respectfully submits that This Court enter the Proposed Order (attached as Exhibit A hereto) vacating and/or amending This Court's prior orders and imposing severe sanctions against the Defendants, and grant Plaintiffs such other relief as may be just and proper.

Respectfully submitted,

Dated: February 9, 2015          MICHAEL T. KENNEDY

BY: _____

Michael T. Kennedy, Pro Se

On behalf of Plaintiffs, Michael T. Kennedy, Radnor
Holdings Corporation and the Kennedy Family Trusts
for the benefit of the Kennedy Children
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Tel: (610) 727-4156
Fax: (610) 727-4001
mkennedy@radnorholdings.net

30