**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| RADNOR HOLDINGS CORPORATION, et al. | ) Case No. 06-10894 |
| | ) (Jointly Administered) |
| | ) |
| Debtors, | ) **Re:  D.I. 2133** |
| MICHAEL T. KENNEDY, MTK TRUST | ) |
| FBO RYAN KENNEDY, MTK TRUST FBO SEAN M. | ) |
| KENNEDY, MTK TRUST FBO MICHAELA | ) |
| C. KENNEDY, MTK TRUST FBO | ) |
| CONNOR R. KENNEDY | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 12-51308 |
| | ) |
| SKADDEN ARPS MEAGER & FLOM LLP; | ) |
| SK PRIVATE INVESTMENT FUND 1998 LLC; | ) |
| RICHARD T. PRINS, ESQUIRE; GREGG M. | ) |
| GALARDI, ESQUIRE; TENNENBAUM & CO. LLC; | ) |
| TENNENBAUM CAPITAL PARTNERS, LLC; | ) |
| BABSON & CO. LLC; SPECIAL VALUE | ) |
| EXPANSION FUND, LLC; SPECIAL VALUE | ) |
| OPPORTUNITIES FUND, LLC; MICHAEL E. | ) |
| TENNENBAUM; SUZANNE S. TENNENBAUM; | ) |
| DAVID A. HOLLANDER; MARK K. | ) |
| HOLDSWORTH; HOWARD M. LEVKOWITZ; | ) |
| RICHARD E. SPENCER; JOSE FELICIANO; | ) |
| ALVEREZ & MARSAL, INC. and STANFORD | ) |
| M. SPRINGEL, | ) |
| | ) |
| Defendants. | ) **Re: D.I. 94** |

**MEMORANDUM ORDER**[1]

---

[1]    The cases were reassigned to Judge Kevin Gross upon the retirement of Judge Peter J. Walsh who had presided over the case from its beginning.  See Order of Reassignment of Judge, dated December 10, 2014 [D.I. 2131].

Michael T. Kennedy ("Mr. Kennedy") is the former CEO, chairman of the board and majority shareholder of debtors Radnor Holdings Corporation, *et al*. Mr. Kennedy, appearing *pro se*, is asking the Court to vacate an order of the Court (the "Motion").[2] The ruling at issue is the Court's Memorandum Opinion and Order dated June 20, 2013, Regarding the Objection of Michael T. Kennedy to the Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (the "Fee Order") [D.I. 2076]. The District Court affirmed the Fee Order. Mr. Kennedy appealed the District Court's ruling to the Third Circuit Court of Appeals, and the appeal is pending. In the meantime, Mr. Kennedy requested a stay of briefing of the appeal to enable him to proceed here with the Motion. The Court of Appeals granted the request and the Court is now ruling on the Motion.

The Court will avoid the trap of reviewing all of the matters the Court previously addressed in this contentious case pending for almost nine years before Judge Walsh. It is sufficient to explain that Mr. Kennedy continues to allege that Debtors' attorneys, Skadden, Arps, Slate, Meagher & Flom ("Skadden") and its secured creditors, the Tennenbaum parties ("Tennenbaum"), engaged in misconduct. Tennenbaum ultimately purchased the Debtors through a credit bid with some of its secured claim, resulting in

---

[2] Motion for an Order: (I) Pursuant to Fed. R. Civ. P. 60(b)(6) and 60(d)(3) Made Applicable by Fed. R. Bankr. P. 9024, Vacating this Court's Order Dated June 20, 2013; (II) Invalidating Defendants' Releases Under the Sale and Confirmation Orders; and (III) Imposing Sanctions Against the Defendants Due to Willful Misconduct Including Interference with the Administration of the Bankruptcy Case and Fraud on the Bankruptcy Court [D.I. 2133, Adv. D.I. 94]. Although the Motion bears the caption of both the main Chapter 11 case and the adversary proceeding, the Motion pertains only to an order entered in the main case.

Mr. Kennedy's loss of his equity interest in Debtors and a judgment against him in favor of Tennenbaum.

As a preliminary matter, there are two procedural issues which the Court must address.  First, the Court will take judicial notice of the proceedings before this Court and the District Court.  *Newhall Land & Farming Co. v. Am. Heritage Landscape, L.P.* (*In re LandSource Communities Dev. LLC*), 476 B.R. 454, 456 n. 2 (Bankr. D. Del. 2012); *Orabi v. Attorney General*, 738 F. 3d 535, 537 n. 1 (3d Cir. 2014); Fed. R. Evid. 201.   Second, the Court normally would not have jurisdiction to consider the Motion because the pending appeal divests the Court of jurisdiction.  *Sheet Metal Workers Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 198 F.3d 391, 394 (3d Cir. 1999).  It is clear that the Court has authority to deny the Motion on the basis that it does not have jurisdiction by virtue of the appeal. Fed R. Civ. P. 62.1(a)(2).  The Court understands that the Court of Appeals, with the appeal pending, has in essence asked the Court to decide the Motion and, accordingly, the Court will honor the request.

The Court has carefully reviewed the record of the case and the opinions which the Court and the District Court issued.  It is elegantly clear from this review and the Motion itself that the Motion is nothing more than a rehashing of allegations that the Court and the District Court previously ruled had no merit.  Mr. Kennedy has not asserted a single new fact or argument which this Court and the District Court did not already consider and reject.  Mr. Kennedy candidly concedes that:

The acts of misconduct was [sic] discovered on February 17, 2012 and further revealed in 2013. (Opening Brief, p.2, n. 3)

In the Motion, Kennedy alleges:

1.      Gregg Galardi ("Galardi"), the lead attorney from Skadden, made false statements to the Court at hearings on September 20, 2006 and October 27, 2006, regarding Skadden's prior representation with Tennenbaum, and failed to disclose Skadden's relationship with Tennenbaum.

2.      In May 2013, Galardi falsely testified on cross-examination regarding Skadden's interest in the Debtors and work performed by Skadden on behalf of Tennenbaum.

3.      The Skadden statements and misrepresentations in filings with and testimony before the Court deceived the Court and therefore the Court approved Skadden's retention, the Sale Order (approving the sale to Tennenbaum) and the Confirmation Order based upon fraud.

The Court must deny the Motion because the Court (and the District Court) expressly considered and rejected all of Kennedy's allegations on the basis of evidence presented to and considered by the Court. At oral argument on the Motion, Mr. Kennedy could not point to a single allegation which the Court did not previously consider and reject.

<u>The Skadden Retention Order</u>

At the outset of the case, the U.S. Trustee objected to Skadden's retention, arguing that Skadden's relationship with Tennenbaum was a conflict of interest. [D.I. 169]. Judge Walsh held a contested evidentiary hearing on the issue, overruled the objection, and approved Skadden's retention. *See* Sept. 20, 2006 Tr. at 60-62. Judge Walsh determined that Skadden's relationship with Tennenbaum was not significant enough to create a

4

conflict of interest. He also noted that the creditors' committee (the "Committee") and the independent counsel representing Debtors' special committee of the board of directors both were actively involved in the case, such that Skadden could not favor Tennenbaum's interest even if it wanted to.   *Id.* at 60-62.  As a result, the Court determined that Skadden did not hold a disabling conflict. *Id.* at 61-62 (The Court: "I'm not concerned that Skadden Arps may be influenced in any fashion to not engage in the best representation of the Debtor. . . . I just don't think there's any possibility for Tennenbaum to have a leg up on whatever happens in this case by reason of the Debtor being represented by Skadden Arps.").

After the hearing, the Court entered an order approving Skadden's retention.  [D.I. 246]. The Court stated that it was "satisfied with the representations made in the Application and the Galardi Declaration that Skadden, Arps represents no interest adverse to the estates [and] that it is a 'disinterested person' as that term is defined under Bankruptcy Code section 101(14)." *Id.* at 2. No party appealed the Skadden Retention Order, and it is a final order.

<u>The Sale Opinion and Order</u>

Two months into the case, the Committee sued Tennenbaum and certain of its affiliates, alleging that Tennenbaum's intent  from the beginning of its relationship with Debtors was to acquire the Debtors by "credit bidding" in a bankruptcy fire sale, leaving unsecured creditors with nothing. [Adv. Pro. No. 06-50909, D.I. 1] (Committee Complaint).  The Committee sought to avoid Tennenbaum's secured claims to allow

5

unsecured creditors to recover.  The Committee alleged:

> [I]f Tennenbaum is permitted to consummate its scheme and proceed with
> its acquisition plan, the unsecured creditors stand to recover nothing. That
> outcome is by design, the result of a deliberate, coordinated plan by
> Tennenbaum to increase the debt load of the already over-leveraged
> debtors, take them into default, and then acquire the Debtors' valuable
> assets and business operations in a fire-sale process at a discount so steep
> that it constitutes a constructively fraudulent transfer.

*Id.* ¶ 1.

Judge Walsh rejected all of the Committee's claims. "The Court conducted eight full days of trial between November 2 and November 14, 2006, heard testimony from fourteen witnesses and admitted more than 350 documents into evidence." *Official Comm. of Unsecured Creditors v. Tennenbaum Capital Partners LLC (In re Radnor Holdings Corp.),* 353 B.R. 820, 827 (Bankr. D. Del. 2006) (the "November 2006 Opinion"). The Court dismissed the complaint in its entirety, finding that Tennenbaum had no improper motive and committed no wrongdoing in its relationship with Radnor.  In particular, the Court determined that:

> TCP [Tennenbaum Capital Partners] did *not* engage in misconduct; TCP did
> *not* seek to benefit itself at the expense of others; TCP did *not* seek to mislead
> trade creditors, public noteholders or other stakeholders. TCP at all times
> acted in good faith with a view to maximizing Radnor's value to all
> constituents.

*Id.* at 841 (emphasis in original). The Court also found that Tennenbaum did not control Debtors, Tennenbaum was not an insider, and became a stalking horse and then purchaser only to prevent a freefall into Chapter 7. *See id.* at 829-46.

6

Based on its findings at trial, the Court soon approved the sale of substantially all of Debtors' assets to a Tennenbaum affiliate under Bankruptcy Code § 363. *See generally* D.I. 698 (the "Sale Order").  The Court determined that Debtors marketed their assets and conducted the sale in good faith using a fair process, and that the sale represented the highest and best value available. Sale Order H, I, L, N, W & 5. The Court also found that there was no evidence of insider influence or improper conduct by Tennenbaum, and that Tennenbaum had purchased in good faith. *Id.* at W, 5. The Court further found that Tennenbaum and Debtors negotiated the bid "without collusion or fraud." *Id.* at N.  The Court specifically approved the amount of Tennenbaum's credit bid (of some but not all of its claim) as "valid and proper":

> At the Auction, pursuant to its agreement under the Purchase Agreement, Purchaser credit bid $95 million, which credit bid was a valid and proper offer pursuant to the Bid Procedures and Bankruptcy Code sections 363(b) and (k).

*Id.* at Q. Finally, the Court determined that the inability of Debtors to restructure their debt or reorganize was the result of the existing circumstances and the DIP financing terms, not because of improper conduct by Skadden or Tennenbaum.  *Id.* at L.

The Sale Order also contained releases in favor of Tennenbaum, which Mr. Kennedy now asks the Court to invalidate. *See* Sale Order Ex. A (APA) at § 12.11. Mr. Kennedy previously moved to set aside the Sale Order and its releases under Rule 60. Judge Walsh denied that request.

<u>The Confirmation Order</u>

In March 2012, the Court held a hearing to consider confirmation of the Debtors' Second Amended Plan of Liquidation [D.I. 1946] (the "Plan"). *See* D.I. 1950 (transcript of March 15, 2012 hearing).  Mr. Kennedy had filed an objection in February 2010.  [D.I. 1806].

At the confirmation hearing, Mr. Kennedy's counsel requested that confirmation be delayed so that Mr. Kennedy could file another objection to the Plan, this one on the basis that some unspecified "impropriety" had occurred. *See* D.I. 1950 at 7 (transcript of hearing). The Court adjourned the hearing and gave Mr. Kennedy thirty days to file a consolidated objection that would supersede his February 2010 objection and that would set forth all of his arguments in one pleading.  Mr. Kennedy never filed the objection.

 The Court confirmed the Plan in September 2012.  No appeal was taken, and the Confirmation Order became a final order.  The Confirmed Plan eliminated existing equity interests, including Mr. Kennedy's.  [D.I. 1940 at Ex. 1, p. 20, § D].

After plan confirmation, Mr. Kennedy attacked Tennenbaum and Skadden for their alleged misconduct. First, Mr. Kennedy moved to set aside the Sale Order under Rule 60(b) and objected to Skadden's final fee application. [D.I. 1993]. That same day, he also filed a complaint, purportedly on Debtors' behalf, seeking $300 million in damages and an avoidance of the sale.  [Adv. D.I. 1, 6].  As the basis for his motion, objection and complaint, Mr. Kennedy alleged that Tennenbaum and Skadden failed to disclose conflicts of interest to the Court. He also alleged that Tennenbaum and Skadden

collaborated to manipulate Debtors' restructuring in Tennenbaum's favor.  These are the same allegations that he is once again raising in the Motion.

Judge Walsh denied Mr. Kennedy's request to set aside the Sale Order. Rule 60(b) motions must be brought within one year of judgment, and Mr. Kennedy sought to vacate an order entered six years earlier.

<u>The Fee Order</u>

Mr. Kennedy's objection to Skadden's fee application was not time-barred.  The Court therefore scheduled an evidentiary hearing to consider Mr. Kennedy's allegations on the merits. The Court conducted the evidentiary hearing over the course of two days in May 2013. Mr. Kennedy attended those hearings, testified under oath, and was represented by counsel.  The hearing took place after Mr. Kennedy learned about the alleged misconduct.

After the hearing, the Court issued the Fee Order, finding there was no merit to Mr. Kennedy's allegations of misconduct.  The Court noted that it had already determined, in 2006, that Skadden had made appropriate disclosures and did not hold a conflict of interest.  The Court reaffirmed those findings:

> Given the full record of Skadden disclosures, Skadden did not misrepresent its relationships with Tennenbaum to the Court or the UST.

See Transcript of October 27, 2006 Hearing (Doc. #582).

The Court also relied on its findings in its November 2006 Opinion to reaffirm that Tennenbaum engaged in no wrongdoing:

> . . . Tennenbaum did not engage in misconduct, wrongful conduct, fraud, illegal conduct, or breach of fiduciary duty. . . .There was no collusion between Skadden and its affiliates on the one hand, and Tennenbaum or its affiliates on the other in connection with any matter in these Chapter 11 cases.

*Id.* at \*9 (citing November 2006 Opinion, 353 B.R. at 841 and 843) (emphasis added); *see also id.* at \*5 ("Tennenbaum did not control Debtors' affairs, and no one at Tennenbaum ever exercised control over the Radnor board of directors") (citing November 2006 Opinion, 353 B.R. at 834- 35).  The Court also found that:

> Mr. Kennedy knew of Skadden's relationship with Tennenbaum all along. *Id.* at \*4.

> Tennenbaum did not choose Skadden as Debtors' counsel.  *Id.* at \*5.

> Mr. Kennedy already knew that certain Skadden partners invested in Tennenbaum funds. *Id.*

> Mr. Kennedy's testimony that he did not know of Skadden's relationship with Tennenbaum lacked credibility.  *Id.* at \*6.

> Mr. Kennedy's testimony that he believed that Skadden did no work for Tennenbaum other than 5 hours of tax work was "not believable."  *Id.*

> Mr. Kennedy's allegation that Skadden had a secret deal with Tennenbaum had no basis in fact.  *Id.*

> Mr. Kennedy appealed the June 2013 Opinion, and the District Court affirmed. *See*

*Kennedy v. Skadden, Arps, Slate, Meagher & Flam LLP (In re Radnor Holdings Corp.),* --- B.R. ----, 2014 WL 3976701, at \*4 (D. Del. Aug. 13, 2014).

The Motion is based on the same underlying events which the Court fully addressed, particularly in the Fee Order.  Thus, it is the law of the case that:

> The Skadden Retention Order resolved Skadden's purported conflict of interest  and failure to disclose.

> The November 2006 Opinion resolved Tennenbaum's purported improper scheme in the bankruptcy case to buy Debtors.

> The Sale Order resolved Tennenbaum's purported conspiracy with Skadden to purchase Debtors.

> The Fee Order resolved and rejected all allegations of wrongdoing by and between Tennenbaum and Skadden.

It is clear to the Court that, dissatisfied by the Court's ruling, Mr. Kennedy is taking a "run" at a newly assigned Judge.  By filing the Motion, Mr. Kennedy is, in effect, asking the Court to review as if on appeal the final rulings made by Judge Walsh.  He has not presented a scintilla of new facts or new arguments.  It is for the Court of Appeals to review the rulings of the Court and the District Court.

<u>Sanctions</u>

Skadden and Tennenbaum are seeking sanctions against Mr. Kennedy which would include dismissal of his complaint in the adversary proceeding and an order barring Mr. Kennedy from any further filings.  Mr. Kennedy has unsuccessfully brought multiple action in various courts.  The Court will enjoin Mr. Kennedy from filing any further motions, objections, pleadings or other filings in this Court or others related in any way to any misconduct in the bankruptcy case or Tennenbaum's judgment without

leave of the Court during the pendency of the appeal to the Court of Appeals. The injunction is to prevent further disruption of the pending appeal and thus to maintain the status quo. The injunction will also prevent harm to Skadden and Tennenbaum while the appeal is pending from Mr. Kennedy's proclivity for litigation. The Court does not believe it is appropriate to consider the request for additional sanctions while the appeal is pending.

For the foregoing reasons, it is hereby ORDERED that:

1.      The Motion is denied.

2.      Mr. Kennedy is enjoined from filing in the Court or any other court (except the Court of Appeals) any motion, objection or pleading relating in any way to the subject matter of the Motion and the Tennenbaum judgment without leave of the Court during the pendency of the appeal and for 30 days thereafter.

3.      The Court is deferring a ruling on the pending sanctions motions until the Court of Appeals issues a ruling on the pending appeal.


Dated:  March 18, 2015

KEVIN GROSS, U.S.B.J.